**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**
**Bangor Division**

| | |
|---|---|
| JANE DOES 1–6, JOHN DOES 1–3, JACK DOES 1–1000, JOAN DOES 1–1000, <br><br>Plaintiffs,<br><br>v.<br><br>JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, in his official capacity as Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT HEALTH FOUNDATION, MAINEGENERAL HEALTH,<br><br>Defendants. | Case No. _____ |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNTION WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 65 and L.R. 7, Plaintiffs, JANE DOES 1–6, JOHN DOES 1–3, JACK DOES 1–1000, and JOAN DOES 1–1000, hereby move this Court for a temporary restraining order (TRO) and preliminary injunction (PI) against Defendants, JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, in his official capacity as Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT HEALTH FOUNDATION, and MAINEGENERAL HEALTH, as set forth below and in Plaintiffs' contemporaneously filed Verified Complaint. In the alternative,

1

should this Court deny Plaintiffs' motion, Plaintiffs also move this Court for an injunction pending appeal under Fed. R. App. P. 8.

## MEMORANDUM OF LAW IN SUPPORT

To obtain a TRO or PI, Plaintiffs must demonstrate that they have a strong likelihood of success on the merits, that they will suffer irreparable injury absent the order, that the balance of the equities favors the order, and that the public interest is served by the Court's issuing the order. *See Bl(a)ck Tea Soc'y v. Boston*, 378 F.3d 8, 11 (1st Cir. 2004); *Bourgoin v. Sebelius*, 928 F. Supp. 2d 258, 267 (D. Me. 2013) ("The standard for granting a temporary restraining order is the same as for a preliminary injunction."). Plaintiffs easily satisfy each of these elements factually and legally. (Plaintiffs hereby incorporate by reference the allegations of the Verified Complaint, filed contemporaneously herewith, as their statement of facts in support of this motion.)

**I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT DEFENDANTS MUST FOLLOW FEDERAL LAW AND GRANT RELIGIOUS ACCOMMODATIONS AND EXEMPTIONS FROM THE GOVERNOR'S COVID-19 VACCINE MANDATE.**

**A.  Defendants' Refusal to Recognize the Supremacy Clause's Mandate That State Law Align With Federal Law Is Plainly Unlawful.**

As a matter of black letter law, federal law and the United States Constitution are supreme over any contrary Maine statute, edict, or executive decree from the Governor, and Maine cannot override, nullify, or violate federal law. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). In fact, it is an elementary principle of the Nation's founding charter that the laws of the federal government constitute the laws appliable in the states. *Haywood v. Drown*, 556 U.S. 729, 734 (2009) ("**This Court has long made clear that federal**

**law is as much the law of the several States as are the laws passed by their legislatures**." (emphasis added)). For this Court and Defendants in this case, the Supremacy Clause "provides a rule of decision for determining whether federal or state law applies in a particular situation," *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020), and where—as here—federal law "imposes restrictions [and] confers rights on private actors," and Maine law "imposes restrictions that conflict with the federal law," "**the federal law takes precedence** and the state law is preempted." *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up).

Here, Defendants have purported to exclude themselves from the requirements and mandates of federal law. There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion . . . ."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. Yet, when presented with requests from Plaintiffs outlining their sincerely held religious objections to the mandate, Defendant employers have all issued blanket denials of such exemptions, refused to even consider or evaluate such requests, refused to grant any reasonable accommodation for Plaintiffs' sincerely held religious beliefs, and

threatened to terminate Plaintiffs for their failure to violate their conscience by complying with the Governor's mandate. (V. Compl. ¶¶ 1, 5, 82–95.)

As detailed in Plaintiffs' Verified Complaint, Defendants are callously and unconscionably ignoring federal law and its demand that sincerely held religious belief be protected and accommodated. (*Id.*) Specifically, Plaintiffs are receiving the following responses to their requests for religious exemption and accommodation:

- "I can share MaineHealth's view that **federal law does not supersede state law in this instance**."

- "**[W]e are no longer able to consider religious exemptions for those who work in the state of Maine**."

- "All MaineGeneral employees will have to be vaccinated against COVID-19 by Oct. 1 unless they have a medical exemption. The mandate also states that only medical exemptions are allowed, **no religious exemptions are allowed**."

- "Allowing for a religious exemption would be a violation of the state mandate issued by Governor Mills. So, unfortunately, that is not an option for us."

(V. Compl. ¶ 1, Exs. A–C (emphasis added).)

While Defendants might be forgiven for articulating such responses if Plaintiffs were raising them only under Maine law, Defendants are fully aware of the fact that Plaintiffs were seeking to invoke the protections of federal law and nevertheless refused to accept the supremacy of such federal protections. Indeed, Jane Doe 1 informed Defendant MaineHealth that she was seeking her accommodation under Title VII (V. Compl. ¶ 85), yet her request was still rejected upon the premise that **"federal law does not supersede state law in this instance**." (V. Compl. ¶ 87 (emphasis added).) In fact, Defendants have flatly refused to even consider religious exemption requests. (*See* V. Compl. ¶¶ 84, 97 ("You submitted a religious exemption, **your request is unable to be evaluated at this time**." (emphasis added)).) MaineGeneral's response

4

was similar, in that it noted that federal law provides no refuge for Plaintiffs' requests for religious exemption because employers in Maine "must comply with Governor Mills' COVID-19 vaccination mandate [and] **no religious exemptions are allowed**." (V. Compl. ¶ 93 (emphasis added).)

For Defendants, it is as if the protections for religious beliefs demanded by the First Amendment (for the Governor) and Title VII (for employers in Maine) simply do not exist. But Defendants' willful disregard of federal law provides no refuge for their unconstitutional and unlawful denials of Plaintiffs' requests for accommodation. For, "**as stated [nearly two centuries ago], the Supremacy Clause invalidates state laws that interfere with or are contrary to the laws of congress**." *Chicago & N.W. Transp. Co. v. Kalo Brick Tile Co.*, 450 U.S. 311, 317 (1981) (emphasis added) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)). The constitutional structure of the Republic demands that the State, including Maine, comply with and adhere to the demands of federal law. Defendants have ignored this structure.

### B. The Governor's COVID-19 Vaccine Mandate Violates the Free Exercise Clause of the First Amendment.

#### 1. Imposing the Governor's Mandate on John Doe 1's practice violates the Free Exercise Clause.

Plaintiff John Doe 1 is a licensed healthcare provider in Maine, operating his own practice with employees who all have sincerely held religious objections to the Governor's COVID-19 Vaccine Mandate. (V. Compl. ¶ 16.) John Doe 1 has sincerely held religious objections to accepting or receiving the COVID-19 vaccines and has sincerely held religious beliefs that he is to honor the sincerely held religious beliefs of his employees who object to the COVID-19 vaccines. (*Id.*) John Doe 1 has been threatened with closure of his practice and loss of his business license for considering and granting religious accommodations and exemptions for his employees.

(*Id.*) And, there is no question that the Governor has threatened John Doe 1 with the penalty of the loss of his license for failure to comply with the Governor's mandate. (V. Compl. ¶ 43 ("[t]he organizations to which this requirement applies must ensure that each employee is vaccinated, with this requirement being enforced as a condition of the facilities' licensure.").)

The Governor's mandate and its threat of revocation of John Doe 1's license for failure to comply is almost identical to the mandates struck down by the Supreme Court in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). There, the federal government mandated that Hobby Lobby (a privately held corporation with sincerely held religious beliefs against abortion) provide insurance coverage for its employees to receive abortion-inducing drugs and contraceptives. 573 U.S. at 690–91. There, the Court noted that the plaintiffs—as here—

> have a sincere religious belief that life begins at conception. They therefore object on religious grounds to providing health insurance that covers methods of birth control that, as HHS acknowledges . . . may result in the destruction of an embryo. By requiring the Hahns and Greens and their companies to arrange for such coverage, **the HHS mandate demands that they engage in conduct that seriously violates their religious beliefs**.

*Id.* at 720 (emphasis added). Here, too, the Governor's mandate imposes a substantial burden on Plaintiffs' religious beliefs. In fact, John Doe 1 must either mandate that his employees receive a vaccine they find objectionable under their sincerely held religious beliefs, or deprive his employees of their abilities to feed their families. Such an unconscionable choice is clearly a substantial burden. Indeed, the First Amendment can hardly be thought to countenance as "a tolerable result to put a family-run business to the choice of violating their sincerely held religious beliefs or making all of their employees lose their existing [employment]." *Id.* at 722.

There, as here, the Court was faced with a government mandate that conflicted with the sincerely held religious beliefs of the plaintiffs. There, as here, compliance with the government's mandate imposed a substantial burden on the plaintiffs' sincerely held religious beliefs. There, as

here, the government's restrictions on the plaintiffs' sincerely held religious beliefs were subject to (and failed) strict scrutiny. Because the Governor's COVID-19 Vaccine Mandate is not neutral or generally applicable, and provides for individualized medical exemptions but not religious, the mandate is subject to strict scrutiny, and Defendants utterly fail to carry their burden under that standard. (*See infra*.)

### 2. The Governor's refusal to permit accommodation of sincerely held religious beliefs violates the Free Exercise Clause.

In *Tandon v. Newsom*, the Supreme Court held that the government violates the First Amendment "**whenever it treats *any* comparable activity more favorably than religious exercise**." 141 S. Ct. 1294, 1296 (2021) (bold emphasis added). Here, that is plainly what Defendants have done. The government Defendants have mandated that individuals who are employed in the healthcare industry accept and receive a COVID-19 vaccine. No choice has been given to religious adherents, yet nonreligious exemptions and accommodations are readily available.

And, there is no dispute about the two separate categories of exemptions the Governor has created. Plaintiffs have been informed that while religious exemptions are per se barred in the State of Maine, the more favored medical category of exemptions is alive and well in Maine. (V. Compl. ¶¶ 96–103.) Specifically, in its response to Jane Doe 1, Defendant MaineHealth has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, MaineHealth told Jane Doe 1:

> You submitted a religious exemption, your request is unable to be evaluated due to a change in the law. Your options are to receive vaccination or provide documentation for a medical exemption to meet current requirements for continued employment.

(V. Compl. ¶ 97 and Exhibit A at 2.) As MaineHealth informed Jane Doe 1, though her request for a religious exemption was denied, she was invited to submit a request for a medical exemption. (V. Compl. ¶ 99 ("If you seek an accommodation **other than a religious exemption** from the state mandated vaccine, please let us know." (emphasis added).)

### 3. The Governor's discriminatory mandate fails strict scrutiny.

Because the Governor's COVID-19 Vaccine Mandate is neither neutral nor generally applicable, and indeed because it singles out religious objectors for disparate treatment, it must satisfy strict scrutiny, meaning the restrictions must be supported by a compelling interest and narrowly tailored. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 62, 67 (2000); *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1233 (9th Cir. 2020) ("disparate treatment of religion triggers strict scrutiny"). "That standard is not watered down; it really means what it says." *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997), which is rarely passed. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992) ("[W]e readily acknowledge that a law rarely survives such scrutiny . . . ."). This is not that rare case.

Whatever interest the Governor claims, she cannot show the orders are the least restrictive means of protecting that interest. And it is the Governor's burden to make the showing because "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). "As the Government bears the burden of proof on the ultimate question of . . . constitutionality, **[Plaintiffs] must be deemed likely to prevail unless the Government has shown** that [their] proposed less restrictive alternatives are less effective than [the mandate]." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (emphasis added). Under this standard, "[n]arrow tailoring requires the government to demonstrate

that a policy is the 'least restrictive means' of achieving its objectives." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

To meet this burden, the government must show it "**seriously** undertook to address the problem with less intrusive tools readily available to it," meaning that it "**considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014) (emphasis added). *See also Agudath Israel*, 983 F.3d at 633 (same). And the Governor must "show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely examined and ruled out for good reason**," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 573 U.S. at 495).

Here, for 18 months Plaintiffs have risen every morning, donned their personal protective equipment (PPE), and fearlessly marched into hospitals, doctors' offices, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. For 18 months PPE and other protocols have been sufficient to protect both Plaintiffs and their patients. Yet now, Defendants claim that such measures do not suffice. The Governor tried nothing else. She went straight to a COVID-19 Vaccine Mandate for healthcare workers and purported to remove any protections for their sincerely held religious beliefs. That plainly fails strict scrutiny, as the other, less restrictive alternatives—including alternatives that

the MCDC still says are "**proven to be one of the most significant, effective, and easiest ways to reduce the spread of COVID-19**," (V. Compl. ¶ 78 (emphasis added))—are available and protect Defendants' interests while still preserving Plaintiffs' rights under federal law.

### C.  Defendants Have Conspired to Violate Plaintiffs' Civil Rights.

Section 1985(3) prohibits Defendants from conspiring to deprive Plaintiffs of the equal protection of the laws or to deprive them of other constitutionally protected liberties. 42 U.S.C. § 1985(3). Such claims include a prohibition on Defendants' conspiring together to deprive Plaintiffs of their constitutionally protected right to the free exercise of religion under the First Amendment. *See, e.g.*, *United Bhd. of Carpenters & Joiners of Am. Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 830–31 (1983) (holding that a "conspiracy to infringe First Amendment rights is [a] violation of § 1985(3) [if] it is proved that the state is involved in the conspiracy"); *Perez-Sanchez v. Public Bldg. Auth.*, 531 F.3d 104, 109 (1st Cir. 2008) (noting that § 1985(3) claims extend to "members of recognized classifications such as race, sex, religion, or national origin" (citing *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985)); *Palm v. Sisters of Charity Health Sys.*, No. 07-120-B-W, 2008 WL 2229764, *2 (D. Me. May 28, 2008) (noting that conspiracies to deprive a plaintiff of his First Amendment rights are actionable if state action is involved).

Here, Defendants have plainly entered into an agreement to deprive Plaintiffs of their constitutionally protected rights to equal protection and the free exercise of their religion, have done so with a conspiratorial purpose to so deprive them of such rights, have committed overt acts in furtherance of the conspiracy, and have actually deprived Plaintiffs of their constitutionally cherished liberties. *See Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996).

### 1.   Defendants entered into an agreement to violate Plaintiffs' rights.

There is no question that the Governor and her officials have entered into an agreement with Defendant employers to deprive Plaintiffs of their constitutionally protected liberties. Indeed, the Governor's own press release announcing her mandate that all healthcare workers in Maine receive a COVID-19 vaccine states that Defendants agree with her concerning its provisions. For example, Defendant MaineHealth stated that it agreed with the Governor's decision to mandate the vaccine and prohibit religious exemptions from it. (V. Compl. ¶¶ 185-186.) Defendant Northern Light was even more explicit in its confirmation of agreement with the Governor's mandate when it stated that "*Governor Mills' decision to require vaccination of health care workers is another example of close alignment between the government and the health care community.*" (V. Compl. ¶ 187 (italics original).)

And, if these statements of Defendants were somehow insufficient to demonstrate their express agreement with the Governor to enforce her COVID-19 Vaccine Mandate without providing any religious exemptions whatsoever, the actions and other statements of Defendants confirm their agreement. MaineHealth's agreement with the Governor to deprive Plaintiffs of their constitutionally protected liberties is evidenced in its denial of Jane Doe 1's request for religious exemption and accommodation. (V. Compl. ¶ 185.) Specifically, the statement that MaineHealth is "**no longer able to consider religious exemptions for those who work in the state of Maine**" (*id.* and Ex. A at 2 (emphasis added)) demonstrates that MaineHealth has reached an agreement with the Governor to refuse requests for religious exemptions based on the State's mandate.

These statements and actions have more than demonstrated Defendants' agreement to deprive Plaintiffs of their constitutionally protected liberties. "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such

that defendants entered into an agreement, express **or tacit**, to achieve an unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (emphasis added) (quoting *Romer v. Morganthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Defendants' public representations that they are in lockstep with the Governor in requiring Plaintiffs to receive a COVID-19 vaccine and that no religious accommodations are available plainly demonstrates a tacit—if not express—agreement to preclude Plaintiffs from seeking and receiving a religious accommodation to the COVID-19 Vaccine Mandate.

### 2. Defendants acted with a conspiratorial purpose and committed overt acts in furtherance of the conspiracy.

The conspiratorial purpose of Defendants' agreement to deprive Plaintiffs of their constitutionally and statutorily protected rights to a religious accommodation is manifested by Defendants' overt acts in furtherance of the conspiratorial agreement. The Governor and her officials engaged in an overt act in furtherance of the conspiracy by removing all religious protections from mandatory vaccines via the agency rule change. (*See, e.g.*, V. Compl. ¶¶ 46–49.) Indeed, on August 14, 2021, Dr. Shah and the MCDC amended 10-144 C.M.R. Ch. 264 to eliminate the ability of health care workers in Maine to request and obtain a religious exemption and accommodation from the COVID-19 Vaccine Mandate. (V. Compl. ¶ 46.) The only exemptions Maine now lists as available to health care workers are those outlined in 22 M.R.S. § 802.4-B, which purports to exempt only those individuals for whom an immunization is medically inadvisable and who provide a written statement from a doctor documenting the need for an exemption, despite the fact that the prior version of the rule permitted religious exemptions. (V. Compl. ¶¶ 47–48.) Moreover, the Governor's officials engaged in an overt act of denying even consideration of religious exemptions by stating to the public that religious accommodations and

exemptions were no longer permissible in Maine, regardless of federal law's requirement that such accommodations be made available to conscientious and religious objectors. (V. Compl. ¶ 49).

Defendant employers in Maine engaged in overt acts in furtherance of their conspiratorial purpose by falsely stating to their employees that religious exemptions, **including those offered and mandated by federal law**, were inapplicable in Maine. (*See, e.g.*, V. Compl. ¶¶ 1, 82–95.)

Thus, Defendants have all engaged in overt acts in furtherance of their conspiracy and conspiratorial motives by publicly stating—falsely—that no protections or accommodations are available to those individuals who might have sincerely held religious objections to the COVID-19 Vaccine Mandate. **Those statements to the public and the explicit denials of religious exemptions to Plaintiffs on the false premise that federal protections do not apply in Maine are overt acts in furtherance of Defendants' conspiracy to deprive Plaintiffs of any accommodation for their sincerely held religious beliefs to which the law entitles them**.

### 3. Defendants have deprived Plaintiffs of their constitutionally protected civil rights to Equal Protection and Free Exercise.

Not only have Defendants agreed to deprive Plaintiffs of their constitutionally and statutorily protected liberties and engaged in overt acts in furtherance of their conspiratorial motives, Defendants have actually deprived Plaintiffs of their protected civil liberties in violation of 42 U.S.C. § 1985(3). Indeed, Jane Doe 2 was terminated from her position for her refusal to accept a vaccine that violates her sincerely held religious beliefs. (V. Compl. ¶ 11.) Defendants have also informed Plaintiffs—who fortunately still have their jobs for now—that as of October 1, they will be terminated if they refuse to accept the COVID-19 vaccine regardless of their sincerely held religious objections to it. (V. Compl. ¶¶ 82–95, 104–116.)

Thus, because Defendants have agreed to deprive, and in fact have deprived, Plaintiffs of their rights to accommodation of their sincerely held religious beliefs, Defendants have violated

Section 1985(3) and must be enjoined from continuing to engage in their unlawful and unconscionable conspiracy to deprive Plaintiffs of their protected free exercise of their sincerely held religious beliefs.

> **D.   The Governor's Impermissible Creation of an Unprotected Class of Religious Objectors in the Healthcare Industry Violates Plaintiffs' Right to Equal Protection.**

The Equal Protection Clause of the Fourteenth Amendment makes it unconstitutional for any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the government action questioned or challenged." *Reynolds v. Sims*, 377 U.S. 533, 565 (1964). Indeed, when the Governor engages in a system of systematically targeting religious objectors for disparate treatment under Maine's immunization laws, her actions plainly violates the Equal Protection Clause.

The Governor's COVID-19 Vaccine Mandate and the MCDC's removal of religious exemptions for healthcare workers in Maine, on their face and as applied, are each a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). The Governor's COVID-19 Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633. Under such a scenario, *Romer* demands a finding that the removal of protections that previously existed represents per se animus in violation of the Fourteenth Amendment. Defendants' removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.* Indeed, "**[a]**

14

**law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense**." *Id.* (emphasis added). The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the MCDC's removal of religious exemptions for healthcare workers, are each such a law.

## II. DEFENDANTS' UNLAWFUL CONDUCT IS CAUSING PLAINTIFFS' IRREPARABLE HARM.

As the Supreme Court has just recently affirmed, "**There can be no question that the challenged restrictions, if enforced, will cause irreparable harm.** 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Catholic Diocese*, 141 S. Ct. at 67 (emphasis added) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Here, for Plaintiffs, the Governor's COVID-19 Vaccine Mandate and its unlawful and impermissible prohibition of religious exemptions that are required under federal law is causing immediate and irreparable harm to Plaintiffs. Because Jane Doe 1's request for exemption and accommodation of her sincerely held religious beliefs has been denied by MaineHealth, Jane Doe 1 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. (V. Compl. ¶ 104.) Jane Doe 1 will only remain employed until October 1 if she does not violate her conscience and sincere religious beliefs and accept the Governor's mandatory COVID-19 vaccine. (*Id.*) Jane Does 3–5 all face the identical scenario: violate their sincerely held religious beliefs by complying with the Governor's mandate or lose their ability to feed their families. (V. Compl. ¶¶ 105–108.) Jane Doe 2 already lost her job because she chose not to violate her conscience, and she cannot obtain new employment in the healthcare field despite her experience and qualifications because of the Governor's COVID-19 Vaccine Mandate. (V. Compl. ¶¶ 5, 11, 88.)

Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 faces the unconscionable choice of violating his own sincerely held religious beliefs and accepting the mandatory vaccine or potentially losing his practice and business license for failure to comply. (V. Compl. ¶ 111.) And John Doe 1 also faces the unconscionable choice of refusing to grant his employees' requests for exemption and accommodation from the Governor's COVID-19 Vaccine Mandate or losing his practice and his business license. (V. Compl. ¶ 112.)

The Governor's mandate, which force Plaintiffs to choose between their sincerely held religious beliefs and compliance with an unlawful edict that prohibits mandatory federal protections, is unconscionable, unconstitutional, and unlawful. It imposes immediate and irreparable harm on Plaintiffs each day it is permitted to continue. A TRO and preliminary injunction are needed now to protect Plaintiffs' cherished First Amendment liberties and the protections afforded to them under the Constitution.

### III. PLAINTIFFS SATISFY THE REMAINING REQUIREMENTS FOR A TRO AND PRELIMINARY INJUNCTION.

When Defendants impose a mandatory vaccine upon Plaintiffs and purport to strip them of their abilities to receive exemption and accommodation for the exercise of their sincerely held religious beliefs, courts "have a duty to conduct a serious examination of the need for such a drastic measure." *Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id.* Nor could it be shown, as Plaintiffs are merely seeking to rise each morning, don the same personal protective equipment that sufficed to make them heroes for 18 months, and continue to provide quality healthcare to those who need it most. Plaintiffs' vaccination status was irrelevant for 18 months, and it is irrelevant today.

Moreover, the State "is in no way harmed by the issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291,

302–03 (4th Cir. 2011). But, for Plaintiffs, even minimal infringements upon First Amendment values constitute irreparable injury. *Catholic Diocese*, 141 S. Ct. at 67. As such, there is no comparison between the irreparable injury suffered by Plaintiffs and the non-existent interest Defendants have in enforcing unconstitutional mandates and depriving Plaintiffs of federally required protections of their sincerely held religious beliefs and the exercise thereof. Absent a preliminary injunction, Plaintiffs "face an impossible choice: [accept a vaccine] in violation of their sincere religious beliefs, or risk [termination] for practicing those sincere religious beliefs." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 914 (W.D. Ky. 2020). The TRO and preliminary injunction should issue immediately to protect Plaintiffs' sincerely held religious beliefs and ensure that federal protections afforded to them are honored by Maine and the employers located therein.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and issue a TRO and preliminary injunction immediately. In the alternative, Plaintiffs' request that this Court issue a preliminary injunction pending appeal.

Respectfully submitted,

| /s/ Stephen C. Whiting | /s/ Daniel J. Schmid |
|---|---|
| Stephen C. Whiting | Mathew D. Staver* |
| ME Bar No. 559 | Horatio G. Mihet* |
| The Whiting Law Firm | Roger K. Gannam* |
| 75 Pearl Street, Suite 207 | Daniel J. Schmid* |
| Portland, ME 04101 | LIBERTY COUNSEL |
| (207) 780-0681 | P.O. Box 540774 |
| Email: steve@whitinglawfirm.com | Orlando, FL 32854 |
| | Phone: (407) 875-1776 |
| | Facsimile: (407) 875-0770 |
| | Email: court@lc.org |
| | hmihet@lc.org |
| | rgannam@lc.org |
| | dschmid@lc.org |
| | *Applications for Admission pro hac vice pending |

***Attorneys for Plaintiffs***