UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOES 1-6, JOHN DOES 1-3, JACK DOES 1-1000, JOAN DOES, 1-1000,<br><br>          Plaintiffs,<br><br>v.<br><br>JANET T. MILLS, in her official capacity as Governor of the State of Maine,<br>JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services,<br>NIRAV D. SHAH, in his official capacity as Director of the Maine Center for Disease Control and Prevention,<br>MAINEHEALTH,<br>GENESIS HEALTHCARE OF MAINE, LLC,<br>GENESIS HEALTHCARE LLC,<br>NORTHERN LIGHT HEALTH FOUNDATION, and<br>MAINEGENERAL HEALTH.<br><br>          Defendants. | CIVIL ACTION<br>Docket No:  1:21-cv-00242 |

## OPPOSITON TO MOTION FOR PRELIMINARY INJUNCTION BY MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE LLC, AND MAINEGENERAL HEALTH

Defendants MaineHealth; Genesis Healthcare of Maine, LLC and Genesis Healthcare LLC (together, Genesis); and MaineGeneral Health (collectively, Defendants) hereby oppose Plaintiffs' Motion for Preliminary Injunction.  Plaintiffs' Complaint purports to assert three counts against Defendants and Northern Light Health Foundation (collectively, the Provider Defendants): violation of the Supremacy Clause of the United States Constitution (Count II); violation of Title VII of the Civil Rights Act of 1964 (Count III); and unlawful conspiracy in

13843931.1

violation of 42 U.S.C. §1985 (Count V).  Plaintiffs have failed to carry their burden of proving entitlement to injunctive relief on any of these claims.

## INTRODUCTION

Eighteen months after the start of the COVID-19 pandemic that has taken the lives of more than 600,000 people in the United States and six months after the three highly effective COVID-19 vaccines became readily available in Maine, the State of Maine added COVID-19 to the list of immunizations required of employees working in licensed healthcare facilities. Claiming that taking any of the vaccines would violate their sincerely held religious beliefs, Plaintiffs seek to enjoin enforcement of this requirement.  But this case is not about whether the plaintiff healthcare workers can be forced to accept the COVID-19 vaccine against their will and in contravention of their religious beliefs, but rather whether they can continue to work in the Provider Defendants' licensed healthcare facilities after the State's deadline of October 29, 2021, if they exercise their beliefs and choose not to do so.  Plaintiffs urge upon this Court a novel theory that the Provider Defendants are required to violate state law, disregard a condition of their licenses, and jeopardize the health and safety of their patients and workers in order to accommodate their religious beliefs.  Their position defies common sense and is contrary to well settled law.

Doing what the law requires the Provider Defendants to do does not give rise to any cause action by Plaintiffs.  As the State Defendants explain in their Opposition, it does not violate the first amendment rights of any of the plaintiffs; nor would it violate Title VII, nor constitute a conspiracy to violate civil rights in violation of 42 USC § 1985.  Plaintiffs are extraordinarily unlikely to succeed on the merits of their claims against Defendants, and they have failed to articulate any reason why the established framework for the litigation of

employment discrimination claims—which includes administrative exhaustion and pursuant to which a successful plaintiff may recover damages and post-trial injunctive relief—is inadequate. The Court should deny their motion for a preliminary injunction.

## BACKGROUND

Mandatory immunization of healthcare workers has a long history in Maine.[1]   For years, the Maine Department of Health and Human Services (DHHS) has had the statutory responsibility to "[e]stablish procedures for the control, detection, prevention, and treatment of communicable . . . diseases, including [through] public immunization and contact notification programs."   22 M.R.S. §802. Exercising its authority under Section 802, DHHS and Maine Center for Disease Control (Maine CDC) enacted rules in 2002, requiring all Designated Healthcare Facilities[2] ("DHCF") to obtain and maintain their employees' proof of immunization or documented immunity against a variety of communicable diseases, including but not limited to measles, mumps, chicken pox, and—more recently—influenza.   10-144 C.M.R. Ch. 264, §2(A) ("Immunization Requirements Rule").   Until recently, Section 802 recognized religious and philosophical exemptions for employees whose sincere religious or philosophical beliefs were contrary to immunization.   22 M.R.S. § 802(4-B)(B).   The Immunization Requirements Rule similarly permitted DHCFs to recognize religious and philosophical exemptions.   In 2019, however, the Legislature passed L.D. 798, which removed the statutory references to these non-

---

[1] As the State Defendants explain in their opposition to Plaintiffs' motion for a preliminary injunction, prior to 2002, Maine law required hospitals and other healthcare institutions to mandate employee vaccination against measles, mumps, and rubella.  P.L. 1989, ch. 487, § 11 (eff. Sept. 30, 1989).  In 2001, the Maine Legislature amended the mandatory vaccination statute, shifting the substantive vaccination requirements from the statute to rules adopted by DHHS.  P.L. 2001, ch. 185, §§ 1-2 (eff. Sept. 21, 2001).  Defendants' summary picks up the trail after 2001.

[2] The term Designated Healthcare Facility (hereafter "DHCF") is defined in the rules to include "a licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities . . ., multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine, Department of Health and Human Services Division of Licensing and Certification." 10-144 C.M.R. Ch. 264, §1(D).

medical exemptions, and further directed DHHS to "amend their rules to remove any rules exempting persons from immunization requirements because of their religious or philosophical beliefs," by September 1, 2021.  P.L. 2019, Ch. 154, § 11.  In March 2020, Maine voters soundly rejected a peoples' veto referendum, thereby endorsing the Legislature's decision to eliminate non-medical exemptions from vaccination for employees working in DHCFs.[3]

On April 14, 2021, consistent with the Legislature's directive, DHHS amended the Immunization Requirements Rule, deleting the provisions that had previously permitted DHCFs to offer non-medical exemptions from the vaccine requirement.  On August 12, 2021, DHHS and Maine CDC issued an Emergency Routine Technical Rule (ERTR), further amending the Immunization Requirements Rule to add COVID-19 to the list of mandatory vaccines for employees of DHCFs, requiring employees to have received their final dose by September 17, 2021.[4]  On September 2, 2021, the Governor announced that DHHS would not enforce the Immunization Requirements Rule's COVID-19 vaccine requirement until October 29, 2021.[5]

The consequences to a DHCF of failing to require and maintain proof of employee vaccination or medical exemption are substantial.  DHCFs that do not comply with the Immunization Requirements Rule may be enjoined from continuing to permit employees to work

---

[3] Question 1 on the March 3, 2020 ballot asked whether voters wished to repeal L.D. 798 and reinstate religious and philosophical exemptions from the vaccine requirements.  It was defeated 72% to 27%.  Full results of the March 3, 2020, election are available on the website of the Maine Secretary of State: https://www.maine.gov/sos/cec/elec/results/index.html.

[4] A red-lined copy of the State of Maine Immunization Requirements for Healthcare Workers, 10-144 C.M.R., ch. 264, is attached hereto as Exhibit A.  The choice of the September 17 date appears intended to allow a two week period for vaccines to become fully effective before the original enforcement date of October 1.

[5] *See* Mills Administration Provides More Time for Health Care Workers to Meet COVID-19 Vaccination Mandate, *available at:* https://www.maine.gov/governor/mills/news/mills-administration-provides-more-time-health-care-workers-meet-covid-19-vaccination.

absent proof of vaccination or exemption and are subject to civil fines, penalties, and loss of licensure.[6]  22 M.R.S. §§ 803-804.

Each of the Provider Defendants operates one or more DCHFs, licensed and regulated by DHHS.  As noted above, the Provider Defendants are required as a condition of their licensure to assure that all non-exempt employees who are physically present in any of their DHCFs are fully vaccinated for COVID-19.  To comply with the Immunization Requirements Rule, as amended by the ERTR on August 12, 2021, each of the Provider Defendants implemented an employment requirement that employees be fully vaccinated by the date established in the Immunization Requirements Rule or by the Governor, unless they present a valid medical exemption; and they communicated this requirement to their workforces.  (Nichols Decl., ¶9; Cohen Decl., ¶ 7; West Decl., ¶8.)  The John and Jane Doe Plaintiffs—who are the only parties to have verified the Complaint and therefore the only parties whose claims are before the Court on Plaintiffs' motion for a preliminary injunction—allege that they are healthcare workers employed at one of Defendants' "healthcare facilities,"[7] that they requested a religious exemption from vaccine requirement, and that their employer denied their request as inconsistent with the Immunization Requirements Rule.[8]   (Verified Complaint at ¶¶ 10-11, 14, 17, 19-20, 23-26.)

---

[6] Each of Defendants' licenses indicates that it is subject to compliance with the law, including DHHS's rules. (Declarations of April Nichols ¶3; Gail Cohen ¶ 3; Judy West ¶3.)  Pursuant to 22 M.R.S. § 1817, DHHS may "amend, modify, or refuse to renew a license in conformity with the Maine Administrative Procedure Act, or file a complaint with the District Court requesting suspension or revocation of any license on any of the following grounds: violation of this chapter or the rules pursuant to this chapter, permitting, aiding or abetting the commission of any illegal act in that institution, or conduct or practices detrimental to the welfare of a patient."

[7] As noted, the Provider Defendants assume that at least Jane Does 1-5 and John Does 2 and 3 allege that they work at DHCFs, as that term is defined in the Immunization Requirements Rule, and that they are therefore subject to the Immunization Requirements Rule, if it is found to be constitutional and not inconsistent with Title VII.

[8] Plaintiffs allege that Defendants asserted "the Governor does not allow [them] to consider or grant religious exemption or accommodation requests."  (Verified Comp. at ¶¶ 10-11, 14, 19-20, 23-26.)  There being no evidence whatsoever that the Governor's recent press releases concerning mandatory vaccination for healthcare workers in any way implicated the availability of a religious exemption, and in light of the undisputed fact that the religious and philosophical exemptions were repealed two years prior to the ERTR.

**ARGUMENT**

I.    **LEGAL STANDARD**

The four elements this Court must find satisfied in order to grant Plaintiffs' motion are well settled and include: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of an injunction; (3) that the balance of equities favor the plaintiffs; and (4) that an injunction serves the public interest.  *E.g. Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015.)    Plaintiffs "bear[] the burden of establishing that these four factors weigh in [their] favor." *Esso Standard Oil Co., v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006.)

The first element—likelihood of success on the merits—is "the touchstone of the preliminary injunction inquiry." *Maine Republican Party v. Dunlap*, 324 F. Supp.3d 202, 207 (D. Me. 2018) *quoting Maine Educ. Ass'n Benefits Trust v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012.)  "[I]f the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *Id. quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002.)   Not only are Plaintiffs unlikely to succeed on the merits, the remaining preliminary injunction factors weigh heavily against them.

II.   **PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AGAINST DEFENDANTS.**

A.   **Count II, purporting to allege a violation of the Supremacy Clause of the United States Constitution, does not state a viable cause of action.**

In Count II, Plaintiffs allege that Defendants' acts of allegedly "remov[ing] the availability of religious exemptions and accommodations in the State of Maine" violates the Supremacy Clause of the United States Constitution. (Verified Comp. ¶ 148.) The Supremacy Clause of the United States Constitution is a rule of decision, however, not a "source of any

federal rights." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324-25 (2015) (internal quotation omitted.)  In other words, the Supremacy Clause "does not create a cause of action," but rather "instructs courts what to do when state and federal law clash . . . ." *Id.*

Accordingly, Plaintiff's "Supremacy Clause" claim is not a separate claim at all, but rather an articulation of the standard they contend this Court should apply as it evaluates Plaintiffs' constitutional claims against the State Defendants or the Title VII claims against the Provider Defendants.  As explained below, there is no conflict between Title VII and the Immunization Requirements Rule and therefore no basis to invoke the Supremacy Clause.

**B.  Count IV, purporting to allege violations of Title VII of the Civil Rights Act of 1964, is both premature and meritless.**

Without having exhausted their administrative remedies with the Equal Employment Opportunity Commission (EEOC) or the Maine Human Rights Commission, and without invoking any equitable exception to the exhaustion requirement, Plaintiffs assert claims for religious discrimination against Defendants, contending that Title VII of the Civil Rights Act of 1964 (Title VII) prohibits Defendants from complying with state law and asking this Court for injunctive relief, essentially granting the exemptions Defendants cannot grant them without violating the Immunization Requirements Rule.  Together with a claim that invokes the Supremacy Clause of the United States Constitution, these Title VII claims erroneously assume that federal law prohibits employers from enforcing minimum qualification standards established by state law if those qualification standards conflict with an employee's religious beliefs.  In fact, requiring Plaintiffs to produce evidence of immunization against COVID-19 in accordance with the Immunization Requirements Rule does not constitute discrimination on the basis of religion at all unless there is a reasonable accommodation available that would impose only a *de minimis* cost on their employers.  Plaintiffs certainly have not identified such an accommodation.

Instead, they interpret the term "accommodation" to mean "exemption," insisting Defendants must disregard the Immunization Requirements Rule, regardless of the attendant public health and staffing consequences and notwithstanding the fact that compliance with the rule is a condition of their licensure.  They cite no case law in support of their position, because none exists.

> **a. Plaintiffs have failed to exhaust administrative remedies and their Title VII claims are therefore subject to dismissal.**

Title VII of the Civil Rights Act of 1964 ("Title VII") requires that, before filing a civil suit, aggrieved individuals must first file a discrimination complaint with the Equal Employment Opportunity Commission.  42 U.S.C. § 2000e-5(e)(1). While not a jurisdictional requirement, administrative exhaustion is a condition precedent for bringing a claim under Title VII. *Martinez-Rivera v. Puerto Rico*, 812 F.3d 69, 77-78 (1st Cir. 2016).  "Simply put, 'a federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted.'"  *Caudill v. Kennebec County*, 2019 WL 1270921, *8 (D. Me. Mar. 19, 2019) *quoting Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017.)  Although courts have recognized certain equitable exceptions to the exhaustion requirement typically triggered by acts of the employer—including estoppel, waiver, and tolling—Plaintiffs point to no circumstances in this case potentially giving rise to these exceptions, which, as the First Circuit has cautioned, should in any event be "invok[ed] . . . sparingly and interpret[ed] narrowly . . .." *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005) *citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 197-98 (1982).  Defendants have located no case in which a court excused a plaintiff from exhausting their administrative remedies with the EEOC, simply because time was of the essence and the plaintiff sought preliminary injunctive relief.

To Defendants' knowledge, none of the plaintiffs has complied with the requirement of filing an administrative complaint alleging religious discrimination with the EEOC against any of them.  (Nichols Decl., ¶10; Cohen Decl., ¶8; West Decl., ¶9.).)  There being no legitimate basis to excuse Plaintiffs from this condition precedent to suit, Plaintiff's Title VII claims are subject to dismissal.

### b.   Title VII does not preempt the Immunization Requirements Rule.

By invoking the Supremacy Clause and asserting repeatedly that, by complying with the Immunization Requirements Rule, Defendants are "ignoring" or denying the applicability of Title VII, Plaintiffs apparently contend that Title VII preempts the Immunization Requirements Rule, though they do not use the word "preemption" or discuss the relevant case law in their motion.  In enacting Title VII, Congress expressly declared that it was not occupying the field. [9] Thus, the question is whether the Immunization Requirements Rule actually conflicts with Title VII.  *California Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280-81 (1987).  "Such a conflict occurs either because 'compliance with both federal and state regulations is a physical impossibility,' or because state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id. quoting Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) *and Hines v. Davidowitz*, 312 U.S. 52, 67 (1941.) "[P]reemption is not to be lightly presumed."  *Id.*  Indeed, Plaintiffs bear a particularly heavy burden here, as state and local regulation "of matters related to health and safety" are presumed

---

[9] The Civil Rights Act of 1964 confirms, in two places, that state laws will be preempted only if they actually conflict with federal law.  42 U.S.C. § 2000e-7 ("Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . . other than such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title."); 42 U.S.C. § 2000h-4 ("Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field . . . nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.")

to be valid under the Supremacy Clause.  *Hillsborough County, Fla. V. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715 (1985).

Title VII prohibits employers from discriminating against employees on the basis of religion.  42 U.S.C. § 2000e-2.  The term "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observances or practices without undue hardship on the conduct of the employer's business."  *Id.* § 2000e(j).  Nowhere does Title VII state that employers cannot enforce qualification standards dictated by state law and deemed necessary for public health reasons if such requirements conflict with employees' religious beliefs.  In fact, as the case law makes clear, enforcement of reasonable qualification standards and work rules will rarely violate Title VII, even if they conflict with an employee's sincerely held religious belief.  *E.g. TransWorld Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) (Defendant "was not required by Title VII to carve out a special exception to its seniority system in order to help [Plaintiff] meet his religious obligations."); *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 313-14 (4th Cir. 2008) ("A duty of 'reasonableness' cannot be read as an invariable duty to eliminate the conflict between workplace rules and religious practice.")    Courts have consistently and repeatedly rejected claims, similar to Plaintiffs, that Title VII is an obstacle to the enforcement of safety-related work rules with which employees cannot comply for religious reasons.  *E.g. Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383 (9th Cir. 1984)(holding it would be an undue hardship for the employer to excuse the plaintiff from the requirement that he shave his facial hair to accommodate the use of a respirator that would protect him from exposure to toxic gases); *Kalsi v. New York City Transit Auth.*, 62 F. Supp.2d 745, 747-48 (E.D.N.Y. 1998) *aff'd* 189 F.3d 461 (2d Cir. 1999) (holding it would be an undue hardship for the employer to excuse

employee from requirement that he wear a hard hat as a subway car inspector in order to accommodate a turban).

In short, the Immunization Requirements Rule does not require employers to do anything that Title VII prohibits, or prohibit employers from doing anything Title VII requires. Nothing in the Immunization Requirements Rule precludes employers from accommodating employees' religious beliefs if possible to do so without running afoul of the Immunization Requirements Rule, and nothing in Title VII entitles employees to an exemption from any qualification standard they cannot meet for religious reasons.

Title VII's prohibition on religious discrimination "is not an area for absolutes." *Firestone Fibers & Textiles Co.*, 515 F.3d at 313. Federal law requires "reasonable" accommodations that can be implemented without "undue hardship." These are flexible concepts, applied on a case by case basis, and they are inconsistent with Plaintiff's bald and categorical pronouncements about Title VII.

### c. Plaintiffs' Title VII claims fail on their merits.

The First Circuit employs a two-part framework to evaluate claims of religious discrimination under Title VII. First, the plaintiff must make a "*prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the basis for adverse action." *Sanchez-Rodriguez v. AT&T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 2 (1st Cir. 2012.) If the plaintiff does so, the burden moves to the defendant to show that "it offered a reasonable accommodation *or* that a reasonable accommodation would be an undue burden." *Id.* An accommodation constitutes an undue hardship "if it would impose more than a *de minimis* cost on the employer." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 134 (1st Cir. 2004) *citing Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83 (1977). Costs that will justify denying a

particular accommodation can be economic or non-economic, and include increased "safety risks and the risk of liability for the employer." *E.g., EEOC v. Oak-Rite Mfg. Corp.*, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001)("Title VII does not require employers to test their safety policies on employees to determine the minimum level of protection needed to avoid injury.")

Plaintiffs do not seek an accommodation that would remove them from the scope of the Immunization Requirements Rule; they seek an exemption that does not exist under state law. Permitting Plaintiffs to continue to work in licensed healthcare facilities after October 29 would place Defendants in violation of the Immunization Requirements Rule, subject Defendants to financial penalties, put Defendants' licensure at risk, increase the risk of transmission of COVID-19 among patients and employees, and thereby jeopardize Defendants' ability to render care to patients when significant numbers of employees are ill or required to quarantine. Each of these risks is substantial; and together, they are compelling—the opposite of *de minimis.*

Defendants agree with and adopt the State Defendants' discussion of the safety- and public health-related justifications for adding COVID-19 to the list of vaccines required of employees working in DHCFs. There is overwhelming evidence the COVID-19 vaccines are highly effective at preventing serious illness and hospitalization and that other measures have proven insufficiently effective. Preventing serious illness and hospitalization is of interest to every employer, but this interest is obviously heightened in the case of healthcare employers, who also have a crucial interest in protecting both the health of vulnerable patients and the availability of staff to deliver healthcare – to COVID- and non-COVID patients alike. The increased safety risk of permitting individuals with non-medical objections to vaccination to continue working in patient-facing settings is sufficiently burdensome, standing alone, to justify

denial of the exemptions Plaintiffs sought.  *E.g. Robinson v. Children's Hospital Boston*, 2016 WL 1337255, at \*\*9-10 (D. Mass. Apr. 5, 2016.)

The safety risks do not stand alone, however, because the Immunization Requirements Rule now requires the Provider Defendants to obtain evidence of COVID-19 vaccination from employees who work at DHCFs, as a condition of their licensure.  "Title VII does not require employers to provide accommodations that would place them 'on the razor's edge' of liability." *Kluge v. Brownburg Community Sch. Corp.*, 2021 WL 2915023, at \*22 (S.D. Ind. July 12, 2021) *quoting Matthews v. Wal-Mart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011.)  *See also Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law.")  Yet that is precisely what Plaintiffs insist that the Provider Defendants must do – violate state law in order to guarantee them both the freedom to exercise their religious convictions *and* their continued employment – even though doing so would put them in clear violation of their licenses – a status that can hardly be characterized as a *de minimis* burden.

In sum, the same public health considerations that motivated the Legislature to eliminate non-medical exemptions in 2019, that motivated Maine voters to reject a veto referendum, and that motivated the Maine CDC to add COVID-19 to the mandatory vaccination list on August 12, 2021, all support Defendants' decisions not to extend non-medical exemptions to employees working in their DHCFs.  Title VII requires only reasonable accommodations that do not create an undue hardship on the employers' business.  It does not require Defendants to violate state law to accommodate sincerely held religious beliefs, and that includes operating contrary to an

express condition of their licensure during the very pandemic that gave rise to the need for the condition.

**C.** **Count V, purporting to allege an unlawful conspiracy to violate Plaintiffs' rights under 42 U.S.C. § 1985, is unsupported by and contradicted by the evidence.**

Plaintiffs allege that the State's addition of COVID-19 to the list of vaccines required in the Immunization Requirements Rule, combined with the Provider Defendants' "agreement" to comply with state law, constitute a conspiracy to deprive Plaintiffs "of their constitutionally protected exercise of religious beliefs."  (Verified Comp. ¶¶ 183-194.)  To recover under 42 U.S.C. §1985(3), Plaintiffs must show: (1) the existence of a conspiracy; (2) a conspiratorial purpose to deprive Plaintiffs of equal protection of the laws; (2) an overt act in furtherance of the conspiracy; and (3) injury to person or property, or a deprivation of a constitutionally protected right.  *LeBaron v. Spencer*, 527 Fed.Appx. 25, 33 (1st Cir. 2013) *citing Perez-Sanchez v. Public Building Auth.*, 531 F.3d 104, 107 (1st Cir. 2008).  It is well settled that a claim under Section 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Perez*-Sanchex, 531 F.3d at 107 *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Springer v. Seaman*, 821 F.2d 871 (1st Cir. 1987).  Plaintiffs are not entitled to injunctive relief and their conspiracy claim fails on the merits for several independent reasons.

First, Plaintiffs have failed to articulate any ongoing conspiracy that an injunction could thwart.  The alleged conspiracy was completed as soon as COVID-19 was added to the list of required vaccines.  Since the conspiracy is alleged to have occurred in the past, Plaintiffs' request for injunctive relief on Count V is duplicative of its same requests in connection with the constitutional and Title VII claims, which fail for the reasons set forth in the State Defendants' opposition and above.

Second, Plaintiffs have failed to offer any evidence whatsoever in support of the first element of their claim, which requires them to prove that there was an explicit or implicit agreement between the State Defendants and the Provider Defendants that was motivated by a specific intent on the part of the Provider Defendants to deprive plaintiffs of their constitutional rights.  The Complaint is verified only by the John and Jane Doe plaintiffs, whose verifications are limited to the allegations that "pertain to [them]" and about which they have "personal knowledge."  There is no basis to infer that these plaintiffs have any personal knowledge concerning communications between state officials and private healthcare institutions about the decision to add COVID-19 to the list of mandatory vaccines.  Moreover, the Verified Complaint does not contain even a conclusory allegation about the existence of a conspiracy to amend 22 M.R.S. §802 to eliminate non-medical exemptions two years ago; and it is this legislation, and not the addition of COVID-19 to the list of mandated vaccines, that makes it impossible for Defendants to permit unvaccinated workers who lack a medical exemption to work in licensed healthcare facilities.[10]  In short, in the absence of any evidence that the State Defendants and the Provider Defendants actually conspired and reached an agreement, Count V fails.  *E.g. Kurd v. Republic of Turkey*, 374 F. Supp.3d 37, 62 (D.D.C. 2019)("A common goal, never discussed explicitly or implicitly among the Defendants, does not constitute an agreement" for purposes of Section 1985(3).) *citing Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 557 (2007)(stating that, to adequately plead an agreement, the plaintiff cannot rely on "parallel conduct that could just as well be independent action").

---

[10] Even if the Complaint contained such an allegations, it would be patently insufficient to sustain a claim of conspiracy.  Private parties who lobby or otherwise communicate with the Legislature cannot possibly be liable for conspiracy simply because the legislation they support is ultimately found to be unconstitutional or otherwise not sustainable.  *Cf. Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000)(discussing *Noerr-Pennington* doctrine, which shields entities who band together to influence government action from antitrust liability, even when

Third, even if Plaintiffs could prove a meeting of the minds between the State and the Provider Defendants in support of both the elimination of non-medical exemptions in 2019 and the August 12, 2021 addition of COVID-19 to the Immunization Requirements Rule, they have presented no evidence whatsoever to suggest that the State Defendants and the Provider Defendants were motivated by discriminatory animus.  It is well settled that "[a] conspiracy is not 'for the purpose' of [depriving Plaintiffs of their constitutional rights] simply because it has an effect on a protected right."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993).  Rather, "'[t]he right must be *aimed at*'; . . . its impairment must be a conscious objective of the enterprise."  *Id. quoting Carpenters v. Scott*, 463 U.S. 825, 833 (1983).  The evidence reflects that the 2019 legislation, the Maine CDC's addition of COVID-19 to the Immunization Requirements Rule, and the Provider Defendants' expressions of support that are quoted in the Verified Complaint were all motivated by a desire to increase levels of vaccination and thereby decrease transmission, serious illness, and death.  There being no evidence whatsoever that any defendant harbored discriminatory animus toward Plaintiffs because of their religious views, Plaintiffs are unlikely to succeed on the merits of their conspiracy claim.  *E.g. Bray*, 506 U.S. at 276-77 (reaffirming that awareness of the consequences of regulation does not equate to discriminatory intent; "Petitioners oppose abortion, and it is irrelevant to their opposition whether the abortion is performed after [the plaintiffs' exert their right to] interstate travel.")

Finally, for the reasons set forth in the State Defendants' opposition to Plaintiffs' motion, Plaintiffs cannot establish that they have been deprived of any constitutional right.

---

the entities seek to restrain competition or harm competitors, as long as their resort to governmental process is not objectively baseless and intended merely to burden a competitor with the governmental process itself.)

III.   **PLAINTIFFS CANNOT SHOW THEY WILL SUFFER IRREPARABLE HARM IN CONNECTION WITH THEIR CLAIMS AGAINST DEFENDANTS.**

To meet the irreparable harm requirement, Plaintiffs must demonstrate that they are likely to be irreparably harmed absent an injunction.  *Animal Welfare Institute v. Martin*, 588 F.Supp.2d 70, 101-02 (D. Me. 2008).  Harm that can be adequately compensated after the fact through monetary damages is, by definition, not irreparable.  *E.g. Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp.2d 63, 67 (D. Me. 2008) *citing Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).  The First Circuit Court of Appeals measures irreparable harm "on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits."  *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). "Where, as here, 'the movant[s] fail[] to demonstrate a likelihood of success on the merits, the remaining elements are of little consequence.'"  *Harris and Cluett v. Univ. of Massachusetts*, 2021 WL 3848012, at *8 (D. Mass. Aug. 28, 2021) *quoting Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020).  Unable to demonstrate that their claims against Defendant are likely to succeed, Plaintiffs have an impossibly steep uphill battle.  Additionally, the availability of money damages and post-trial relief and the compelling public interest in widespread vaccination and population-level immunity render preliminary injunctive relief far out of reach.

The well-settled principle that the loss of First Amendment freedoms will usually constitute irreparable harm has no application here.  Plaintiffs do not allege that, absent an injunction, they will be required to accept the COVID-19 vaccine and thereby violate their sincerely held religious beliefs; only that they will likely lose their jobs.  Thus, their claims are dissimilar to those raised in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) and other of the United States Supreme Court's "shadow docket" decisions, where the

plaintiffs complained that governmental regulation prevented them from worship or otherwise made it impossible for them to adhere to their sincerely held religious beliefs. Plaintiffs affirmatively plead that they will act in accordance with their religious beliefs and therefore decline the vaccine. (Verified Comp. ¶¶68-74.) Hence their ability to adhere to their beliefs is not at issue. The harm they complain of is the loss of employment.

One of the central purposes behind Congress' enactment of Title VII, however, is "to make persons whole for *injuries suffered* on account of unlawful employment discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (emphasis added). Any Plaintiff who can demonstrate a meritorious Title VII claim will have an adequate remedy at law in the form of back pay, front pay or reinstatement, compensatory and punitive damages, and attorneys' fees— *i.e.* money. 42 U.S.C. §1981a. Thus, each and every plausible harm Plaintiffs might experience as a result of alleged discrimination by Defendants is capable of being remedied through post-trial relief. Plaintiffs cannot make the requisite showing of irreparable harm, and injunctive relief is not an appropriate or available remedy at this time. *DeNovellis v. Shalal*, 135 F.3d 57, 63-65 (1st Cir. 1998.)

## IV.   THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR DEFENDANTS

The State Defendants' arguments concerning the public health-related reasons for the Immunization Requirements Rule are also and independently dispositive. If Plaintiffs decline the vaccine for religious reasons, they may lose their jobs. If, on the other hand, Defendants are required to extend exemptions from vaccination to all employees who claim – however sincerely – a conflict between vaccination and their sincerely held religious beliefs, the risk of serious illness or death for themselves, their coworkers, and patients will increase. *See also Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, at *43 (N.D. Ind. July 18, 2021) (holding the

balance of harms weighed against injunctive relief where the plaintiffs were not "being forced to take the [COVID-19] vaccine against their will" and where their decision "necessarily bears on the health of other[s]"); *Harris and Cluett*, 2021 WL 3848012, at *8 ("[T]he balance of equities tips in Defendants' favor given the strong public interest here that they are promoting—preventing further spread of COVID-19 . . ., a virus which has infected and taken the lives of thousands . . . ."). *See also Bridges v. Houston Methodist Hosp.*, 2021 WL 2399994, at *1 (S.D. Tex. June 12, 2021) ("[The hospital] is trying to do their business of saving lives without giving them the COVID-19 virus.  It is a choice made to keep staff, patients, and their families safer. [The plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else.")

The potential public health implications of injunctive relief are also relevant to the public interest inquiry.  "When balancing the public interest—meaning the interests of those not before the court—courts must . . . keep in mind that plaintiffs are not asking to be allowed to make a self-contained choice to risk only their own health . . . ."  *Casell v. Snyders*, 990 F.3d 539, 550 (7th Cir. 2021).  There is, of course, the risk that unvaccinated workers will contract or spread COVID-19, which is not insignificant.  That is not the only risk, however.  When an unvaccinated employee is exposed to the virus, they are vulnerable to illness and may be required to quarantine or otherwise be absent from the workplace, which means their employer cannot rely on them to deliver patient care.  The risk that Defendants' ability to staff their critical units during a pandemic might be jeopardized because unvaccinated employees have come into close contact with the virus is simply unacceptable.  It cannot seriously be questioned that the public has a compelling interest in ensuring that employees working in licensed healthcare facilities are vaccinated against COVID-19 in the midst of a COVID-19 pandemic.

In times of medical and scientific uncertainty, states must be given latitude develop policies and enact laws that reflect the best known solution at the time.  *Id.  See also Jacobson v. Comm. of Massachusetts*, 197 U.S 11, 30-31 (1905).  The Immunization Requirements Rule reflects the State of Maine's best solution to mitigating harm to healthcare workers and patients in the midst of a pandemic.  The risk to the public of enjoining the rule is high and the potential harm to the public is both irreparable and undeniable.  On the other hand, absent injunctive relief, the Plaintiffs risk only the ability to work in a DHCF during a time where jobs are widely available in the State of Maine.  The balance of harms and the public interest both plainly favor Defendants.

## CONCLUSION

Plaintiffs have not carried their burden on any of the four factors required under *Arborjet* and *Esso Standard Oil*.  Defendants respectfully request that the Motion for Preliminary Injunction be denied.

Dated: September 15, 2021

/s/ James R. Erwin
James R. Erwin

/s/ Katharine I. Rand
Katharine I. Rand

Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, Maine 04101
207-791-1100
jerwin@pierceatwood.com
krand@pierceatwood.com

*Counsel for Defendants*
*MaineHealth, Genesis Healthcare of Maine, LLC, Genesis Healthcare LLC and MaineGeneral Health*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 15, 2021, I electronically filed the foregoing

Opposition to Motion for Preliminary Injunction by MaineHealth, Genesis Healthcare of Maine,

LLC, Genesis Healthcare LLC, and MaineGeneral Health with the Clerk of Court using the

CM/ECF system which will send notification of such filing(s) to counsel of record.


Dated: September 15, 2021                              /s/ James R. Erwin
                                                       James R. Erwin

                                                       Pierce Atwood LLP
                                                       Merrill's Wharf
                                                       254 Commercial Street
                                                       Portland, Maine 04101
                                                       jerwin@pierceatwood.com

                                                       *Counsel for Defendants*
                                                       *MaineHealth, Genesis Healthcare of*
                                                       *Maine, LLC, Genesis Healthcare*
                                                       *LLC and MaineGeneral Health*