UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOES 1-6, JOHN DOES 1-3 <br> JACK DOES 1-1000, JOAN DOES 1-1000, <br> <br> Plaintiffs, <br> <br> v. <br> <br> JANET T. MILLS, in her official capacity <br> As Governor of the State of Maine, <br> JEANNE M. LAMBREW, in her official <br> Capacity as Commissioner of the Maine <br> Department of Health and Human Services, <br> NIRAV D. SHAH, in his official capacity <br> as Director of the Maine Center for Disease <br> Control and Prevention, <br> MAINEHEALTH, <br> GENESIS HEALTHCARE OF MAINE, LLC, <br> GENESIS HEALTHCARE, LLC, <br> NORTHERN LIGHT HEALTH <br> FOUNDATION, and <br> MAINEGENERAL HEALTH, <br> <br> Defendants. | Civil Action No. 1:21-cv-00242-JDL <br> <br> **DFENDANT NORTHERN LIGHT HEALTH FOUNDATION'S OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION** |

Defendant Northern Light Health Foundation (hereinafter "Northern Light"), by and through undersigned counsel, hereby submits its Opposition to Plaintiffs' Preliminary Injunction Motion [ECF No. 3], as set forth below.

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

As of September 14, 2021, the global pandemic of the novel coronavirus of 2019 ("COVID-19") has infected 41,262,574 people and resulted in 660,380 deaths in the United States. *See United States COVID-19 Cases, Deaths, and Laboratory Testing (NAATs) by State, Territory, and Jurisdiction*, CDC (last updated Sept. 14, 2021), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days. COVID-19 represents a major threat to public health in

the United States and cases of COVID-19 are steeply on the rise in Maine. *See id.; COVID-19: Maine Data,* MAINE.GOV (last updated Sept. 9, 2021), https://www.maine.gov/dhhs/mecdc/infectious-disease/epi/airborne/coronavirus/data.shtml*; Press Briefing*, NORTHERN LIGHT HEALTH (Aug. 18, 2021) at 20:17, 24:50 https://northernlighthealth.org/Resources/COVID-19/News-Room ("What we were dealing with last fall . . . was the original strain of COVID-19 . . . but this new Delta variant is as if we are dealing with a completely different virus, it acts differently, it spreads more readily and it appears at least in some individuals to cause more serious disease . . . it is very serious . . . .").[1]

In light of the escalating COVID-19 crisis in the United States and Maine, on August 12, 2021, the Maine Department of Health and Human Services ("DHHS") issued an emergency rule which added the COVID-19 vaccine to the list of mandated vaccines for healthcare workers (the "Emergency Rule").[2] *See* Exhibit A (attached hereto), 10-144 Me. Code R. § 264 (amended Aug. 12, 2021); *Mills Administration Requires Health Care Workers To Be Fully Vaccinated Against COVID-19 By October 1*, MAINE.GOV (Aug. 12, 2021), https://www.maine.

---

[1] In addition to the fact that the Press Briefings cited in this brief satisfy certain hearsay exceptions set forth in Fed. R. Civ. P. 803, the Press Briefings should be considered independently by the Court given the issues presented by this case in its present procedural posture. Specifically, this Court has observed that "'[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings'. . . the rules of evidence do not apply [to preliminary injunctions] . . . ." *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 255-56 (D. Me. 2008) (quoting *Asseo v. Pan American Grain Co., Inc*., 805 F.2d 23, 26 (1st Cir. 1986)); *Boston Taxi Owners Ass'n, Inc. v. City of Boston*, 84 F. Supp. 3d 72, 78 (D. Mass. 2015) ("[t]he Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction").

[2] DHHS has the authority to issue emergency rules as part of its authority to "[e]stablish procedures for the control, detection, prevention . . . of communicable . . . diseases, including public immunization . . . programs." 22 M.R.S. § 802(1)(D), (3) ("[t]he department shall adopt rules to carry out its duties as specified in this chapter"); 18 M.R.S. § 8054(1). Rules and regulations promulgated by governmental agencies have the force and effect of law. *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 329 (6th Cir. 2001) ("It is well settled that '[a] government agency's regulations that have been published in the Code of Federal Regulations have the force and effect of law. . . .'") (quoting *Moody v. United States,* 774 F.2d 150, 156 (6th Cir.1985), *cert. denied,* 479 U.S. 814 (1986)); see also *Hale v. State*, 433 A.2d 374, 377 n.3 (Me. 1981) (the Maine Public Payments Manual from DHHS has the full force and effect of law since it is a compendium of DHHS rules and regulations).

gov/governor/mills/news/mills-administration-requires-health-care-workers-be-fully-vaccinated-against-covid-19-october ("Health care workers perform a critical role in protecting the health of Maine people, and it is imperative that they take every precaution against this dangerous virus, especially given the threat of the highly transmissible Delta variant"). The Emergency Rule requires employees of Designated Healthcare Facilities (i.e., "a multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine . . .") to receive their final dose of the COVID-19 vaccine on or before September 17, 2021.[3] 10-144 Me. Code R. § 264(1)(E)-(F), (2), (5), (7) (amended Aug. 12, 2021).

On September 2, 2021, Governor Janet Mills announced that DHHS would not begin enforcing the Emergency Rule until October 29, 2021 to provide "an additional month for healthcare workers to complete their vaccination protocol[.]" *Mills Administration Provides More Time For Health Care Workers to Meet COVID-19 Vaccination Requirement*, MAINE.GOV (Sept. 2, 2021), https://www.maine.gov/governor/mills/news/mills-administration-provides-more-time-health-care-workers-meet-covid-19-vaccination.

The Emergency Rule and issued guidance make clear that (a) religious exemptions to the COVID-19 vaccine requirement are not permitted, (b) alternatives to becoming vaccinated such

---

[3] Mandatory vaccination laws in Maine previously included religious and philosophical exemptions. In September 2019, the religious and philosophical exemptions were removed from the vaccination laws by a vote in the Maine legislature – long before the global pandemic of COVID-19 took hold and vaccines to combat COVID-19 became available. *See* P.L. 2019, ch. 154, §§ 2, 9-11 (varying effective dates); 22 MRS § 802 (4-B); *Health Care Worker Vaccination FAQS,* Maine.Gov (last updated Sept. 2, 2021) at FAQs 24-25, 30, https://www.maine.gov/covid19/vaccines/public-faq/health-care-worker-vaccination. On April 14, 2021, the mandatory vaccination law for healthcare workers was updated to reflect the removal of the religious and philosophical exemptions for routine vaccines such as mumps, rubella, Hepatitis B and influenza. *See* 10-144 Me. Code R. § 264 (amended Apr. 14, 2021), *available at* https://www.maine.gov/dhhs/mecdc/infectious-disease/immunization/providers/documents/Immunization%20Requirements%20for%20Healthcare%20Workers.pdf (stating in the introduction, "[t]his rule is issued pursuant to the statutory authority of the Department of Health and Human Services to require immunization of the employees of designated healthcare facilities as set forth in 22 MRS § 802 to reduce the risk for exposure to, and possible transmission of, vaccine-preventable diseases due to healthcare workers' contact with patients, or infectious material from patients").

as masking and testing are not allowed, and (c) Designated Healthcare Facilities that do not comply with the Emergency Rule will face serious penalties for non-compliance such as civil fines and other penalties from the Maine Division of Licensing and Certification, including the potential loss of licensure. *See* 22 MRS §§ 803-804; *Health Care Worker Vaccination FAQS*, MAINE.GOV (last updated Sept. 13, 2021) at FAQs 24-25, 30, https://www.maine.gov/ covid19/vaccines/public-faq/health-care-worker-vaccination; Declaration of Paul Bolin at ¶ 3 (confirming that as a licensed healthcare facility, Northern Light must comply "with applicable laws, including DHHS rules").

Northern Light is a healthcare system located in Maine, having ten hospitals, as well as numerous pharmacies, laboratories, home and hospice care and long-term health care facilities. *See Northern Light Health Organizations*, NORTHERN LIGHT HEALTH, https://northernlighthealth.org/Our-System.  As such, Northern Light falls within the definition of a Designated Healthcare Facility under the Emergency Rule.  *See* 10-144 Me. Code R. § 264(1)(E) (amended Aug. 12, 2021).

It is worth nothing that on or about August 2, 2021, a date which **pre-dated** the government's issuance of the Emergency Rule, Northern Light announced its own mandatory COVID-19 vaccination policy, and that its policy did, in fact, provide for religious exemptions in appropriate circumstances. *See Northern Light Health to Require COVID-19 Vaccine For Staff Once FDA Lifts Emergency Use Authorization*, NEWS CENTER MAINE (Aug. 2, 2021), https://www.newscentermaine.com/article/news/health/coronavirus/vaccine/northern-light-health -to-require-covid-19-vaccine-for-staff-once-fda-lifts-emergency-use-authorization/97-3e10ac5d-0044-4 62f-8520-95ce9b18e9dd (confirming that requests for "religious . . . exemptions will be

4

reviewed on a case-by-case basis"); *Press Briefing*, NORTHERN LIGHT HEALTH (Aug. 3, 2021), https://northernlighthealth.org/Resources/COVID-19/News-Room.

It should be clearly understood that Northern Light made the decision to issue its mandate after deliberate and careful consideration, which included observation of the safety and efficacy of the COVID-19 vaccines, with the goal of protecting its patients and workforce during the resurgent pandemic. *See Press Briefing* (Aug. 3, 2021) at 19:08 ("We are seeing how other parts of the world and the country, how this pandemic is resurging with the Delta variant and we need to be prepared for that here and the vaccine is the best way to do that"); *Press Briefing*, NORTHERN LIGHT HEALTH (Aug. 26, 2021) at 39:13, https://northernlighthealth.org/Resources/COVID-19/News-Room ("We are the ones taking care of everybody else and therefore we need to not, we cannot be part of the problem by spreading an infection . . . and that is the reason why we have put all of those precautions that we have in each and every one of our facilities and that is why we support vaccination of healthcare workers").

Given the government's imposition of the Emergency Rule, and having no power to abrogate it,[4] Northern Light amended its COVID-19 vaccination policy to remove the religious exemption for employees covered by the Emergency Rule (as Plaintiffs allege they are) and instructed employees to receive their final dose of the COVID-19 vaccine on or before September 17, 2021 as required by the Emergency Rule. *See Press Briefing* (Aug. 18, 2021). When, on or about September 2, 2021, the government announced that it was suspending application of the Emergency Rule until October 29, 2021, Northern Light amended its COVID-19 vaccination policy a second time, advising employees that they now had until October 15,

---

[4] This observation is not intended to suggest that Northern Light believes the Emergency Rule is in any way improper. Rather, it is simply an observation that whether the Emergency Rule is constitutionally sound or not, private persons subject to the jurisdiction of the State are bound to comply with state laws unless and until they are rescinded, repealed, or otherwise invalidated.

5

2021 to become vaccinated. *See Press Briefing*, NORTHERN LIGHT HEALTH (Sept. 8, 2021) at 17:00, 27:40, https://northernlighthealth.org/Resources/COVID-19/News-Room.

To the extent that, following adoption by the government of its Emergency Rule, Northern Light has received requests for religious exemption from employees covered by its dictates, Northern Light has responded in the form of the letter attached to Plaintiffs' Complaint as Exhibit C. *See* Ver. Compl., Ex. C [ECF No. 1-3].

## II. ARGUMENT

### PRELIMINARY INJUNCTION STANDARD

When assessing whether to issue a preliminary injunction, the Court "must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.,* 794 F.3d 168, 171 (1st Cir. 2015). Plaintiffs bear the burden of establishing that the aforementioned factors "weigh in [their] favor." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiffs have not satisfied any of these elements.

### PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

"Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 102 F.3d 12, 16 (1st Cir. 1996). "If the movant fails to demonstrate a likelihood of success on the merits, the remaining elements are of little consequence." *Akebia Therapeutics, Inc. v. Azar,* 976 F.3d 86, 92 (1st Cir. 2020). Plaintiffs cannot prevail on this threshold inquiry because there is no Supremacy Clause violation. Title VII yields the same result as application of the Emergency Rule; i.e., no accommodation in the

form of a religious exemption from the vaccine mandate may be granted in the circumstances presented. Similarly, there was no conspiracy to violate Plaintiffs' rights.

      A.      <u>Plaintiffs Are Not Likely To Succeed on The Merits</u>

            *1.*      *There Is No Violation of the Supremacy Clause or Title VII*

Neither the Emergency Rule, nor Northern Light's conduct in abiding by it, violate the Supremacy Clause of the United States Constitution.[5] Neither are at odds with Title VII. Plaintiffs' contention that Northern Light's compliance with the Emergency Rule is violative of Title VII is grounded on the incorrect assertion that in the circumstances of this case Title VII provides an absolute right to a religious accommodation in the form of an exemption to the government's mandatory COVID-19 vaccination policy for healthcare workers. As explained below, this is simply incorrect.

Title VII addresses preemption issues in only two areas. First, section 708 of Title VII states "[n]othing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title." 42 U.S.C. § 2000e–7. Second, Section 1104 of Title XI (applicable to all titles of the Civil Rights Act, including Title VII), states "[n]othing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be

---

[5] It is critical to note that the Supremacy Clause does not provide for an independent basis to claim a violation of law. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324-25 (2015) (confirming that the Supremacy Clause of the United States Constitution "creates a rule of decision . . . [and] is not the 'source of any federal rights' . . . and certainly does not create a cause of action.") (Internal quotations omitted.)

7

construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof." 42 U.S.C. § 2000h-4.

As explained further below, the Emergency Rule – specifically, the absence of a religious exemption in such rule – does not require or permit Northern Light to engage in an unlawful employment practice in violation of Title VII. Moreover, contrary to Plaintiffs' implicit assertion, Title VII **never** requires an employer to make a religious accommodation (or any other accommodation for that matter), when doing so would constitute an undue hardship as is the case here.

In *California Federal Sav. And Loan Ass'n v. Guerra*, the Supreme Court analyzed Sections 708 and 1104 and concluded "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of Title VII; these two sections provide a 'reliable indicium of congressional intent with respect to state authority' to regulate employment practice." 479 U.S. 272, 282 (1987) (internal citations omitted). Because Congress did not intend for Title VII to occupy the field, the preemption inquiry centers on whether there is conflict between the Emergency Rule and Title VII such that "compliance with both federal and state regulations is a physical impossibility." *Id*. at 281 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)). Here, application of the Emergency Rule and Title VII to Plaintiffs yields the same result. Therefore, there is no conflict preemption.

By its terms, Title VII constrains the conduct of employers.[6] It does not purport to govern the State's ability to set forth the regulations healthcare providers must abide by. Title VII expressly states that "[i]t shall be an unlawful employment practice for employers – (1) to

---

[6] As a procedural matter, Plaintiffs have not exhausted their administrative remedies with respect to their Title VII claim. *See* Bolin Decl. at ¶ 9. Accordingly, that claim is not even properly before the Court. *See* 42 U.S.C. § 2000e–5(f)(1); *Frederique-Alexandre v. Department of Natural and Environmental Resources Puerto Rico*, 478 F.3d 433, 440 (1st Cir. 2007) ("A plaintiff must exhaust his administrative remedies, including EEOC procedures, before proceeding under Title VII in federal court").

fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . .; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2.

Title VII further provides that the duty to accommodate an employee's religious beliefs, practices and observances is built into the definition of "religion," which "includes all aspects of religious observance and practice, as well as belief, *unless* an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice *without undue hardship on the conduct of the employer's business*." *Id*. at § 2000e-2(j) (emphasis added).

Importantly, in the context of Title VII religious discrimination cases, "undue hardship" means more than a *de minimis* cost on the employer. *See Cloutier v. Costco Wholesale Corp*., 390 F.3d 126, 134-35 (1st Cir. 2004). Indeed, the First Circuit has expressly held that the undue hardship "calculus applies both to economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and to non-economic costs, such as compromising the integrity of a seniority system." *Id*. at 134-35; *see also EEOC v. Oak-Rite Mfg. Corp*., No. IP99-1962-C-H/G, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001) ("questions of undue hardship have been resolved as a matter of law, especially where the employer showed that the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer").

In *Cloutier*, the First Circuit affirmed the District Court's grant of summary judgment to the employer (Costco) on the grounds that plaintiff-employee's insistence on an exemption from the employer's prohibition of facial jewelry would result in undue hardship on the employer. *Id*. at 136. The plaintiff was a member of the Church of Body Modification and wore facial jewelry, including an eyebrow ring, as part of her religion. *Id.* at 129-30. The Court concluded that the employer was not required to grant plaintiff's request for an exemption to the dress code as "[g]ranting such an exemption would be an undue hardship because it would adversely affect the employer's public image" and undermine its dress code designed to appeal to customer preference and promote a professional public image. *Id.* at 135-36.

The potential burden on Northern Light in this case is much more significant than the burden on the employer in *Cloutier*. To mitigate the spread of COVID-19 in the State of Maine, especially in Designated Healthcare Facilities where many patients are essentially captive and likely more vulnerable to serious complications associated with COVID-19, including death, the government issued the Emergency Rule. Under the Emergency Rule, healthcare workers, including employees of Northern Light, must become fully vaccinated against COVID-19 on or before October 15, 2021. The government has made clear that Designated Healthcare Facilities that do not comply with the Emergency Rule, which expressly prohibits religious exemptions for workers, could face substantial monetary and other enforcement penalties, including loss of their license to operate, from the Maine Division of Licensing and Certification. *See* 22 MRS §§ 803-804; *Health Care Worker Vaccination FAQS*, at FAQs 24-25, 30.

Given these circumstances, there can be no argument that Title VII **requires** Northern Light to disregard the Emergency Rule and the important public health interests underpinning it[7]

---

[7] Northern Light concurs with the government's discussion of the public health reasons for adding COVID-19 to the list of mandatory vaccines required of healthcare workers.

by granting Plaintiffs the religious exemptions they seek.[8] *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law.")  Were Title VII to be read as Plaintiffs propose, Northern Light would suffer an undue hardship far exceeding the burden placed on the employer of the unsuccessful plaintiff in *Cloutier*, who arrived at work adorned with facial piercings in violation of company dress policy.[9]  There is truly no comparison.

Accordingly, because Plaintiffs seek religious exemptions from the government's mandatory COVID-19 vaccine requirement for healthcare workers which are not available to them as accommodations under Title VII, there is no conflict between Title VII and the Emergency Rule and therefore no preemption of the Emergency Rule under the Supremacy Clause.

       2.    *There Was No Conspiracy*

Contrary to Plaintiffs' assertions, Northern Light did not participate in any conspiracy to violate Plaintiffs' constitutionally protected liberties.[10]  At the outset, it is important to observe

---

[8] In addition, Plaintiffs' requested alternative accommodations – masking in the workplace, testing and symptom monitoring – would also violate the Emergency Rule and would impose an undue hardship on Northern Light.  *See Health Care Worker Vaccination FAQs* at FAQ 24; *supra page* 3.

[9] Plaintiffs argue that Northern Light refused to "even consider" their requested religious accommodations.  *See* Ver. Compl. at ¶ 172.  This allegation is without merit.  Northern Light engaged in a good faith interactive process with Plaintiffs to evaluate their requested accommodations as required by Title VII because it reviewed their exemption requests, explained that by operation of state law it was required to deny them pursuant to the Emergency Rule, offered a medical exemption, if applicable, and offered to answer any questions employees had.  Ver. Compl., Ex. C.  In any event, this Court has dismissed interactive process claims where, as here, the defendant engaged in a dialogue with the employee, there was no evidence of bad faith or lack of effort on behalf of the employer and the employee's requested accommodation was unreasonable.  *See Charette v. St. John Valley Soil and Water Conservation District*, 332 F. Supp. 3d 316, 361-62 (D. Me. 2018) (granting summary judgment on plaintiff's interactive process claim because defendant engaged in a dialogue with plaintiff about her requested accommodations, which would have created an undue hardship on defendant).

[10] The Verified Complaint asserts violations of both the Free Exercise Clause and the Establishment Clause of the First Amendment to the United States Constitution.  *See* Ver. Compl. at ¶¶ 122-39, 152-67.

that the conduct Plaintiffs attempt to characterize as conspiratorial is nothing more than obligatory compliance with state law.

This Court has instructed that, "to state a claim under [42 U.S.C.] section 1985(3) a plaintiff must show not only a conspiracy to deprive a person of equal protection of the laws, but also that the conspiracy was motivated by 'some racial or perhaps otherwise class-based, invidiously discriminatory animus.'" *Jackson v. Faber*, 834 F. Supp. 471, 475 (D. Me. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). In this regard, it is important to note that on or about August 2, 2021, some 10 days **before** the Emergency Rule was laid down, Northern Light announced its own mandatory COVID-19 vaccination policy, which policy did, in fact, provide for religious exemptions. *See supra* p. 3. This fact alone makes plain that, Northern Light did not, and does not, have any "invidious discriminatory animus" towards those of its workers who object to receiving the COVID-19 vaccine on religious grounds. Moreover, Northern Light's statement that the amended vaccination law "is another example of close alignment between the government and the health care community" constitutes nothing more than a show of support for the government's decision to take the global COVID-19 pandemic seriously and make every effort to assist Maine's healthcare providers in their tireless efforts to save lives. Similar government initiatives have been upheld by the courts. *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905) (sustaining a criminal conviction for violation of Massachusetts' mandatory smallpox vaccination law despite plaintiff's substantive due process objections); *Phillips v. City of New York*, 775 F.3d 538, 542-44 (2d Cir. 2015) (adopting and applying *Jacobson*'s rationale in the context of a mandatory vaccination law for all students attending public school in the State of

---

Because these claims are made against the government Defendants only, Northern Light does not address them in its Opposition. Nevertheless, Northern Light believes that applicable law supports the constitutionality of the Emergency Rule. *See infra* p. 12.

New York); *W.D. v. Rockland County*, No. 19 Civ. 2066 (JCM), 2021 WL 707065, at *23-31 (S.D.N.Y. Feb. 22, 2021) (upholding a law mandating that children under 18 years of age become vaccinated against measles with no religious exemption)). *See also Bayley's Campground Inc. v. Mills,* 463 F. Supp. 3d 22, 30-35 (D. Me. 2020), *aff'd*, 985 F.3d 153 (1st Cir. 2021) (denying plaintiffs' request for a preliminary injunction regarding a state quarantine order and their right-to-travel claim in the context of the COVID-19 pandemic).

Plaintiffs' conspiracy claim is baseless.

### B. Plaintiffs Will Not Be Irreparably Harmed by Northern Light's Compliance with the Emergency Rule

To show irreparable harm Plaintiffs must demonstrate they will suffer "an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan,* 397 F.3d 56, 76 (1st Cir. 2005). In the First Circuit, the general rule is that "traditional economic damages can be remedied by compensatory awards, and thus do not rise to the level of being irreparable." *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). "Moreover, the measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Id*. (quoting *Baccarat, Inc.*, 102 F.3d at 19). Accordingly, when the likelihood of success on the merits is low, a more substantial showing of irreparable injury is required. *E.E.O.C. v. Astra USA, Inc*., 94 F.3d 738, 743 (1st Cir. 1996).

Given that Plaintiffs are unlikely to succeed on the merits of their claims against Northern Light, they must bear a heavier burden of showing irreparable injury, which they cannot do. *Id*. Citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020) (per curium), Plaintiffs attempt to link the potential loss of their employment at Northern Light if they do not

13

comply with the government's mandatory COVID-19 vaccination policy to a loss of their First Amendment rights. *See* Pl.'s Mot. For Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law at 15-16; Ver. Compl. at ¶¶ 104-16.

Loss of a job, however, is distinct from a loss of religious freedoms. In the *Catholic Diocese* case, the government restrictions at issue specifically limited the number of people who could attend religious services in certain zones of New York City during the early stages of the COVID-19 pandemic, while permitting other secular gatherings to continue without restriction. *See* 141 S.Ct. at 66-68. By contrast, as the Court noted in its September 5, 2021 Order, this case presents the situation where Plaintiffs face loss of their employment with Northern Light only if they do not comply with the government's mandatory COVID-19 vaccination policy. *See Jane Does 1-6 v. Janet T. Mills*, 1:21 cv 00242 JDL, ECF No. 44 at 4 (Sept. 5, 2021) (the "Order"). Put another way, Plaintiffs are given a clear choice of options, given to religious adherents and non-adherents alike, not all of which will result in their loss of employment. Accordingly, this case is not analogous to the *Catholic Diocese* case but rather mirrors the scenario presented by *Rockland County*, 2021 WL 707065, at *23-31, in which the Court upheld a law that mandated children under 18 years old become vaccinated against measles to be able to enter any place of public assembly with no religious exemption permitted.

Also noteworthy is the fact that the United States Supreme Court has held, as a matter of law, that loss of employment does not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90-91 (1974). This is so because the loss of a job is something that can be addressed by "a later-issued damages remedy." *Rullan,* 397 F.3d at 76; *see also Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("[s]ince reinstatement and money damages could make [employees] whole for any loss suffered during this period, their injury is plainly reparable"). In its

September 5th Order, the Court similarly observed that "[b]ecause there are remedies available for harms which result from unlawful employment practices, this is not a situation in which the possible harm flowing from a First Amendment violation is necessarily irreparable, as was the case in *Cuomo*." *See* Order at 4. Accordingly, Plaintiffs have not established irreparable harm.

        C.      <u>The Balance of the Hardships and the Public Interest Warrant Denying Injunctive Relief</u>

Plaintiffs cannot show that their objection to the COVID-19 vaccine and its impact on their ability to work at Northern Light outweighs the danger of the unvaccinated Plaintiffs working at Northern Light during the pandemic and potentially infecting patients and their co-workers with COVID-19. Similar to the circumstances this Court confronted in *Bayley's Campground*, "[t]he public interest in this case is enormous . . . [t]he types of injunctive relief Plaintiffs seek would upset the bedrock of the state's public health response to COVID-19 . . . ." 463 F. Supp. 3d at 38 (D. Me. 2020).

The Governor made clear that the Emergency Rule is part of the State of Maine's plan to mitigate COVID-19, especially as more contagious and virulent strains of COVID-19 such as the Delta variant are on the rise. *See Mills Administration Requires Health Care Workers To Be Fully Vaccinated Against COVID-19 By October 1*. Further, as the Seventh Circuit recently noted when affirming the district court's denial of a challenge to a university's COVID-19 vaccine mandate for students, "[v]accination protects not only the vaccinated persons but also those who come in contact with them, and at a university close contact is inevitable." *Klassan v. Trustees of Indiana University*, No. 21-2326, 2021 WL 3281209, at *1 (7th Cir. Aug. 2, 2021); *see also Bridges v. Houston Methodist Hosp.*, No. H-21-1774, 2021 WL 2399994, at *1 (S.D. Tex. June 12, 2021) ("[The hospital] is trying to do their business of saving lives without giving them the COVID-19 virus. It is a choice made to keep staff, patients, and their families safer.

[The plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else."). This is even more true in the context of a network of hospitals and patient care facilities like those of Northern Light. Accordingly, the public interest in preventing COVID-19 and its associated danger and destructive consequences outweighs the Plaintiffs' interest in retaining their employment at Northern Light while remaining unvaccinated.

### III.  CONCLUSION

For the reasons set forth above, Northern Light respectfully requests that the Court deny the Plaintiffs' motion for a preliminary injunction.

Dated in Augusta this 15th day of September, 2021

NORTHERN LIGHT HEALTH FOUNDATION


By:   /s/ Ryan P. Dumais
    Ryan P. Dumais, Esq.
    rdumais@eatonpeabody.com
    Katherine L. Porter, Esq.
    kporter@eatonpeabody.com

EATON PEABODY
P.O. Box 5249, Suite 3000
Augusta, Maine 04332-5249
(207) 622-3747

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I electronically filed Defendant Northern Light Health Foundation's Opposition to Plaintiffs' Preliminary Injunction Motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ryan P. Dumais
Ryan P. Dumais, Esq.