**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| |
|---|
| JANE DOES 1-6, et al., |
|        Plaintiffs, |
|    v. |
| JANET T. MILLS, Governor of the State of Maine, et al., |
|        Defendants. |

Civil Action 1:21-cv-00242-JDL

**MEDIA INTERVENORS' MOTION TO UNSEAL PLAINTIFFS' IDENTITIES AND INCORPORATED MEMORANDUM OF LAW**

"Lawsuits are public events."  *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).  A plaintiff "instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record."  *Doe v. Reg'l Sch. Unit No. 21*, No. 19-CV-341 (NT), 2020 WL 2833248, at *1 (D. Me. May 29, 2020) (citations omitted).

In asking this Court to deviate from the "customary and constitutionally-embedded presumption of openness in judicial proceedings," *Doe v. Univ. of Rhode Island*, No. 93-CV-560B (RWL), 1993 WL 667341, at *2 (D.R.I. Dec. 28, 1993) (citation omitted), and to grant them leave to litigate this case pseudonymously, the over two thousand participating plaintiffs (collectively, "Plaintiffs") asserted a fear of "retribution, reprisal, and ostracization" if their "sincerely held religious beliefs concerning the COVID-19 vaccine" were known to the public. Plaintiffs' Motion to Proceed Under Pseudonyms ("Pl. Mot.") at 12, *Does 1-6 v. Mills*, No. 21-CV-242 (JDL) (D. Me. Aug. 31, 2021), ECF No. 21.  But Plaintiffs' generalized assertion is insufficient to justify permitting them to litigate this civil lawsuit anonymously.  And even assuming that a risk of "retribution, reprisal, and ostracization" were sufficient to justify permitting a plaintiff to litigate a civil lawsuit anonymously, Plaintiffs have not—and cannot— show that such a risk is actually present here.  Plaintiffs have offered no evidence to show that any one of them faces any actual threat of reprisal if required to proceed under their real names. *See Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (denying party's request to proceed anonymously where the party did not demonstrate "real, imminent personal danger").

Moreover, in asserting their purported fear that disclosure of their identities may "subject them to reprisal . . . and discourage others from bringing similar claims," Pl. Mot. at 12, Plaintiffs ignore the fact that hundreds of litigants around the country, including in Maine, have brought constitutional challenges to federal and state COVID-19 vaccine mandates and safety

protocols without the use of pseudonyms.  *See* Section II.A, *infra*.  As detailed herein, Plaintiffs

fail to identify any "substantial privacy right" that would be implicated by requiring them, too, to

litigate this case using their real names—let alone one that "outweighs the customary and

constitutionally-embedded presumption of openness in judicial proceedings." *Univ. of Rhode*

*Island*, 1993 WL 667341, at *2 (internal quotation marks omitted).  For these reasons, MTM

Acquisition, Inc., d/b/a *Portland Press Herald/Maine Sunday Telegram*, *Kennebec Journal*, and

*Morning Sentinel* and SJ Acquisition, Inc., d/b/a *Sun Journal* (collectively, "Media Intervenors")

move this Court for an order unsealing Plaintiffs' names and prohibiting Plaintiffs from

continuing to proceed under pseudonyms in this matter.

## RELEVANT PROCEDURAL BACKGROUND

On August 31, 2021, Plaintiffs filed a motion to proceed under pseudonyms.  *See* Pl. Mot.

The Court granted the motion, but "reserve[d] the authority to revisit this issue should the case

proceed past the preliminary-injunction stage," noting "Defendants' failure to object to the

Plaintiffs proceeding pseudonymously," and "the limited record available at this point."  *Does 1-*

*6 v. Mills*, No. 21-CV-242 (JDL), 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021).

On October 13, 2021, this Court denied Plaintiffs' request for a preliminary injunction.

*Does 1-6 v. Mills*, No. 21-CV-242 (JDL), 2021 WL 4783626 (D. Me. Oct. 13, 2021).  The First

Circuit affirmed this Court's decision on October 19, 2021.  *Does 1-6 v. Mills*, 16 F.4th 20 (1st

Cir. 2021).  On October 29, 2021, the Supreme Court denied Plaintiffs' application for injunctive

relief.  *Does 1-3 v. Mills*, 142 S. Ct. 17 (2021).  The preliminary injunction stage of this litigation

has therefore concluded.  In accordance with its Order indicating that it could "revisit" the

Plaintiffs' use of pseudonyms should the case proceed beyond the preliminary-injunction stage,

on December 30, 2021, the Court granted Media Intervenors' motion to intervene for the limited

purpose of challenging Plaintiffs' ongoing use of pseudonyms in this matter.  Order on Motion to

Intervene ("Order"), *Does 1-6 v. Mills*, No. 21-CV-242 (JDL) (D. Me. Dec. 30, 2021), ECF No. 95.

## ARGUMENT

I.   **Pseudonymous plaintiffs infringe the public's First Amendment and common law rights of access to judicial records and proceedings.**

A.   Public access is a bedrock principle of our judicial system.

Openness is "one of the essential qualities of a court of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 567 (1980) (quoting *Daubney v. Cooper*, 109 Eng. Rep. 438, 440 (K.B. 1829)); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978). Said to predate even the Constitution itself, the right of the public to observe judicial proceedings is deeply rooted in American history and is "an indispens[a]ble attribute" of our justice system. *See Richmond Newspapers, Inc.*, 448 U.S. at 564–68, 569, 580 n.17 (noting that "historically both civil and criminal trials have been presumptively open"). As the Supreme Court has stated:

> A trial is a public event. What transpires in the court room is public property. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

*Craig v. Harney*, 331 U.S. 367, 374 (1947).

The public's right of access to judicial records and proceedings is a necessary corollary to the right to discuss government affairs, and the Supreme Court has long recognized the essential role that members of the press, like Media Intervenors, play in gathering and disseminating information about court cases to the public. *Richmond Newspapers, Inc.*, 448 U.S. at 573 (noting that the news media act as "surrogates for the public" in reporting on judicial proceedings). By reporting on criminal and civil matters of public concern, the news media enable informed public discussion of the functioning of the judiciary, and help "the public to participate in and serve as a

check upon the judicial process—an essential component in our structure of self-government."
*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *see also In re Oliver*, 333
U.S. 257, 271 (1948) ("Without publicity, all other checks are insufficient: in comparison of
publicity, all other checks are of small account." (citation omitted)).  Openness thus "enhances
both the basic fairness of [a] trial and the appearance of fairness so essential to public confidence
in the system."  *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-
Enterprise I*"); *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("Public
access to judicial records and documents allows the citizenry to 'monitor the functioning of our
courts, thereby [e]nsuring quality, honesty and respect for our legal system.'" (quoting *In re
Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984))).

In keeping with these principles, Federal Rule of Civil Procedure 10(a) requires parties to
a lawsuit to identify themselves in their respective pleadings.  Fed. R. Civ. P. 10(a).  Though
seemingly routine, Rule 10(a)'s "clear mandate" serves a critical purpose: it "protects the
public's legitimate interest in knowing all of the facts involved, including the identities of the
parties."  *Frank*, 951 F.2d at 322–23.  Access to party names is thus "more than a customary
procedural formality; First Amendment guarantees are implicated when a court decides to restrict
public scrutiny of judicial proceedings."  *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug.
1981); *see also Does I-XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)
("Plaintiffs' use of fictitious names runs afoul of the public's common law right of access to
judicial proceedings."); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th
Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness.
The people have a right to know who is using their courts.").

The benefits of an open and transparent court system—guarding against the miscarriage

4

of justice, assuring that proceedings are fair, discouraging perjury and decisions based on bias, and providing important context—are undermined when the public cannot tell who has invoked the power of the courts to resolve their disputes.  Withholding litigants' names denies the public access to critical information, limiting its ability to scrutinize the judicial process.  Anonymity greatly hinders, for example, a journalist's ability to research the litigant's background, including business or political interests.  Anonymity also prohibits journalists from identifying family members, friends, employers, coworkers, classmates and other acquaintances who may help the journalist put a given dispute in context.  Knowing a litigant's identity may help illuminate details like a plaintiff's motivation for suing; his or her relationship with the defendants, other trial participants, or the court; or the litigant's credibility, among other things.

This is particularly true here, where Plaintiffs bring both facial and as-applied challenges to a state mandate.  Especially given their as-applied claims, it is highly likely that judicial documents and hearings will include information pertaining to specific Plaintiffs.  And, if Plaintiffs are permitted to continue this litigation pseudonymously, this Court will undoubtedly be asked to take additional restrictive steps to preserve their anonymity that would further inhibit the public's presumptive right of access to judicial records and proceedings, including courtroom closures during Plaintiffs' testimony and sealing of judicial records containing their personally identifiable information.  The outcome of this case has significant implications for healthcare workers throughout Maine and, by extension, for patients and their loved ones.  Open litigation, with full disclosure of the parties' identities, including the role each plaintiff plays in the healthcare system, is thus vital to ensuring the public's understanding and assessment of the parties' competing claims, their credibility, and, ultimately, the administration of justice in this case.

In sum, permitting Plaintiffs to proceed pseudonymously will deny the public its presumptive common law and First Amendment rights to access judicial records and proceedings in this case—rights that the First Circuit has held may be overcome for "only the most compelling reasons." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410 (citation omitted).

B.      Plaintiffs seeking pseudonymity bear the burden to demonstrate a substantial privacy right sufficient to overcome the strong presumption of openness.

As this Court recognized in its order granting Media Intervenors' motion to intervene, there is a "strong common law presumption" of access to judicial proceedings and records. Order at 2–3 (quoting *Flanders v. Maine*, No. 2:12-cv-00277, 2019 WL 2929500, at *2 (D. Me. July 8, 2019) (quoting *In re Salem Suede, Inc.*, 268 F.3d 42, 45 (1st Cir. 2001))). And, in a case of first impression in the First Circuit, Judge Torresen recently recognized "a qualified First Amendment right of public access to civil complaints." *Courthouse News Serv. v. Glessner*, No. 1:21-CV-00040-NT, 2021 WL 3024286, at *15 (D. Me. July 16, 2021), *appeal pending*, Nos. 21-1624, 21-1642. In so holding, she acknowledged the heavy weight of authority reflected in the decisions of the "many circuits that have concluded that the constitutional right of access applies to civil proceedings." *Id*. at *11; s*ee, e.g.*, *N.Y.C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) ("[T]he First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records."); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("[T]he First Amendment . . . protects the public's right of access to the records of civil proceedings.").

Where, as here, the strong common law presumption of access applies, "it falls to the courts to weigh the presumptively paramount right of the public to know against the competing private interests at stake." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. And, where, as here, the constitutional right of access also applies, it can be overcome only if "closure is essential to

6

preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510 (citation omitted). "It is the burden of the party asking for secrecy to make a showing sufficient to overcome the presumption." *Doe v. Trs. of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *3 (D.N.H. May 2, 2018) (citing *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 71 (1st Cir. 2011)); *see also Dahl v. Bain Cap. Partners, LLC*, 891 F. Supp. 2d 221, 224 (D. Mass. 2012) ("The burden of persuasion rests with 'those seeking to keep the datum hidden from view,' not with the party seeking access." (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411)). And, as the First Circuit has held, "only the most compelling reasons can justify" restricting access to judicial records and proceedings. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410 (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).

In accordance with these principles, federal courts in the First Circuit and around the country have held that a plaintiff may proceed pseudonymously only in "exceptional cases" where the plaintiff has shown a "substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Univ. of Rhode Island*, 1993 WL 667341, at *2 (quoting *Frank*, 951 F.2d at 323–24; *Stegall*, 653 F.2d at 186); *see also Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995); *Doe v. Burkland*, 808 A.2d 1090, 1096 (R.I. 2002). And although the First Circuit has not addressed what constitutes such a substantial privacy right, other federal courts of appeals have established non-exhaustive, multi-factor tests to aid district courts in identifying the "characteristics common to those exceptional cases in which the need for party anonymity overwhelms the presumption of disclosure mandated by procedural custom." *Stegall*, 653 F.2d at 185.

In the first such case, *Doe v. Stegall*, the Fifth Circuit identified four factors that courts may consider when assessing whether a plaintiff has met the heavy burden necessary to justify

proceeding anonymously.  653 F.2d at 185–86.  These factors, which have also been applied by

the Sixth and Eleventh Circuits, include (1) whether prosecution of the suit will compel the

plaintiffs to disclose information "of the utmost intimacy"; (2) whether the plaintiffs are minors;

(3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby

risking criminal prosecution; and (4) whether the plaintiffs seeking anonymity are suing to

challenge governmental activity.  *Id.* (citation omitted); *see also Doe v. Porter*, 370 F.3d 558,

560 (6th Cir. 2004); *Frank*, 951 F.2d at 323.[1]   The Ninth Circuit has employed a similar five-

factor test which considers: (1) "the severity of the threatened harm" to the party seeking

anonymity; (2) "the reasonableness of the anonymous party's fears"; (3) "the anonymous party's

vulnerability to such retaliation," including the vulnerability of child plaintiffs; (4) "the precise

prejudice at each stage of the proceedings to the opposing party, and whether proceedings may

be structured so as to mitigate that prejudice"; and (5) "whether the public's interest in the case

would be best served by requiring that the litigants reveal their identities."  *Advanced Textile*,

214 F.3d at 1068–69 (citations omitted).  The Fourth Circuit and the D.C. Circuit follow a

similar test to *Advance Textile*, but also consider the question of whether the action is against a

governmental or private party.  *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *see also In

re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019).  Finally, the Second and Third Circuits have

employed non-exhaustive ten-factor tests which incorporate elements of the *Stegall*, *Advanced

Textile,* and *Jacobson* tests, along with factors such as "whether the plaintiff's identity has thus

far been kept confidential" and "whether there are any alternative mechanisms for protecting the

---

[1]  Although the *Stegall* factors contemplate that the fact that a plaintiff is challenging government activity may, in certain circumstances, factor in favor of anonymity, the Fifth Circuit expressly recognized that "in only a very few cases challenging governmental activity can anonymity be justified," *Stegall*, 653 F.2d at 186, and this factor, standing alone, has been found insufficient to justify anonymity.  *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001) ("Plaintiffs . . . bring challenges to government activity every court day, and no published opinion that we are aware of has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity.").

confidentiality of the plaintiff." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011).

Though these tests vary, federal courts of appeals are in accord that the factors they have identified are not designed to be applied "rigid[ly]," but are "highlighted merely as factors deserving consideration." *Frank*, 951 F.2d at 323 (citation omitted).  The "balancing test is necessarily flexible and fact driven," *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020), and courts should not "engage in a wooden exercise of ticking the . . . boxes," *In re Sealed Case*, 931 F.3d at 97; *see also Stegall*, 653 F.2d at 186 ("We advance no hard and fast formula for ascertaining whether a party may sue anonymously.").

In keeping with First Circuit precedent in "the related context of a request to seal judicial records," district courts in the First Circuit have held that a party seeking to proceed anonymously must establish "a compelling countervailing interest to justify limiting . . . the presumptive right of access." *Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2 (citation omitted).  Similar to the test employed by the Ninth Circuit, which balances the severity and reasonableness of the threatened harm to the party seeking to proceed anonymously against the public interest in requiring litigants to reveal their identities, *Advanced Textile*, 214 F.3d at 1068–69, those courts have followed the "general rule" that the presumption of openness may be overcome only "by demonstrating an overriding reason for confidentiality," which must then be balanced "against the public interest to be served by requiring disclosure."  *Univ. of Rhode Island*, 1993 WL 667341, at *2; *Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. at 420; *see also Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2 ("[C]ourts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process." (citation omitted)); *Doe v. Univ. of Maine Sys.*, No. 19-CV-415 (NT), 2020 WL 981702, at *4 (D. Me. Feb. 20, 2020)

(same); *Trs. of Dartmouth Coll.*, 2018 WL 5801532, at *5 ("The general presumption in favor of a public proceeding and the related public interest in open access to judicial proceedings weigh heavily against allowing Doe to proceed anonymously.").[2]  The rare cases in which plaintiffs have been allowed to proceed pseudonymously typically "involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity."  *Doe v. Standard Ins. Co.*, No. 15-CV-105 (GZS), 2015 WL 5778566, at *1 (D. Me. Oct. 2, 2015) (citation omitted).  The potential for "embarrassment or economic harm is not enough."  *Univ. of Rhode Island*, 1993 WL 667341, at *2 (citation omitted).

In sum, "the scales tilt decidedly toward transparency," *Nat'l Org. for Marriage*, 649 F.3d at 70, and it is "the exceptional case in which a plaintiff may proceed under a fictitious name," *Univ. of Rhode Island*, 1993 WL 667341, at *2 (citation omitted); *see also Plaintiff B v. Francis*, 631 F.3d 1310, 1317 (11th Cir. 2011) (granting pseudonymity where the issues "could not be of a more sensitive and highly personal nature—they involve descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities"); *Advanced Textile*, 214 F.3d 1058 (granting pseudonymity to foreign garment industry employees bringing Fair Labor Standards Act claims against their employers where plaintiffs demonstrated they would be subject to threats of deportation to China, followed by arrest and imprisonment, if their identifies were known).

---

[2]  District courts in the First Circuit have also looked to the balancing tests of other federal courts of appeals, particularly where the parties have urged them to.  *See, e.g.*, *Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2 (applying the multi-factor test articulated by the Third Circuit in *Megless*); *Univ. of Maine Sys.*, 2020 WL 981702, at *4 (same); *Trs. of Dartmouth Coll.*, 2018 WL 5801532, at *3 (proceeding "generally using the Second Circuit factors, which the plaintiff applied, with reference to the Third and Fourth Circuit factors when appropriate"); *Univ. of Rhode Island*, 1993 WL 667341, at *2 (applying the test articulated by the Eleventh Circuit in *Frank*).

This is not such an exceptional case.  As detailed below, Plaintiffs have not established any privacy right sufficiently compelling or substantial to outweigh the "constitutionally-embedded presumption of openness" in this case.  *Univ. of Rhode Island*, 1993 WL 667341, at *2 (citation omitted).  As Plaintiffs cannot meet their burden to overcome the presumptive right of access, their continued use of pseudonyms in this matter cannot be justified.

**II.      Plaintiffs cannot overcome the "constitutionally-embedded presumption of openness" in this case.**

A.      Cases challenging COVID-related safety measures, including constitutional challenges to vaccine mandates, have routinely proceeded with named plaintiffs.

In support of their argument that they should be permitted to litigate this consequential case pseudonymously, Plaintiffs assert that, due to the allegedly controversial nature of their claims, they are "fearful of public reaction to the disclosure of their identities" which they contend may "subject them to reprisal . . . and discourage others from bringing similar claims." Pl. Mot. at 12.  As a preliminary matter, debate over the scope of constitutional rights is often subject to controversy, and federal courts regularly handle such matters without permitting pseudonymous litigation.  More importantly, however, Plaintiffs' argument overlooks the hundreds of similarly situated litigants in Maine and around the country who have brought constitutional challenges to federal and state COVID-19 health and safety measures without the use of pseudonyms.  *See, e.g.*, *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153 (1st Cir. 2021) (named residents of Maine and New Hampshire, along with various campground businesses, challenging Maine's self-quarantine requirement); *Savage v. Mills*, 478 F. Supp. 3d 16 (D. Me. 2020) (challenging Maine's shelter-in-place orders).  Within the First Circuit alone, these cases include challenges to vaccine mandates and constitutional challenges on religious grounds to COVID-19 health and safety protocols.  *See Gray v. Mills*, No. 21-CV-71 (LEW), 2021 WL 5166157 (D. Me. Nov. 5, 2021) (challenging COVID-related restrictions on gathering size in

11

Maine, including for religious services); *Together Emps. v. Mass Gen. Brigham Inc*., No. 21-CV-11686 (FDS), 2021 WL 5234394 (D. Mass. Nov. 10, 2021) (eight named hospital employees and employee association challenging employer's vaccine mandate); *Mass. Corr. Officers Federated Union v. Baker*, No. 21-CV-11599 (TSH), 2021 WL 4822154 (D. Mass. Oct. 15, 2021) (correction officers' union and four named members of the union challenging vaccine mandate for prison employees); *Harris v. Univ. of Massachusetts, Lowell*, No. 21-CV-11244 (DJC), 2021 WL 3848012 (D. Mass. Aug. 27, 2021) (challenging vaccine mandate for university students); *Delaney v. Baker*, 511 F. Supp. 3d 55 (D. Mass. 2021) (challenging COVID-related restrictions on gathering size, including for religious services); *Beaudoin v. Baker*, 530 F. Supp. 3d 169 (D. Mass. 2021) (challenging mask mandate); *Rodriguez-Velez v. Pierluisi-Urrutia*, No. 21-CV-1366 (PAD), 2021 WL 5072017 (D.P.R. Nov. 1, 2021) (challenging vaccine mandate for government employees).  And plaintiffs around the country have brought legal challenges under their own names to federal, state, and local government vaccine mandates, including healthcare workers challenging employer vaccine mandates.[3]  Plaintiffs have presented no evidence—nor is there

---

[3] A non-exhaustive list of cases includes the following: *Burcham v. City of Los Angeles*, No. 21-CV-7296 (RGK) (JPR), 2022 WL 99863 (C.D. Cal. Jan. 7, 2022) (challenging city employee vaccine mandate); *Brass v. Biden*, No. 21-CV-2778 (CMA) (MEH), 2021 WL 6498143 (D. Colo. Dec. 23, 2021) (challenging federal vaccine mandate); *Halgren v. City of Naperville*, No. 21-CV-5039 (JRB), 2021 WL 5998583 (N.D. Ill. Dec. 19, 2021) (challenging vaccine and testing mandate for healthcare workers); *Rhoades v. Savannah River Nuclear Sols., LLC*, No. 21-CV-3391 (JMC), 2021 WL 5761761 (D.S.C. Dec. 3, 2021) (challenging vaccine mandate for federal contractor's employees); *Creger v. United Launch All. LLC*, No. 21-CV-1508 (AKK), 2021 WL 5579171 (N.D. Ala. Nov. 30, 2021) (same); *Rodden v. Fauci*, No. 21-CV-317 (JVB), 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) (challenging federal employee vaccine mandate); *Troogstad v. City of Chicago*, No. 21-CV-5600 (JZL), 2021 WL 5505542 (N.D. Ill. Nov. 24, 2021) (challenging city employee vaccine mandate); *Church v. Biden*, No. 21-CV-2815 (CKK), 2021 WL 5179215 (D.D.C. Nov. 8, 2021) (challenging federal employee and military personnel vaccine mandate); *Smith v. Biden*, No. 21-CV-19457 (CPO), 2021 WL 5195688 (D.N.J. Nov. 8, 2021) (challenging federal employee and contractor vaccine mandate); *Andre-Rodney v. Hochul*, No. 21-CV-1053 (BKS) (CFH), 2021 WL 5050067 (N.D.N.Y. Nov. 1, 2021) (challenging hospital employee vaccine mandate); *Bauer v. Summey*, No. 21-CV-2952 (DCN), 2021 WL 4900922 (D.S.C. Oct. 21, 2021) (challenging public employee vaccine mandate); *Johnson v. Brown*, No. 21-CV-1494 (SI), 2021 WL 4846060 (D. Or. Oct. 18, 2021) (challenging vaccine mandate for healthcare and education employees); *Messina v. Coll. of New Jersey*, No. 21-CV-17576 (ZNQ) (DEA), 2021 WL 4786114 (D.N.J. Oct. 14, 2021) (challenging college vaccine mandate); *Harsman v. Cincinnati Child.'s Hosp. Med. Ctr.*, No. 21-CV-597 (TSB), 2021 WL 4504245 (S.D. Ohio Sept. 30, 2021) (challenging hospital employee vaccine mandate); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-CV-105 (DLB) (EBA), 2021 WL 4398027 (E.D. Ky. Sept.

any indication—that these plaintiffs raising similar, and in some cases identical, claims have been subjected to any harm, let alone serious harm.  Nor, given the substantial number of cases of this kind proceeding across the country, can Plaintiffs plausibly contend that an order from this Court requiring them to proceed under their own names would "discourage others from bringing similar claims."  Pl. Mot. at 12.

Moreover, in the small number of cases where plaintiffs have moved for leave to proceed under pseudonyms to challenge government actions related to COVID-19, most courts have denied such motions, holding that plaintiffs' interest in anonymity was insufficient to overcome the constitutionally rooted presumption of openness.  *See, e.g.*, *Doe v. City Univ. of New York*, No. 21-CV-9544 (NRB), 2021 WL 5644642, at *4 n.3 (S.D.N.Y. Dec. 1, 2021) ("The Court notes that numerous plaintiffs have brought suit challenging COVID-19 vaccination policies, on religious and other grounds, under their own names."); *see also Doe v. Trump*, No. 20-CV-2531 (SJC), 2020 WL 8258737, at *1 (N.D. Ill. July 1, 2020) (noting, in case challenging CARES Act payment rules, "that in the other lawsuits challenging [the statute], only the plaintiffs in [one case] are proceeding anonymously because they are minors," and that "plaintiff has failed to give a sufficient explanation why the present lawsuit differs from the other two lawsuits where

24, 2021) (same); *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-CV-5055 (BMC), 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021), *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (challenging education employee vaccine mandate); *Norris v. Stanley*, No. 21-CV-756 (PLM), 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) (challenging university vaccine mandate); *Kheriaty v. Regents of Univ. of California*, No. 21-CV-1367 (JVS) (KESx), 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) (challenging university vaccine mandate); *Streight v. Pritzker*, No. 21-CV-50339 (IDJ), 2021 WL 4306146 (N.D. Ill. Sept. 22, 2021) (challenging university vaccine and testing mandate); *Valdez v. Grisham*, No. 21-CV-783 (MV) (JHR), 2021 WL 4145746 (D.N.M. Sept. 13, 2021) (challenging hospital vaccine mandate); *Dahl v. Bd. of Trs. of W. Michigan Univ.*, No. 21-CV-757 (PLM), 2021 WL 3891620 (W.D. Mich. Aug. 31, 2021) (challenging university vaccine mandate); *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 21-CV-2304 (TAD), 2021 WL 3679227 (W.D. La. Aug. 17, 2021) (challenging medical school vaccine mandate); *Wade v. Univ. of Connecticut Bd. of Trs.*, No. 21-CV-924 (JAM), 2021 WL 3616035 (D. Conn. Aug. 16, 2021) (challenging university vaccine mandate); *Am.'s Frontline Drs. v. Wilcox*, No. 21-CV-1243 (JGB) (KKx), 2021 WL 4546923 (C.D. Cal. July 30, 2021) (challenging university vaccine mandate); *Klaassen v. Trs. of Indiana Univ.*, No. 21-CV-238 (DRL), 2021 WL 3073926 (N.D. Ind. July 18, 2021) (challenging university vaccine mandate).

plaintiffs are proceeding under their true names"); *see also* Section II.B, *infra*.

In the small handful of cases where courts have granted a plaintiff's motion to proceed under pseudonyms in COVID-related litigation, those motions were largely, as was the case initially here,[4] unopposed, and were granted only for the early stages of the litigation. *See, e.g.*, Text Order, *Dr. T. v. Alexander-Scott*, No. 21-CV-387 (MSM) (LDA) (D.R.I. Jan. 7, 2022) (holding plaintiffs' unopposed motion to proceed under a pseudonym was "provisionally GRANTED; however, the Court will reconsider this Motion upon any further proceeding in this matter"); *Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 56 (D. Mass. 2021) (holding, in case involving one named and one anonymous plaintiff challenging university tuition during the pandemic, that because "defendant does not currently oppose the request [for pseudonymity], his motion will be allowed subject to later challenge if this case should proceed to trial"); *see also Doe v. New York Univ.*, 537 F. Supp. 3d 483, 496–97 (S.D.N.Y. 2021) (granting plaintiff's motion to proceed anonymously without analyzing governing factors under applicable legal test); *Dr. A. v. Hochul*, No. 21-CV-1009, 2021 WL 4734404, at *11 n.11 (N.D.N.Y. Oct. 12, 2021), *vacated and remanded on other grounds sub nom.*, *We the Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5103443 (2d Cir. Oct. 29, 2021) (same); *Alma v. Noah's Ark Processors, LLC*, No. 20-CV-3141, 2020 WL 7246602, at *2 (D. Neb. Dec. 9, 2020) (granting motion to proceed under pseudonym for early stages of litigation, but reserving right to revisit the issue and expressing doubt as to whether plaintiffs "have established the type of extraordinary harm that typically supports a request to proceed anonymously").

When addressing contested motions to proceed pseudonymously, courts have held that a

---

[4]   As set forth above, when it initially granted Plaintiffs' motion to proceed pseudonymously, this Court "reserve[d] the authority to revisit this issue should the case proceed past the preliminary-injunction stage," noting "Defendants' failure to object to the Plaintiffs proceeding pseudonymously" and "the limited record available at this point." *Does 1-6*, 2021 WL 4005985, at *2.

plaintiff's demonstration of serious, non-speculative physical or mental harm—not economic harm, or mere discomfort or embarrassment—is essential, including in the COVID-19 context. For example, courts have rejected arguments "centered upon [a plaintiff's] economic well-being and possible embarrassment or humiliation" and a desire "not to attach his name to his admitted conduct" in breaking COVID protocols. *Doe v. Trs. of Indiana Univ.*, No. 21-CV-2903 (JRS) (MJD), 2022 WL 36485, at *5–6 (S.D. Ind. Jan. 3, 2022); *see also* Order Denying Joint Motion to Proceed Anonymously at 4, *Am.'s Frontline Drs. v. Wilcox*, No. 21-CV-1243 (JGB) (KKx) (C.D. Cal. Jan. 7, 2022), ECF No. 53 (denying motion to proceed anonymously in case challenging university vaccine mandate, where plaintiffs' claims of harm were "vague, conclusory, and do not hint at potential repercussion, retaliation, or intimidation," adding that "[c]ommunity disagreement which results in 'embarrassment . . . is not enough' to support the use of pseudonyms" (quoting *Doe v. Rostker*, 89 F.R.D. 158, 161–62 (N.D. Cal. 1981))); *Trump*, 2020 WL 8258737, at *1–2 (denying pseudonymity request in case where plaintiffs challenging CARES Act's requirements asserted that they feared "humiliation, harassment, and taunting by neighbors and co-workers," given the lack of "a particularized fear of retribution").

Here, Plaintiffs' sole basis for their alleged fear of potential retaliation consists of an attorney declaration citing online statements from the Governor and a handful of public comments on a news article reporting on the instant litigation. *See* Declaration of Daniel J. Schmid in Support of Plaintiffs' Motion to Proceed Using a Pseudonym ¶¶ 7–8, *Does 1-6 v. Mills*, No. 21-CV-242 (JDL) (D. Me. Aug. 31, 2021), ECF No. 21-1. But courts have found that generalized statements in the news "expressing a lack of patience or frustration at unvaccinated people do not support [a] claim that [plaintiffs] would be subject to extensive harassment and perhaps even violent reprisals, and do not suffice to justify anonymity." *City Univ. of New York*,

2021 WL 5644642, at *3 (internal quotation marks and citation omitted).  And, similarly, courts reviewing criticism on social media have acknowledged "that social media threads are governed by mob rule and can bring out the worst in those participating," but have found that "such unpleasantness, without threats indicating that [plaintiff] is at risk of actual harm in real life, does not rise to the level of severity that justifies maintaining anonymity while prosecuting a federal lawsuit." *Doe v. Vanderbilt Univ.*, No. 20-CV-356 (JSF), 2021 WL 6496833, at *2 (M.D. Tenn. Mar. 11, 2021); *see also id.* (finding plaintiff's argument that Facebook comments showed he would face academic and career retaliation for seeking tuition refund during pandemic "speculative and unsupported").  Here, in quoting online statements from the Governor and unnamed commenters on a news article, Plaintiffs rely on the same expressions of opinion and "unpleasantness" properly rejected as insufficient by other courts, without showing any "risk of actual harm in real life." *See Vanderbilt Univ.*, 2021 WL 6496833, at *2 (finding plaintiff's "Declaration of such fears alone is insufficient").

Simply put, the Plaintiffs' vague fears of "retribution, reprisal, and ostracization," Pl. Mot. at 12, fall far short of constituting a "substantial privacy right" sufficient to outweigh "the customary and constitutionally-embedded presumption of openness in judicial proceedings," *Univ. of Rhode Island*, 1993 WL 667341, at *2 (internal quotation marks and citations omitted). These Plaintiffs are no different from the hundreds of other plaintiffs who have challenged—and continue to challenge—COVID-related protocols and vaccine mandates under their own names in courts in Maine and elsewhere, and they should not be permitted to continue to proceed pseudonymously in this case.[5]

---

[5]  Pseudonymity is unquestionably inappropriate where a plaintiff's identity has already been publicly disclosed. *See, e.g.*, *City Univ. of New York*, 2021 WL 5644642, at *5; *Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2 (quoting *Megless*, 654 F.3d at 409).  Here, "it is not clear whether or to what extent plaintiff's refusal to receive a

B.     The religious and medical issues asserted by Plaintiffs are insufficient to
       constitute a "substantial privacy interest."

Plaintiffs assert that they should be "permitted to proceed using pseudonyms because the

issues involved in this matter relate to sensitive and private medical decisions," Pl. Mot. at 4, and

to their "sincerely held religious beliefs against the COVID-19 vaccines," *id.* at 8.  While, in

certain cases, a plaintiff's religious beliefs or highly sensitive medical condition may constitute a

substantial privacy right, *see, e.g.*, *Stegall*, 653 F.2d at 186; *Standard Ins. Co.*, 2015 WL

5778566, at *2, this is not such a case.  As other courts have held in similar COVID-related

litigation, opposition to receiving the COVID-19 vaccine (based on religious beliefs or not) is

insufficient to overcome the presumption against pseudonymous litigation.  For example, where,

as "here, there is no independent medical issue separate and apart from plaintiff's refusal to

receive a COVID-19 vaccine on religious grounds," the mere fact "that a case involves a medical

issue is not a sufficient reason for allowing the use of a fictitious name." *City Univ. of New York*,

2021 WL 5644642, at *2 (quoting *Doe v. N.Y. State Dep't of Health*, No. 20-CV-4817 (GHW),

2020 WL 5578308, at *3 (S.D.N.Y. Sept. 17, 2020)) (rejecting a plaintiff's motion to proceed

pseudonymously when challenging his university's vaccine mandate).  Moreover, "[a]s a general

matter, vaccination status is not inherently confidential: mandatory vaccination and the

disclosure thereof is well established."  *Id.* at *5; *cf., e.g.*, Me. Rev. Stat. Ann. tit. 20-A § 6355

(requiring children to submit "a certificate of immunization" to attend school).  Here, too, the

only medical information that Plaintiffs would be required to reveal is their status as

unvaccinated—a status held and disclosed by millions of Americans.  Plaintiffs' assertion that

_____

coronavirus vaccine is public knowledge." *City Univ. of New York*, 2021 WL 5644642, at *5.  However,
particularly given the large number of plaintiffs in this case, the notion that none have publicly stated their
opposition to COVID-19 vaccine mandates or publicly revealed their religious affiliations or beliefs in any forum
outside this litigation strains credulity.  Without access to Plaintiffs' names, Media Intervenors have no way of
knowing whether, for example, despite seeking to proceed pseudonymously in this case, there are Plaintiffs who
have elected to make their opposition to COVID-19 vaccines public.

this matter relates to their "sensitive and private medical decisions," Pl. Mot. at 4, is without

merit, and is insufficient to overcome the strong presumption of public access to proceedings and

records in this case.

Plaintiffs' reliance on their religious beliefs is similarly unavailing.  In another case

involving a plaintiff's asserted Christianity-based objections to a COVID-19 vaccine mandate,

the court "f[ou]nd[] it difficult to believe that plaintiff will suffer substantial prejudice in

disclosing that he is Christian in a country where the majority of the population also identifies as

Christian."  *City Univ. of New York*, 2021 WL 5644642, at *3.  The district court contrasted this

situation with those in which plaintiffs "made revelations about [their] personal beliefs and

practices that are shown to have invited an opprobrium analogous to the infamy associated with

criminal behavior."  *Id.* (quoting *Stegall*, 653 F.2d at 186).  Likewise here, Plaintiffs have not

claimed membership in any particular religious group, but describe their belief in being guided

by the Bible, the Holy Spirit, and prayer—which they say has led them to oppose abortion and

the available COVID-19 vaccines.  *See* Complaint ¶¶ 68–74, *Does 1-6 v. Mills*, No. 21-CV-242

(JDL) (D. Me. Aug. 25, 2021), ECF No. 1.  These religious beliefs, at least some of which are

directly associated with Christianity, are shared by many throughout the country.  *See, e.g.*,

Joanne Silberner, *Pushback to Covid-19 Vaccines Remains Stubbornly High Among White

Evangelicals*, Stat News (Jan. 7, 2022), https://perma.cc/GU5C-P3W3; Andrew Jeong &

Timothy Bella, *Catholic Troops Should Be Able to Reject Vaccine if It Violates Their

Conscience, Archbishop Says*, Wash. Post (Oct. 13, 2021), https://perma.cc/CZW3-DCEQ.[6]  A

---

[6]  Notably, polls have shown broad opposition to vaccine mandates, and majority support for including religious exemptions in vaccine mandates.  *See, e.g.*, *Tell Us: Do You Support Vaccine Mandates?*, Central Maine (Jan. 12, 2022), https://perma.cc/KE3X-BRKS (showing 57% oppose vaccine mandates); Marisa Iati, *Most Americans Support Religious Exemptions to Vaccination But Say They're Overused, Survey Finds*, Wash. Post (Dec. 10, 2021), https://perma.cc/6DYE-QUEF (showing 51% support religious exemptions to vaccine mandates).

mere desire to avoid disclosing these beliefs in the context of this litigation cannot satisfy Plaintiffs' burden to justify restricting public access to their identities.

C.   Plaintiffs' claimed privacy interests cannot outweigh the substantial public interest in this case.

Plaintiffs argue that "the public has an atypically weak interest in the identity of the Plaintiffs" in this case "[b]ecause of the purely legal questions at issue in th[e] litigation."  Pl. Mot. at 8.  Plaintiffs are wrong.  As a preliminary matter, this argument ignores the fact that Plaintiffs have brought as-applied as well as facial challenges, which will necessarily put at issue factual information about the Plaintiffs.  Moreover, as courts have recognized in denying motions to proceed under pseudonyms in similar cases, public interest in COVID-related matters is significant, and litigation concerning requested religious exemptions to vaccine mandates puts case-specific factual questions in issue—not purely legal ones.  *See Trs. of Indiana Univ.*, 2022 WL 36485, at *7–8; *City Univ. of New York*, 2021 WL 5644642, at *3, *5; *Vanderbilt Univ.*, 2021 WL 6496833, at *2; *Trump*, 2020 WL 8258737, at *2.  Indeed, Media Intervenors have sought to intervene to challenge Plaintiffs' continued use of pseudonyms precisely because this matter presents issues of concern to their readers broadly.  *See, e.g.*, Megan Gray, *Maine Newspapers Can Challenge Anonymity of Plaintiffs in Vaccine Mandate Lawsuit, Judge Says*, Portland Press Herald (Dec. 30, 2021), https://perma.cc/696P-MQGX; Joe Lawlor, *Hundreds of Maine Health Care Workers Leave Jobs Over Vaccine Mandate, But Most Stay*, Portland Press Herald (Nov. 1, 2021), https://perma.cc/2EMN-4XXB; Emily Bader, *Central Maine Healthcare Losing Staff Over Vaccine Mandate*, Sun Journal (Oct. 1, 2021), https://perma.cc/PMH4-FN3V.

Moreover, even assuming, *arguendo*, that the outcome of this case does not turn on the particular identity of any litigant, the names of the parties are nevertheless central to the public's broader understanding of the case, the law, and the functioning of the judiciary.  Indeed, the

implications of the present litigation highlight precisely why full public access to proceedings, including the names of the parties, is necessary.  Plaintiffs filed this lawsuit in an attempt to invalidate a statewide public health mandate aimed at addressing an issue at the forefront of the national consciousness on the grounds that it is unconstitutional; citizens of Maine, as well as the media covering this litigation and the larger social and political issues it implicates, should be able to observe all aspects of how the litigants and the court handle this case.

As Justice Scalia observed in *Doe v. Reed*, where the Supreme Court held that referendum signatories' First Amendment rights were not violated by the disclosure of their names, public scrutiny of those who participate in the democratic process is essential.  *See Doe No. 1 v. Reed*, 561 U.S. 186, 228 (2010) (Scalia, J., concurring).  In response to the signatories' stated concerns that disclosure of their names could lead to harsh criticism from political opponents, Justice Scalia explained: "There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed." *Id.*

## CONCLUSION

Plaintiffs cannot meet their burden to demonstrate compelling, countervailing interests sufficient to overcome the common law and constitutional presumptions of public access in this case of utmost public concern.  They, like hundreds of others challenging COVID-related measures around the country, must "step into the light and sue in the open, or not at all." *Trs. of Indiana Univ.*, 2022 WL 36485, at *8 (quoting *In re Boeing 737 MAX Pilots Litig.*, No. 19-CV-5008 (SCS), 2020 WL 247404, at *4 (N.D. Ill. Jan. 16, 2020)).  For the foregoing reasons, Media Intervenors respectfully move this Court for an order unsealing Plaintiffs' names and prohibiting Plaintiffs from continuing to proceed under pseudonyms in this matter.

DATED at Portland, Maine this 27th day of January, 2022.

Respectfully submitted,

/s/ Sigmund D. Schutz
Sigmund D. Schutz
Jonathan G. Mermin
Preti Flaherty Beliveau & Pachios LLP
P.O. Box 9546, One City Center
Portland, ME 04112
(207) 791-3000
SSchutz@preti.com
JMermin@preti.com

Katie Townsend (*pro hac vice*)
Shannon Jankowski (*pro hac vice*)
Reporters Committee for
Freedom of the Press
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
ktownsend@rcfp.org
sjankowski@rcfp.org

*Counsel for Media Intervenors*