UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOES 1-6, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>JANET T. MILLS, Governor of the State of Maine, et al.,<br><br>     Defendants. | Civil Action No. 1:21-cv-00242-JDL |

## STATE DEFENDANTS' MOTION TO DISMISS, WITH INCORPORATED MEMORANDUM OF LAW

Defendants Janet T. Mills, Governor of the State of Maine, Jeanne M. Lambrew, Commissioner of the Maine Department of Health and Human Services (Department), and Dr. Nirav D. Shah, Director of the Maine Center for Disease Control (Maine CDC), (collectively, "State Defendants") hereby move to dismiss Plaintiffs' Complaint, ECF No. 1 [hereinafter, Compl."], pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATUTORY BACKGROUND ON MANDATORY IMMUNIZATIONS

For more than 30 years, the State of Maine has mandated that healthcare facilities require their employees to be vaccinated against several highly communicable diseases. *See* P.L. 1989, ch. 487, § 11 (eff. Sept. 30, 1989) (requiring employees of hospitals to be vaccinated against measles and rubella).[1] Under Maine's current framework, the diseases that healthcare workers must be immunized against are designated in state regulations adopted by the Department and

---

[1] In this memorandum, State Defendants refer to several official public records, some of which have already been filed with the Court, *see, e.g.*, ECF Nos. 48-1 to 48-27, 49-2, 49-3, & 49-6 to 49-10, and some of which are attached to this motion. The Court may consider these materials without converting this motion to dismiss into one for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (in ruling on a motion to dismiss, the court may consider "documents the authenticity of which are not disputed by the parties[,] official public records[,] documents central to plaintiffs' claim[,] or for documents sufficiently referred to in the complaint").

Maine CDC: Immunization Requirements for Healthcare Workers, 10-144 Me. Code R. ch. 264. The exemptions to these vaccination requirements are provided in state statute. *See* 22 M.R.S.A. § 802(4-B) (Supp. 2021) [hereinafter, "Statute"].

From 2001 to 2019, there were three statutory exemptions to the healthcare worker vaccine requirements: when vaccination was (A) medically inadvisable, (B) contrary to a sincerely held religious belief, or (C) contrary to a sincere philosophical belief.  22 M.R.S.A. §§ 802(4-B)(A), (B) (2019); *see also* 20-A M.R.S.A. § 6359(3)(B) (2008) (providing same exemptions to required vaccinations for schoolchildren).  By 2018, vaccination rates for required vaccinations for Maine school children and healthcare workers had fallen below the population-wide rates of vaccination necessary to prevent the spread of those communicable diseases.  ECF Nos. 49-7; 48-2 to 48-5.

In 2019, a bill was introduced in the Maine Legislature to eliminate nonmedical exemptions from all of the State's mandatory vaccination programs in order to reverse the trajectory of Maine's falling vaccination rates; prevent communicable, preventable diseases from spreading in schools, healthcare facilities, and daycare facilities; and protect persons who are unable to be vaccinated for medical reasons.  ECF No. 48-1 (L.D. 798 (129th Legis. 2019)); *see also* ECF Nos. 48-2 to 48-5.[2]  As explained by then Acting Maine CDC Director Nancy Beardsley,

> [w]hen someone chooses not to vaccinate, that decision can jeopardize the health and safety of entire communities, especially the weakest and most vulnerable among us.  Those who are unable to be vaccinated, such as young infants, pregnant mothers or children with cancer, face the most risk from disease complications. . . .
>
> . . . Evidence shows that states that have tighter exemption laws have higher immunization rates, and less disease.

ECF No. 48-4 at 2.

After significant debate on the floor of the Maine House and Senate, in May of 2019, the

---

[2]  Hundreds of Mainers testified in support of, in opposition to, or neither for nor against the bill.  *See* ECF Nos. 48-2 to 48-18 (selected testimony).

Maine Legislature voted to eliminate nonmedical exemptions to vaccination requirements for healthcare workers, daycare employees, schoolchildren, and college students.  ECF No. 48-27.  The law was the subject of a statewide people's veto referendum on March 3, 3020; 72% of Maine voters approved the 2019 amendment to the Statute.  ECF No. 62-1.  The law took effect in April of 2020.  ECF No. 62-1.  In order to comply with the statutory change, the Department removed nonmedical exemptions from its regulations in April 2021.  *See* ECF No. 49-6, § 3.

## FACTUAL BACKGROUND[3]

The intervening COVID-19 pandemic requires little exposition.  COVID-19 is an airborne viral disease that most commonly spreads between people who are in close contact with one another.  Compl. ¶ 78.  It spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes.  Compl. ¶ 78.  By the summer of 2021, Maine was experiencing a rapid increase in the number of COVID-19 infections as a result of the Delta variant, a highly transmissible variant of SARS-CoV-2, the virus that causes COVID-19.  ECF No. 49-4.  The Delta variant is significantly more contagious than previous variants of the virus and may cause more serious illness in the unvaccinated.  Declaration of Donald Wismer [hereinafter, "Wismer Decl."] Ex. 1 at 22.  In light of the Delta variant, epidemiological models suggest that at least 90% of a population would need to be vaccinated in order to achieve population-level immunity.[4]  *Id.*

On August 12, 2021, the Department and Maine CDC revised the healthcare worker vaccination rule on an emergency basis.  Among other changes, the emergency amendment added

---

[3]  State Defendants assume for the purposes of this motion that all the well-pleaded <u>factual</u> allegations in Plaintiffs' Complaint are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations not entitled to presumption of truth).

[4]  The gold standard to prevent the spread of communicable diseases, including COVID-19, is vaccination.  Population-level immunity is an epidemiological phenomenon whereby even unvaccinated individuals are protected against an infectious disease by virtue of being in an environment with sufficiently high vaccination levels.  Wismer Decl. Ex. 1 at 22.

COVID-19 to the list of vaccinations that DHCFs must require for their employees.  ECF No. 49-8, § 2(A)(7).  *See also* Compl. ¶¶ 46-49.  The Department found that:

> immediate adoption of this rule is necessary to avoid further spread of COVID-19 in those healthcare settings within this rule in order to prevent infection, illness, hospitalization, and death.  The Department further finds that immediate adoption of this rule on an emergency basis is necessary to prevent further strain on the state's healthcare system as a result of increased COVID-19-related hospitalizations, as well as reduced capacity caused by illnesses among members of the workforce.

ECF No. 49-9.  In addition, the COVID-19 vaccination requirement in the amendment also applied to Dental Health Practices (DHPs) and Emergency Services (EMS) Organizations.  ECF No. 49-8, § 2(B).

Because the emergency amendment was statutorily limited to 90 days, the Department and Maine CDC proposed and then adopted a permanent amendment requiring vaccination against COVID-19 (Rule) effective November 10, 2021, thereby superseding the emergency amendment.[5] Wismer Decl. Ex. 1.  The Department considered relevant COVID-19 vaccination rates, data on COVID-19 outbreaks in DHCFs, and Maine-specific data on infection and hospitalization rates from COVID-19.  *Id.* at 22-23.  Based on this and other information, the Department determined that requiring COVID-19 vaccinations for healthcare workers in DHCFs is necessary to protect public health for the protection of individual patients; protection of individual workers; protection of the State's healthcare infrastructure, including its workforce; and reducing the likelihood of outbreaks of COVID-19 in covered facilities.  *Id.* at 23-24; *see id.* at 21-24 (explaining complete bases for the Rule).  The Department evaluated other measures to protect against COVID-19, but determined that vaccination was the most effective method to achieve these goals.  *Id.* at 23-24.

---

[5]  The Rule is narrower than, but similar in many respects, to the emergency amendment.  Because the Rule is the rule currently in effect, and substantially similar to the prior amendment, this motion analyzes the Complaint as it relates to the Rule—which is the only continuing controversy.

The Rule does not include DHPs or EMS Organizations.  The removal of DHPs was a result of the rulemaking process.  Declaration of Sara Gagné-Holmes [hereinafter, "SGH Decl."] ¶¶ 10-18.  With respect to DHPs, the Department determined that in the three months that the amendment had been in effect, there were no outbreaks of COVID-19 traced to DHPs and application of the Rule in those settings was not necessary.  *Id.* ¶ 19; *see also id.* ¶ 14 (explaining compliance challenges).  Further, it is highly unlikely that the Department will include DHPs in the scope of the healthcare worker vaccination rule in the future.  *Id.* ¶¶ 21-26.

Plaintiffs are nine pseudonymous healthcare workers who allege that their "sincerely held religious beliefs compel them to abstain from obtaining or injecting any of [the three available COVID-19 vaccines] into their bod[ies], regardless of perceived benefit or rationale."  Compl. ¶ 68.  Seven Plaintiffs were employed by facilities owned or operated by the other Defendants, Compl. ¶¶ 10-14, 17-18; one of the Plaintiffs (John Doe 1) owned his own DHP and employed the ninth Plaintiff (Jane Doe 6).  *See* Pets.' Reply in Supp. of M. Expedite at 5, *Doe v. Mills*, No. 21-717 (U.S. 2021).

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), State Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *United States v. Conagra Grocery Prods. Co.*, 4 F. Supp. 3d 243, 252 (D. Me. 2014) (cleaned up).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "'differs little from that used to review motions to dismiss' under Rule 12(b)(6)."  *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 184 (D. Me. 2014) (quoting *Benjamin v. Aroostook Med. Ctr.*, 57 F.3d 101, 104 (1st Cir. 1995)).  However, a "district court may 'resolv[e] . . . factual disputes between the

parties' 'in order to determine its own jurisdiction.'" *Me. Mar. Acad. v. Fitch*, 425 F. Supp. 3d 24, 28 (D. Me. 2019) (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)).

Finally, when defendants move to dismiss for lack of standing, each plaintiff "bears the burden of alleging facts 'demonstrating that he is a proper party to invoke federal jurisdiction.'" *Ouellette v. Mills*, 22 F. Supp. 3d 36, 40 (D. Me. 2014) (quoting *Dubois v. U.S.D.A.*, 102 F.3d 1273, 1281 (1st Cir. 1996)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "constitutional minimum of standing" is a threefold inquiry: injury in fact, causation, and redressability. *Id.* at 560–561.

## ARGUMENT

### I.     The Eleventh Amendment Bars Plaintiffs' Damage Claims Against State Defendants Sued in their Official Capacity.

Plaintiffs have sued the State Defendants only under federal law and only in their official capacities, Compl. ¶¶ 27-29, and they seek compensatory damages, Compl. at 50. The Court should dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) to the extent, if any, it could be construed as asserting official-capacity damages claims against any of the State Defendants. The Eleventh Amendment serves as a bar to claims for monetary damages against State officers in their official capacities. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). In a section 1983 action, "[a] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Accordingly, all damage claims against State Defendants should be dismissed.

### II.     John Doe 1 and Jane Doe 6's Injunctive and Declaratory Relief Claims are Moot and Should be Dismissed.

Article III of the United States Constitution confines the jurisdiction of federal courts "to those claims that involve actual 'cases' or 'controversies.'" *Redfern v. Napolitano*, 727 F.3d 77,

83 (1st Cir. 2013) (quoting U.S. Const. art. III, § 2, cl. 1). "[F]ederal courts 'are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.'" *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)). Therefore, "to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (cleaned up). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003); *see also Bayley's Campground v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021) ("a case is moot when the court cannot give any effectual relief to the potentially prevailing party" (quotation marks omitted)).

John Doe 1 and Jane Doe 6's claims for equitable relief are now moot because the emergency amendment expired and the Rule does not apply to them. John Doe 1 owns his own DHP and employs Jane Doe 6. The Rule became effective November 10, 2021, and it does not apply to DHPs. Thus, there is no longer any requirement in state law that John Doe 1 be vaccinated against COVID-19 or that he must require his employee Jane Doe 6 to be vaccinated against COVID-19. Because there is "no ongoing conduct to enjoin," these two Plaintiffs' "injunctive-relief claims" are moot. *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) (cleaned up). The same is true for John Doe 1 and Jane Doe 6's declaratory relief claims. This Court cannot issue the declarations that they seek because the emergency amendment is "no longer in controversy" and "the dispute is at this point neither immediate nor real." *Id.* (cleaned up). In sum, there is "nothing harming" John Doe 1 or Jane Doe 6 "and nothing left for [the Court] to do that would make a difference to [their] legal interests." *Id.* Their claims are thus moot.

No exception to mootness applies. Although "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the

practice," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), that doctrine does not apply with respect to John Doe 1 and Jane Doe 6's claims.  The First Circuit has made clear that "[t]he voluntary cessation doctrine <u>does not apply</u> when the voluntary cessation of the challenged activity <u>occurs because of reasons unrelated to the litigation</u>."  *ACLU of Mass.*, 705 F.3d at 55 (emphasis added) (quoting M. Redish, *Moore's Fed. Practice,* § 101.99).  The exception "can be triggered only when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case."  *Id.* at 56; *cf. Aladdin's Castle*, 455 U.S. at 289 & n.11.

As demonstrated by the declaration of Department Deputy Commissioner Sara Gagné-Holmes, the change in the rule was based on the rulemaking process, not on this litigation.  Because there were no outbreaks of COVID-19 in DHPs when the emergency amendment was in effect, the Department removed those facilities from the Rule.  Since the Rule was adopted, there still have been no identified outbreaks of COVID-19 in DHPs.  SGH Decl. ¶¶ 23-24.  Therefore, it is highly unlikely that the Department will reimpose any COVID-19 vaccination requirement on those facilities, *id.* ¶¶ 21-26, and there is no reasonable expectation that either John Doe 1 or Jane Doe 6 will be subject to the Department's healthcare worker vaccination rule in the future.[6]

For similar reasons, the capable-of-repetition-yet-evading-review exception also does not apply.  It "applies only in exceptional situations where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated

---

[6] The voluntary cessation doctrine does not apply for another reason.  The voluntary cessation doctrine "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see also United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309 (1897) (explaining parties cannot moot a case by dissolving their illegal enterprise and reconstituting it after the case is dismissed).  But when a law expires on its own terms, and not in response to litigation, the doctrine has no application.  *See Trump v. Hawai'i*, 138 S. Ct. 377 (2017) (Mem.) (dismissing case as moot when executive order at issue expired by its own terms).

The emergency amendment was adopted on August 12, 2021, and from the moment it was adopted it was statutorily time limited to 90 days.  5 M.R.S.A. § 8054(3).  Under these circumstances, when the rule's lapse was predetermined, the voluntary cessation doctrine does not save John Doe 1 and Jane Doe 6's claims from mootness.  *See Trump*, 138 S. Ct. at 377; *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("unlike a postsuit repeal that might not moot a case, a law's automatic expiration does").

prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer*, 523 U.S. at 17 (cleaned up); *see also Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam).  As explained above, there is no reasonable expectation that John Doe 1 or Jane Doe 6 will be subject to the Department's healthcare worker vaccination rule in the future.  SGH Decl. ¶¶ 21-26.

Therefore, neither exception to mootness preserves John Doe 1 or Jane Doe 6's claims. There is no longer a case or controversy regarding their claims, and they should be dismissed.

## III.   All claims against Governor Mills Should be Dismissed.

Plaintiffs' claims against Governor Mills fail for three interrelated reasons.

First, they have failed to allege any conduct by Governor Mills that caused their injury, therefore failing to comply with Rule 12(b)(6)'s pleading standards.  In actions brought under 42 U.S.C. § 1983, the plaintiff's allegations must support a finding that the individual, through his or her individual actions, violated plaintiff's constitutional rights.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  To withstand a Rule 12(b)(6) motion, Plaintiffs must have alleged in their complaint a plausible claim for relief against Governor Mills; "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* at 678.

Plaintiffs contend that the Governor is "responsible for enacting the COVID-19 Vaccine Mandate" and singling out Plaintiffs for disparate treatment, Compl. ¶¶ 28, 102, 159, 192, but these are legal conclusions not entitled to the presumption of truth.  *See Iqbal*, 556 U.S. at 681. The operative state authorities are the emergency amendment, Rule, and Statute.  Governor Mills was not responsible for promulgating the emergency amendment or Rule or amending the Statute.

Second, and relatedly, none of Plaintiffs' alleged harm was caused by or can be redressed by Governor Mills.  In order to show standing, Plaintiffs must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

action of the defendant." *Lujan*, at 560–61 (cleaned up).   The only <u>actions</u> Plaintiffs allege Governor Mills undertook was announcing, through a press release, the change in the Rule and failing to respond to Plaintiffs' August 18, 2021, letter.   Compl. ¶¶ 41, 121.   Neither of those actions amount to a violation of any of Plaintiffs' constitutional rights, nor did these actions cause the alleged injury to their constitutional and statutory rights.

Third, Governor Mills is not responsible for promulgating or enforcing the Rule, and so the *Ex parte Young*, 209 U.S. 123 (1908), exception to sovereign immunity does not apply.   "While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws," the state official in question must have "enforcement authority" over that law "that a federal court might enjoin him from exercising."   *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021).   Plaintiffs have failed to allege any enforcement authority by the Governor with respect to the Rule, nor does any exist; all claims against the Governor should be dismissed.

## IV.   Plaintiffs' Remaining Claims Against State Defendants Fail Under Fed. R. Civ. P. 12(b)(6).

As an initial matter, the 2,000 Jack Does and Joan Does should be dismissed because they have not been properly joined or identified.   *See* ECF No. 94 (noting Plaintiffs' counsel's continuing obligation to identify clients).   Only the John Does and Jane Does have been identified to State Defendants; the remaining putative plaintiffs do not exist and should be dismissed.

### A.   Count I: First Amendment Free Exercise.

In Count I, Plaintiffs assert that the unavailability of a religious exemption in the Statute constitutes a violation of their right to free religious exercise.   Compl. ¶¶ 122-39.

The First Amendment, applicable to the states through the Fourteenth Amendment, "declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."   *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); U.S. Const. amend.

I.  The First Amendment "embraces two concepts": the "freedom to believe" and the "freedom to act."  *Cantwell*, 310 U.S. at 303.  While the freedom to believe is "absolute," the freedom to act "cannot be."  *Id.* at 304.

"When a religiously neutral and generally applicable law incidentally burdens free exercise rights," it will be sustained "against constitutional challenge if it is rationally related to a legitimate governmental interest."  *Doe v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021); *see also Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" (citations omitted)).  "When a law is not neutral or generally applicable, however," it may be sustained "only if it is narrowly tailored to achieve a compelling governmental interest."  *Doe*, 16 F.4th at 29.  Regardless of the applicable standard, Plaintiffs' claim fails.

   1. <u>The Rule and Statute are Neutral Laws of General Applicability that are Rationally Related to a Legitimate Government Interest.</u>

The neutrality inquiry begins with the text of the law in question.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."  *Id.*  Neither the text of the Rule nor the Statute refers to religious practice, conduct, belief, or motivation.  The Rule and Statute are public health measures designed to stop the spread of communicable diseases.  Indeed, the First Circuit has already held that Maine's framework "is facially neutral," *Doe*, 16 F.4th at 30; Plaintiffs' Complaint fails to show otherwise.

Plaintiffs have also failed to demonstrate that the Rule and Statute are targeted solely at their religious practice or effect an impermissible religious gerrymander.  *See Lukumi*, 508 U.S. at

535; Compl. ¶¶ 126, 131, 133.  The express purpose of the Rule is to reduce and prevent outbreaks of COVID-19 in DHCFs, protect patients and healthcare workers, and protect Maine's healthcare system.  Wismer Decl. Exh. 1 at 23-24.  Similarly, the Legislature's elimination of <u>all</u> nonmedical exemptions was intended to increase the overall rate of vaccination and protect individuals who are unable to be vaccinated for medical reasons.[7]  As explained by Maine Senator Heather Sanborn, the purpose of removing nonmedical exemptions was "to protect those who cannot be immunized.  Those include newborns.  They include severely immune-compromised or medically weakened individuals and the very old may also be very susceptible to communicable diseases."  ECF No. 48-26 at 3.  And Plaintiffs' claims that the State targeted religious conduct by removing only the religious exemption in August of 2021 is contrary to the record.  Compl. ¶¶ 46-49.  As explained by the First Circuit, "[t]he state legislature removed both religious and philosophical exemptions from mandatory vaccination requirements, and thus did not single out religion alone."  *Doe*, 16 F.4th at 30.

The general applicability requirement prohibits the government from selectively "impos[ing] burdens <u>only</u> on conduct motivated by religious belief," *Lukumi,* 508 U.S. at 543 (emphasis added); "consider[ing] the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" *Fulton*, *v. City of Philadelphia*, 141 S. Ct. 1868, 1871 (2021) (quoting *Smith*, 494 U.S. at 884); or "prohibit[ing] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," *Fulton*, 141 S. Ct. at 1871.  The Rule does none of these things.

First, the Rule and Statute apply equally to all DHCFs and not "only against conduct with

---

[7]  *See, e.g.* ECF No. 48-2 (Rep. Tipping testimony); ECF No. 48-18; ECF No. 48-20 at H-397 (Rep. Ingwersen remarks); ECF No. 48-21 at S-556 to -557 & S-563 (Sen. Millett remarks) & S-561 to -562 (Sen. Chenette remarks); ECF No. 48-22 at H-492 (Rep. Fecteau remarks); ECF No. 48-23 at S-653 to -654 (Sen. Carson remarks); ECF No. 48-24 at H-595 to -596 (Rep. McDonald remarks); ECF No. 48-26 at S-754 (Sen. H. Sanborn remarks) & S-755 (Sen. L. Sanborn remarks).

a religious motivation." *Lukumi*, 508 U.S. at 542-43.  DHCFs must require their employees to show proof of vaccination against COVID-19, unless the employee is medically exempt.  A medical exemption does not defeat general applicability by imposing burdens only on those with religious beliefs.  The Statute permits employees to claim a medical exemption to the Rule's mandatory vaccination requirements; exemptions based on any other reason, religious or otherwise, are not permitted.  An individual's personal, philosophical, or religious beliefs simply do not come into play under the Statute.[8]  Further, the elimination of DHPs and EMS Organizations in the Rule does not render it not generally applicable.[9]  As explained by the Second Circuit, no "court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'  . . . [A] law can be generally applicable when, as here, it applies to an entire *class* of people." *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021).

Second, the medical exemption to the Rule is not a "mechanism for individualized exemptions," wherein the government has discretion to allow an exemption "based on the circumstances" of each claimant.  *Fulton*, 141 S. Ct. at 1877 (quotation marks omitted); *see also Sherbert v. Verner*, 374 U.S. 398, 406 (1963).  The constitutional defect in *Fulton* and *Sherbert* was that each state law allowed for government officials to exercise broad discretion to exempt a person or entity from the state law's requirements.  Unlike in *Fulton* and *Sherbert*, the Statute vests discretion regarding medical exemptions with healthcare providers, not State officials.  *See Doe*, 16 F.4th at 30.  Maine's medical exemption provides: "A medical exemption is available to an

---

[8]  Any individual who may have nonmedical reasons to object to vaccinations could still qualify for a medical exemption: Maine law distinguishes not by belief, but by medical condition.

[9]  For the same reason, the application of the Final Rule applies to DHCFs, but not private physicians' offices or urgent care clinics does not defeat general applicability.  Again, a policy "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the <u>government's asserted interests</u> in a similar way."  141 S. Ct. at 1877 (emphasis added).  Here, Maine requires certain facilities to require their employees to be vaccinated against COVID-19 because Maine's interests were in protecting patients and staff and reducing the likelihood of COVID-19 outbreaks in those settings.

employee who provides a written statement from a licensed physician, nurse practitioner or physician assistant that, in the physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more diseases may be medically inadvisable." 22 M.R.S.A. § 802(4-B)(A). Of course, "the Department trusts that these medical professionals, who are licensed by one or more state licensing agencies, will comport with their medical and ethical obligations" in deciding whether to sign a written statement in support of a medical exemption. Wismer Decl. Exh. 1 at 28. Nevertheless, the Department does not interrogate the medical professional's judgment in evaluating medical exemptions—just as the State of Oregon did not evaluate why a doctor prescribed a controlled substance in *Smith*, 494 U.S. at 874. Maine's framework for providing medical exemptions to mandatory vaccination requirements is not an unconstitutional, discretionary system of individualized exemptions.

The result is no different in light of the recent rulemaking by Centers for Medicare and Medicaid Services (CMS) requiring vaccination against COVID-19. On November 5, 2021, CMS published an Interim Final Rule with Comment Period (IFC or "CMS Rule") entitled "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination." 86 Fed. Reg. 61,555 (proposed Nov. 5, 2021) (to be codified at 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491 & 494). The CMS Rule, which covers many of the same healthcare entities as Maine's Rule, requires that those entities ensure that a broad swath of personnel within those facilities be vaccinated against COVID-19. *See, e.g.*, *id.* at 61,619-21 (covering hospitals and long-term care facilities). CMS intends its rule to preempt any inconsistent state and local laws, including the scope of any applicable COVID-19 vaccine exemption. *Id.* at 61,613 ("[T]his IFC preempts the applicability of any State or local law providing for exemptions [to COVID-19 vaccination requirements] to the extent such law provides broader grounds for exemptions than provided for by Federal law and are inconsistent with this IFC.").

The scope of the medical exemption in the CMS Rule is narrower than the Statute. The CMS Rule provides an exemption from the requirement to obtain a COVID-19 vaccine only for "confirm[ed] recognized clinical contraindications to COVID-19 vaccines," 86 Fed. Reg. 61,555, 61,616, based on guidance from the United States Centers for Disease Control & Prevention (US CDC), *id.* at 61,572. US CDC recognized contraindications to vaccination are limited to severe allergic reactions (anaphylaxis) to the COVID-19 vaccine and cardiac conditions occurring after the administration of a prior dose of a COVID-19 vaccine.[10]  Because the Statute provides a broader medical exemption than the CMS Rule, the standard in the CMS Rule likely now governs in facilities covered by both rules. *See Dr. T. v. Alexander-Scott*, No. 1:21-cv-387, 2022 WL 79819, at *8-9 (D.R.I. Jan. 7, 2022); 86 Fed. Reg. at 61,613. Regardless, like the Statute, the CMS Rule's clear standards do not allow for the government discretion that was found unconstitutional in *Fulton* and *Sherbert*.

Third, the inclusion of a medical exemption, but no other exemption, in the Statute does not undermine the State's interests. In 2018, Maine faced vaccination rates among healthcare workers and school children that had fallen below the rates of vaccination necessary to prevent the spread of those communicable diseases. These vaccination rates were not sufficient to protect persons unable to be vaccinated for medical reasons. ECF No. 49-4 at 5, 7. In eliminating nonmedical exemptions to vaccination requirements, the Maine Legislature sought to reverse the trajectory of falling vaccination rates in order to prevent communicable, preventable diseases from spreading in schools, healthcare facilities, and daycare facilities and protect persons who are

---

[10]  Centers for Disease Control & Prevention, Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States (Nov. 5, 2021), *available at* https://www.cdc.gov/vaccines/covid-19/downloads/summary-interim-clinical-considerations.pdf.  Research shows that the rate of anaphylaxis to Pfizer and Moderna vaccines is 2.5 to 11.1 per 1 million doses. Kimberly G. Blumenthal et al., *Acute Allergic Reactions to mRNA COVID-19 Vaccines*, 325 JAMA 1562, 1562 (2021). Few healthcare workers will qualify for a medical exemption under the standard of the CMS Rule.

unable to be vaccinated for medical reasons.[11]   Exempting persons who are medically able to be
vaccinated would <u>not</u> serve any of Maine's goals, but exempting persons for whom vaccination is
medically advisable does serve the State's goals.   As explained by the First Circuit:

> We conclude that exempting from vaccination only those whose health would be
> endangered by vaccination does not undermine Maine's asserted interests here:
> (1) ensuring that healthcare workers remain healthy and able to provide the needed
> care to an overburdened healthcare system; (2) protecting the health of the those in
> the state most vulnerable to the virus – including those who are vulnerable to it
> because they cannot be vaccinated for medical reasons; and (3) protecting the health
> and safety of all Mainers, patients and healthcare workers alike.

*Doe*, 16 F.4th at 30–31; *see also Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) ("The right
to practice religion freely does not include liberty to expose the community or the child to
communicable disease or the latter to ill health or death.").

Because the Rule and Statute are neutral and generally applicable, the applicable standard
of constitutional review is rational basis.   Because "[s]temming the spread of COVID–19 is
unquestionably a compelling interest," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63,
67 (2020) (per curiam), the State's goal of stopping the spread of COVID-19 in certain facilities
and protecting patients, workers, and those unable to be vaccinated are unquestionably legitimate
state interests.   And requiring vaccination, the most effective method of stopping the spread of
communicable disease, Wismer Decl. Exh. 1 at 23-24, is rationally related to achieving that goal.
*Accord Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905) (upholding municipality's mandatory
vaccination law based on its "real and substantial relation" to protecting public health).

---

[11]   Because the Maine Legislature eliminated nonmedical exemptions in 2019, the Court should look to the
Legislature's asserted interests in 2019—not the interests Maine asserted in 2021 in requiring vaccination against
COVID-19.   *See Fulton*, 141 S. Ct. at 1878-79 (rejecting City's post hoc rationalizations and reinterpretations of
disputed contractual language).   The year 2019 is the correct timeframe for another reason: neither the Department
nor Maine CDC could have included a religious exemption in the text of the Rule or Final Rule in 2021.   The Maine
Legislature instructed the Department and Maine CDC to remove all religious and philosophical vaccine exemptions
from their rules in 2019.   2019 Me. Laws ch. 154, § 11.   Executive agencies are creatures of statute and have only that
authority provided to them by law.   *See Valente v. Bd. of Env'tl Prot.*, 461 A.2d 716, 718 (Me. 1983).   The Department
and Maine CDC have no authority to alter statutory language to create a religious exemption.

2.      The Rule and Statute are Narrowly Tailored to Achieve the State's
Compelling Interests.

As shown above, both Maine laws in question are neutral and generally applicable and "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Lukumi*, 508 U.S. at 531.  But if strict scrutiny were to apply, then both laws would still stand up against Plaintiffs' free exercise challenge.

As noted, "[s]temming the spread of COVID–19 is unquestionably a compelling interest," *Roman Cath. Diocese*, 141 S. Ct. at 67, and the laws are narrowly tailored to serve its objective. Narrow tailoring requires the government to show that its policy is the "least restrictive means" of achieving its objective, *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), and that it "seriously undertook to address the problem with less intrusive tools readily available to it," *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).  To evaluate the requirement of narrow tailoring, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

In Plaintiffs' Complaint, they assert that "they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable" health and safety requirements as alternatives to vaccination.  Compl. ¶¶ 75-76.  Each of these options was considered by Maine CDC, but rejected.  Maine CDC determined that symptom monitoring is insufficient because of asymptomatic transmission of the virus that causes COVID-19.  Wismer Decl. Exh. 1 at 21, 24.  Masks, facial coverings, and other personal protective equipment have been have used in DHCFs throughout the pandemic, but there still have been numerous outbreaks in covered facilities.  *Id.* at 23.  Daily and periodic testing was also considered by Maine CDC, but rejected because of the contagiousness of the Delta variant.  *Id.* at 24.

In sum, there were no less restrictive alternatives that would have been effective at

achieving the State's goals.  *Ashcroft*, 542 U.S. at 666.

**B.      Count II: Supremacy Clause**

In Count II, plaintiffs assert State Defendants have violated the Supremacy Clause of the federal Constitution.  Compl. ¶¶ 140-51.  The Supremacy Clause is not "the source of any federal rights" or any private cause of action, but a "rule of decision" that courts should not give effect to state laws that conflict with federal law.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (cleaned up).  Thus, as the Supreme Court held in *Armstrong*, the Supremacy Clause "certainly does not create a cause of action," 575 U.S. at 325, and Plaintiffs' claim should be dismissed for this reason alone.

To the extent that this count is directed at State Defendants, Plaintiffs have failed to show how State Defendants have denied the supremacy of federal law or the inapplicability of Title VII. Compl. ¶ 144 (alleging State Defendants "tacitly stated" Title VII is inapplicable in Maine).  The opposite is true, as State Defendants already explicitly have acknowledged.  ECF No. 43 at 1.

And even if Plaintiffs could be said to making a preemption claim in Count II—a claim they do not articulate—Plaintiffs conflate a vaccine exemption with a religious accommodation under Title VII.[12]  As explained by the Second Circuit in evaluating New York's mandatory COVID-19 vaccination requirement for healthcare workers: "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021).  Similarly, the Department published guidance explaining that the Rule does <u>not</u> prohibit employers from providing

---

[12]  None of the Plaintiffs are or were employed by the State.  Moreover, Title VII does not require employers to make accommodations that compromise workplace safety.  *See, e.g.*, *Robinson v. Children's Hospital Boston*, No. 14-10263-DJC, 2016 WL 1337255, at **9-10 (D. Mass. Apr. 5, 2016) (concluding hospital did not violate Title VII when it terminated an employee who refused the flu vaccine based on her religious beliefs pursuant to a hospital vaccination policy that only allowed for medical exemptions).

accommodations under Title VII:

> A 2019 Maine law eliminated religious exemptions from Maine DHHS immunization rules, including the health care worker immunization rule. However, Federal civil rights laws, such as Title VII of the Civil Rights Act, continue to apply to some employers. The [R]ule does not prohibit employers from providing accommodations for employees' sincerely held religious beliefs, observances, or practices that may otherwise be required by Title VII and other federal civil rights laws. The [Rule does not] expand the scope of the federal civil rights laws or otherwise require employers to provide religious exemptions. However, . . . if such accommodations are provided by a [DHCF, those accommodations] must comply with the [R]ule.[13]

Here, because neither the Statute nor the Rule "foreclose[s] all opportunity for Plaintiffs to secure a reasonable accommodation under Title VII," neither state authority "conflict[s[ with federal law." *We The Patriots*, 17 F.4th at 292.

### C.    Count III: Fourteenth Amendment Equal Protection

In Count III of their Complaint, Plaintiffs allege that their right to equal protection of the laws has been violated by the lack of a religious exemption in the Rule and Statute. Compl. ¶¶ 152-67. "Where a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *Wirzburger v. Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). As shown above, the State's goals of stopping the spread of COVID-19 in certain facilities and protecting those unable to be vaccinated are legitimate state interests. Requiring vaccination, the most effective method of stopping the spread of communicable diseases, Wismer Decl. Exh. 1 at 21-24, is rationally related to achieve those goals.

### D.    Count V: Civil Conspiracy

---

[13]    Healthcare Care Worker Vaccination FAQs, https://www.maine.gov/covid19/vaccines/public-faq/health-care-worker-vaccination (last visited Feb. 9, 2022).

Finally, in Count V, Plaintiffs allege that State Defendants and Plaintiffs' employers have engaged in a civil conspiracy to deprive them of equal protection under the law by prohibiting any religious exemption or accommodation.  Compl. ¶¶ 180-97.  *See* 42 U.S.C. § 1985(3).

> To plead an actionable claim under [section 1985, a plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is "to deprive the plaintiff of the equal protection of the laws," describe at least one overt act in furtherance of the conspiracy, and "show either injury to person or property, or a deprivation of a constitutionally protected right."

*Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)).[14]  To plead a civil rights conspiracy, a plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights."  *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).

Plaintiffs' conclusory allegations on this count are insufficient.  As to the existence of a conspiracy, Plaintiffs have only offered "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement."  *Alston*, 988 F.3d at 578.  Plaintiffs' only allegation of an overt act by any of the State Defendants is the Governor's issuance of the alleged "vaccine mandate," Compl. ¶ 192, an allegation plainly at odds with the record facts, *see supra* at 1-4 (describing origins of Rule and Statute).  Further, a mere alignment of interests among the Defendants to protect the health of patients and staff through vaccination of healthcare workers against COVID-19 is insufficient as a matter of law to establish an agreement or meeting of the minds.  *See Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011).  Plaintiffs' civil conspiracy claim should be dismissed.  *Alston*, 988 F.3d at 578.

---

[14]  While the Supreme Court and the First Circuit have speculated that Section 1985 might apply to other class-based invidiously discriminatory animus, they have never applied Section 1985 to anything other than race.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 & n.9 (1971); *Soto–Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012).

## CONCLUSION

For the reasons set forth above, State Defendants request that Plaintiffs' Complaint be dismissed.

DATED:  February 14, 2022   Respectfully submitted,

        AARON M. FREY
        Attorney General

        THOMAS A. KNOWLTON
        Deputy Attorney General
        Chief, Litigation Division
        thomas.a.knowlton@maine.gov

        /s/ Kimberly L. Patwardhan
        KIMBERLY L. PATWARDHAN
        Assistant Attorney General
        kimberly.patwardhan@maine.gov

        VALERIE A. WRIGHT
        Assistant Attorney General
        valerie.a.wright@maine.gov

        Office of the Attorney General
        6 State House Station
        Augusta ME  04333-0006
        Tel.  (207) 626-8800
        Fax (207) 287-3145

        Attorneys for State Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, I electronically filed this document and its attachments with the Clerk of the Court using the CM/ECF system and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta ME  04333-0006
Tel.  (207) 626-8570
Fax (207) 287-3145
kimberly.patwardhan@maine.gov