# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE
### Bangor Division

| | | |
|---|---|---|
| JANE DOES 1–6, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:21-cv-00242-JDL |
| | ) | |
| JANET T. MILLS, in her official capacity as | ) | |
| Governor of the State of Maine, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*"**I conclude that the Plaintiffs have a reasonable fear of harm that outweighs the public's interest in open litigation . . . . I take judicial notice of the substantial public controversy currently surrounding public and private mandates requiring individuals to be vaccinated for the COVID-19 coronavirus . . . ."[1]***

## PLAINTIFFS' OBJECTIONS TO MEDIA
## INTERVENORS' MOTION TO UNSEAL PLAINTIFFS' IDENTITIES

Plaintiffs, pursuant to Local Rule 7, file their objection in response and opposition to Media Intervenors' Motion to Unseal Plaintiffs' Identities (Doc. 105, "Media Motion"). For the following reasons, the Court should deny the Media Motion.[2]

## ARGUMENT

"[A] party to a civil action—whether defendant or plaintiff—may proceed in pseudonym when the particular circumstances of the case justify such pseudonymity." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 466 (E.D. Pa. 1997). Indeed, "the Supreme Court has given the practice implicit recognition" in cases involving sensitive issues of a private or highly personal

---

[1] Order on Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order, Doc. 32, at 4 (emphasis added).

[2] The 20-page Media Motion exceeds the 10-page limit set by Local Rule 7(d). Plaintiffs have strived to make this response a succinct as possible, but exceeding the 10-page limit was necessary due to Media Intervenors' excess. To the extent necessary, Plaintiffs seek the Court's leave *instanter* to file the modest excess pages herein.

nature. *Doe v. C.A.R.S. Protections Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008) (citing *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973)). The judge ruling on a motion to proceed in pseudonym "has an *independent* duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (emphasis added). Thus, while there is a "presumption that parties' identities are public information," that presumption "can be rebutted by showing that the harm to the plaintiff . . . exceeds the likely harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Additionally, while members of the public have a right to know who is using their court systems to challenge laws, there are certain well-defined exceptions. Specifically, "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872.

Though "[n]either the U.S. Supreme Court nor the First Circuit has 'definitively articulated' when a plaintiff may proceed under a pseudonym," *Doe v. Reg'l Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, at *2 (D. Me. May 29, 2020), courts in the First Circuit have recognized, "the ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995) (cleaned up). In making this determination, courts have looked to a number of factors, including, *inter alia*,

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically

weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives[;] (7) the universal level of public interest in access to the identities of litigants; (8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2 (cleaned up) (quoting *Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011)). Other related factors include "whether the plaintiff would be required to disclose information of the utmost intimacy," "whether the plaintiff would risk suffering injury if identified," and "whether the party defending against a suit brought under a pseudonym would be prejudiced." *Doe v. Purdue Univ.*, 321 F.R.D. 339, 341 (N.D. Ind. 2017) (cleaned up). Plaintiffs satisfy every formulation of the test and every factor supporting proceeding in pseudonym, and the Media Motion should be denied.

## I.   PLAINTIFFS HAVE A SUBSTANTIAL PRIVACY INTEREST IN THEIR SINCERELY HELD RELIGIOUS BELIEFS AND PRIVATE MEDICAL DECISIONS THAT OUTWEIGHS MEDIA INTERVENOR'S GENERAL INTEREST IN KNOWING THEIR NAMES.

Media Intervenors claim Plaintiffs merely make "generalized assertions" for proceeding in pseudonym and that religious beliefs and medical decisions are not matters warranting privacy. (Media Mot. 2, 17–18.) Intervenors' contention seems to be that medical decisions *alone* are not sufficient, and religious beliefs *alone* are not sufficient to warrant using pseudonyms. (Media Mot. 19–20.) But this ignores the fact that neither Plaintiffs' religious beliefs nor their private medical decisions stand *alone*. They are inextricably intertwined in this action. And, in considering whether pseudonyms are warranted to protect a matters of a Plaintiffs' utmost privacy, "the court should carefully review *all* the circumstances of a given case." *Plaintiff B v. Francis*, 631 F.3d 1310, 1316

(11th Cir. 2011) (cleaned up). Even where either individual factor would be insufficient standing alone (which Plaintiffs do not concede), the totality of circumstances here warrants a measure of protection. Shielding only Plaintiffs' identities from public disclosure, while permitting Defendants to obtain and use Plaintiffs' identities to defend against their claims, and permitting the public access to all pseudonymous filings, strikes the appropriate balance.

A.    **Plaintiffs' Sincerely Held Religious Beliefs Are Quintessentially Private Matters That Warrant Proceeding Under Pseudonyms.**

As numerous courts have recognized, "religion is perhaps *the* quintessentially private matter." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (emphasis added); *Plaintiff B*, 631 F.3d at 1316 ("The 'information of utmost intimacy' standard applies to cases involving . . . prayer and personal religious beliefs."); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court order allowing pseudonymous litigation where the "suit—challenging a government activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Doe v. Rollins coll.*, No. 6:16-cv-2232-Orl., 2017 WL 11610361, at *2 (M.D. Fla. Mar. 22, 2017) ("[I]nformation of the utmost intimacy includes issues such as abortion, prayer and personal religious beliefs."); *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (same); *id.* (noting involvement of "religious beliefs" and "the proper interaction between government and religion" are sufficiently private to warrant a plaintiff's proceeding anonymously where majority of community opposed plaintiff's position); *Doe v. Franklin Bank, SSB*, No. A-08-CA-293 LY, 2008 WL 11334179, at *4 (W.D. Tex. Sept. 3, 2008) (same); *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, (S.D. Ga. 2015) (concluding pseudonym use warranted where "plaintiffs' suit touches upon their beliefs about religion, a topic deemed . . . to be 'the quintessentially private matter.'" (quoting *Stegall*, 653 F.2d at 186)).

Most recently, in *Navy Seal 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2022 WL 520829 (M.D. Fla. Feb. 18, 2022), the court granted United States Armed Forces servicemembers leave to proceed pseudonymously in challenging the federal COVID-19 vaccine mandate applicable to servicemembers. 2022 WL 520829, at *2. The court recognized that "'religion is perhaps the quintessentially private matter,'" *id.* at *1 (quoting *Stegall*, 653 F.2d at 186), and provides a substantial basis for protecting a plaintiff's privacy, particularly when coupled with the interplay between sincerely held religious beliefs and private medical decisions. *Id.* The court explained that "[p]rosecution of this action compels the plaintiffs to disclose sincere religious beliefs and to disclose the deeply personal experiences that form the foundation of those beliefs." *Id.* As a result, the court held that plaintiffs' religious beliefs were sufficient to permit proceeding under pseudonyms.

**B.  Plaintiffs' Medical Decisions Are Private Matters That Warrant Proceeding Under Pseudonyms.**

Plaintiffs should be permitted to continue in pseudonym because their claims are tied to sensitive and private medical decisions (resulting from their quintessentially private religious beliefs). Plaintiffs are all private citizens of Maine who sought religious accommodation from a vaccine mandate directly affecting their health care. (V. Compl. ¶¶ 10–26.) They commenced this action to challenge the denial of religious accommodations for specific, personal, and private medical decisions concerning their healthcare (i.e., to decline COVID-19 vaccination on religious grounds) based on Defendants' contention no religious accommodations are available for such medical decisions. There is little else at issue in this case but whether federal law applies in Maine and whether consideration of a religious exemption for conscientious objectors is available under federal law. And there is a "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so." *Anonymous v. Legal*

*Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996). "Historically, courts have permitted plaintiffs to proceed pseudonymously in cases involving . . . sensitive medical conditions, and certain religious observances, among others." *Doe v. Cook Cnty.*, No. 1:20-cv-5832, 2021 WL 2258313, *3 (N.D. Ill. June 3, 2021).

Caselaw demonstrates nearly universal acceptance of pseudonymous plaintiffs in cases involving the fundamentally private issues of their medical histories, conditions, and decisions. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (plaintiffs' pregnancy and healthcare decisions); *Doe v. Bolton*, 410 U.S. 179 (1973) (same); *Doe v. Gaughan*, 808 F.2d 871 (1st Cir. 1986) (plaintiffs' mental health conditions); *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996) (finding plaintiff's privacy interest in mental health condition sufficient to proceed anonymously in accordance with "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so"); *Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127, 1129 (E.D. Wis. 1999) (granting use of pseudonym where "in modern society [plaintiff's medical condition] is still considered a stigma"); *W.G.A. v. Priority Pharm., Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (allowing plaintiff to proceed under pseudonym in action involving plaintiff's prescription medication for medical condition which was "a personal matter of the utmost intimacy" where "personal embarrassment, ostracism, harassment and discrimination . . . might result from disclosure"); *Doe v. Sessions*, No. 18-0004(RC), 2018 WL 4637014, at *4 (D.D.C. Sept. 27, 2018) (granting leave to proceed pseudonymously in action involving "sensitive, highly personal matter" of plaintiff's medical condition); *Roe v. Catholic Health Initiatives Colo.*, No. 11-cv-021799-WYD-KMT, 2012 WL 12840 (D. Colo. Jan. 4, 2012) (granting leave to proceed pseudonymously to protect from disclosure of confidential medical information); *Doe v. Provident Life & Accident Ins. Co.*, 176

6

F.R.D. 464, 470 (E.D. Pa. 1997) (granting plaintiff leave to proceed pseudonymously where "strong probability that he will be stigmatized in the community if his name is revealed" in connection with medical condition and treatment at issue); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mon. 1974) (allowing plaintiff to proceed anonymously in case involving pregnancy and medical decisions of "intensely personal nature" where "clear that a practice has developed permitting individuals to sue under fictitious names where the issues involved are matters of a sensitive and highly personal nature").

This court also has recognized that, when a case involves plaintiffs who are "the recipients of certain medical treatment" at issue, "the desire to maintain the anonymity of the [plaintiffs] is motivated by legitimate reasons." *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, at *1 (D. Me. Jan. 25, 2021); *see also Doe v. Reg'l Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, at *2–4 (D. Me. May 29, 2020) (granting leave to proceed pseudonymously to protect plaintiff's privacy interest in medical condition); *Doe v. Standard Ins. Co.*, No. 1:15-cv-00105-GZS, 2015 WL 5778566, at *1–3 (D. Me. Oct. 2, 2015) (same). (*See also* Order on Plaintiffs' Motion to Proceed Using Pseudonyms, Doc. 32, at 32 (holding "Plaintiffs have demonstrated good cause to protect their identities from public disclosure").) Here, the gravamen of Plaintiffs' Verified Complaint is inextricably intertwined with their receipt of (or request not to receive) certain medical treatment. (V. Compl. ¶¶ 1–9.) Thus, Plaintiffs' request to proceed in pseudonym is legitimate and compelling.

## II. COURTS ACROSS THE COUNTRY HAVE PERMITTED PLAINTIFFS BRINGING SIMILAR CHALLENGES TO COVID-19 VACCINE MANDATES TO PROCEED IN PSEUDONYM WHERE FORCING PLAINTIFFS TO PUBLICLY REVEAL THEIR IDENTITIES WOULD SUBJECT THEM TO STIGMA, OSTRACISM, RETALIATION, AND HARM.

Plaintiffs should also be allowed to proceed under pseudonyms because of the legitimate danger of stigma, ostracization, retaliation, and other harms from public disclosure of their

identities. The danger of harm from the public disclosure of a plaintiff's identity is a substantial factor in determining whether a court should grant leave to proceed pseudonymously. *See, e.g.*, *Stegall*, 653 F.2d at 186 ("The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity. But the threats of violence generated by this case, in conjunction with the other factors weighing in favor of maintaining the Does' anonymity, tip the balance against the customary practice of judicial openness."); *see also Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) ("The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously . . . ."); *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) ("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Doe v. St. Clair Cnty.*, No. 18-CV-380-SMY-SCW, 2018 WL 1071744, at *1 (S.D. Ill. Feb. 26, 2018) ("Plaintiff lives in fear of retaliation and has legitimate fears of humiliation for bringing this lawsuit. The Court finds that revealing Plaintiff's name will potentially expose her to the risk of retaliation by members of the public."). The overt threats made against Plaintiffs in this action, specifically, and against the unvaccinated in general, warrant the use of pseudonyms.

The district court in *Doe 1 v. Northshore University HealthSystem*, No. 21-cv-05683, 2021 WL 5578790 (C.D. Ill. Nov. 30, 2021), found that proceeding pseudonymously was appropriate in an action challenging the denial of religious exemptions from the COVID-19 vaccine mandate of a public employer. 2021 WL 5578790, at *9. The court noted "news articles and online comments" cited by the plaintiffs "in which commenters ridicule or insult Plaintiffs and call for them to be fired," as well as "'broader sentiment around the country' and 'threats, ridicule, ostracism, harassment, scorn and opprobrium directed more generally at those who, like [Plaintiffs], have religious objections to receiving a COVID-19 vaccine.'" *Id.* (modification in

8

original). The court found that the plaintiffs' citations "demonstrate[d] 'risk of serious social stigmatization surpassing a general fear of embarrassment.'" *Id.* The court also noted the harassment and intimidation the plaintiffs had already received at work. *Id.* at *10. Thus, the court concluded, "[i]n addition to the arguments involving medical records and the private nature of religious beliefs, these concerns suffice to overcome the 'strong presumption of public access.'" *Id.* (cleaned up).

In *Does 1 through 11 v. Board of Regents of the University of Colorado*, No. 21-cv-02637-RM-KMT, 2022 WL 43897 (D. Colo. Jan. 5, 2022), the district court likewise permitted plaintiffs challenging a mandatory COVID-19 vaccine policy on religious grounds to proceed pseudonymously primarily because of "the political climate and public attitudes concerning those who refuse vaccination from COVID-19." 2022 WL 43897, at *3. The court credited the plaintiffs' showing, from their complaint and online media, "that if outside persons know they have chosen to be unvaccinated, they are personally subject to a substantial risk of retaliation, including physical harm." 2022 WL 43897, at *3 (noting online comment, "'The anti-vaxers are ignorant trash and don't deserve to live. Gun them down while they're all in one place and let God sort it out,'" and public remarks of President Biden towards the unvaccinated, ""We've been patient, but our patience is wearing thin, and the refusal has cost all of us . . . .'"). The court also credited the plaintiffs' argument that public disclosure of their identities would harm their future employment prospects. *Id.* The court concluded, "[t]here is no question that there exists in our nation a certain enmity from some persons in society against those persons who choose not to become vaccinated," and that the plaintiffs had "presented evidence that supports their contention that choosing not to become vaccinated can stigmatize an individual as uncaring for the well-being of others." *Id.* at *4 (footnote omitted). Thus, the court held, "the Plaintiffs have a substantial

privacy right in protecting against public knowledge of their identities that outweighs the presumption of openness in judicial proceedings." *Id.* at *5.

In *Navy Seal 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2022 WL 520829 (M.D. Fla. Feb. 18, 2022), the court granted the plaintiffs leave to proceed using pseudonyms because of the threat inherent in many of the same public statements and comments cited by Plaintiffs in this case. *See* 2022 WL 520829, at *2. The court noted that "[t]he statements and incidents cited by the plaintiffs adequately demonstrate, and everyday experience in recent weeks and months confirms, an acrid public atmosphere of contention about masks, vaccines, mandates, and the like." *Id.* at *1.

In *Air Force Officer v. Austin*, No. 5:22-cv-00009-TES, 2022 WL 468030 (M.D. Ga. Feb. 15, 2022), the court credited the plaintiff's argument that "personal safety and security as well as attestation to her religious beliefs are highly relevant because of a social climate that is generally hostile to those who decline a COVID-19 vaccine for any reason" 2022 WL 468030, at *2 (cleaned up). Much like Plaintiffs in this case (Doc. 41 at 10–12), the plaintiff in *Air Force Officer* referenced social media commentary, statements by political leaders, and other public comments to demonstrate the public hostility towards those with religious beliefs against COVID-19 vaccination. 2022 WL 468030, at *2. The court observed that "[s]ocial media is a breeding ground for social-stigma commentary," *id.*, and concluded there was "no reason to invite what could become even more hostile and directly targeted commentary by forcing her to disclose her identity." And, as to the public interest, the court explained it was "confident that the public's interest regarding Plaintiff's free exercise claims can be served without the general public knowing who she is." *Id.* Having considered the evidence of the plaintiff's private, sincerely held religious beliefs and the social climate stigmatizing those who decline vaccination, "the Court conclude[d] that it is sufficient to warrant anonymity." *Id.*

And, in *U.S. Navy Seals 1-26 v. Biden*, No. 4:21-cv-01236-O, Doc. 34 (N.D. Tex. Dec. 2, 2021), the Northern District of Texas entered a protective order shielding the plaintiff Navy Seals' identities, and only required that Plaintiffs disclose their identities to the Defendants.

Finally, this Court—in this case—has "take[n] judicial notice of the substantial public controversy currently surrounding public and private mandates requiring individuals to be vaccinated for the COVID-19 coronavirus or to provide proof of vaccination status," (Order, Doc. 32, at 4), based on many of the same comments (directed specifically at Plaintiffs in this case) that have led other courts to grant motions to proceed in pseudonym. That same "substantial public controversy" remains alive and well today, and it still demonstrates that "Plaintiffs have a reasonable fear of harm that outweighs the public's interest in open litigation." (*Id.*).

All the same considerations that justified pseudonymous proceedings in the cases cited above justify allowing Plaintiffs to proceed pseudonymously here. There is no question that Plaintiffs face the threat of retaliation from their own communities, as shown by a sampling of the hostile public comments on the Bangor Daily News article about Plaintiffs in this case:

- "Well one would have to wonder if the above is really true since both these deplorable 'Christian' sociopathic groups see no harm in placing innocents at risk of serious long term health problems or death."

- "These people turn my stomach! Somebody's fake religion has nothing to do with our health. Such a lawsuit shouldn't even be considered by the court. In fact, maybe as citizen, Americans ought to be suing the fools who put this lawsuit together."

- "The Liberty Counsel is the Christian American Taliban."

- "This dangerous and deadly public health matter presents an opportunity to further control those who look to [religion] for spiritual nourishment."

- "When your choice endangers everyone around you, you are a public threat, and should be incarcerated, just as you would be if you were firing a gun at random in a crowd."

(Declaration of Daniel J. Schmid in Support of Plaintiffs' Motion to Proceed Using Pseudonyms, Doc. 21-1, ¶ 7.)

In New York, when discussing a COVID-19 vaccine mandate identical to that at issue here, which is subject to a legal challenge identical to the challenge here, the New York Governor invoked explicitly religious language to ostracize New Yorkers with religious objections to COVID-19 vaccination, even urging them to replace faith in God with faith in her:

> God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers - he made them come up with a vaccine. That is from God to us and we must say, thank you, God. Thank you. And I wear my 'vaccinated' necklace all the time to say I'm vaccinated. All of you, yes, I know you're vaccinated, you're the smart ones, **but you know there's people out there who aren't listening to God and what God wants. You know who they are.**
>
> **I need you to be my apostles.**

Governor Kathy Hochul, *Rush Transcript: Governor Hochul Attends Service at Christian Cultural Center* (Sept. 26, 2021), https://www.governor.ny.gov/news/rush-transcript-governor-hochul-attends-service-christian-cultural-center (emphasis added).

The President of the United States, in remarks to the American public,[3] disparaged and stigmatized unvaccinated Americans such as Plaintiffs as uncaring, immoral, dangerous, and responsible for widespread illness and death—even the pandemic itself—and ginned up animus towards them:

- "This is a pandemic of the unvaccinated.  And it's caused by the fact that . . . we still have nearly 80 million Americans who have failed to get the shot."

- "The vast majority of Americans are doing the right thing. Nearly three quarters of the eligible have gotten at least one shot, but one quarter has not gotten any.  . . . That 25 percent can cause a lot of damage—and they are."

---

[3]      *Remarks by President Biden on Fighting the COVID-19 Pandemic*, The White House (Sept. 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/.

- "For the vast majority of you who have gotten vaccinated, I understand your anger at those who haven't gotten vaccinated."

- "Many of us are frustrated with the nearly 80 million Americans who are still not vaccinated . . . ."

- "We've been patient, but our patience is wearing thin. And your refusal has cost all of us."

- "[A] distinct minority of Americans . . . are keeping us from turning the corner."

- "The bottom line: We're going to protect vaccinated workers from unvaccinated co-workers."

- "[W]e've had record job creation for a new administration, economic growth unmatched in 40 years.  We cannot let unvaccinated . . . undo it, turn it back."

Likewise representative of a general public sentiment against religious objectors to vaccination and evidencing the societal stigma against the unvaccinated are the public comments on news reports[4] about a similar lawsuit challenging an Illinois healthcare employer's COVID-19 vaccine mandate on religious grounds:

- "let them forgo the shots I say AND fire them…they'll infect their entire family and they'll all leave the gene pool...win win"

- "Fools and Kowards hide behind a book of fairy tales"

- "The number of nurses refusing the vaccine is roughly on par with the number of nurses that turn out to be serial killers Coincidence?"

- "90% are heroes. It's the science denying, ignorant, stubborn and stupid ones that are getting let go.

---

[4]     Monique Beals, *Chicago-area hospital workers sue over vaccine mandate, citing religious objections*, The Hill (Oct. 26, 2021, 1:10 PM), https://thehill.com/homenews/state-watch/578501-chicago-area-hospital-workers-sue-overvaccine-mandate-citing-religious?rl=1;  Lisa Schencker, *NorthShore workers sue hospital system, citing religious objections to COVID-19 vaccine mandate*, Chicago Tribune (Oct. 27, 2021), https://www.msn.com/en-us/news/us/northshore-workers-sue-hospital-system-citing-religiousobjections-to-covid-19-vaccine-mandate/ar-AAPWPhu.

- "Fire their asses. Let them go work at a church."

- "Fire those religious hysteric anti vaxx kooks!"

- "no exemptions your mental illness has no place in science except to study get the vaccine or get in the unemployment line"

Other representative comments from news organization social media sites reporting on religious objections to COVID-19 vaccine mandates[5] call religious objectors "killers" and "traitors," and call for their permanent quarantine, permanent unemployment, public humiliation, and even death:

- "It is unbelievable how many stupid unvaccinate people live in this country. They just continue to make stupid excuses not to get vaccinate. Maybe y'all should just get together in a group get a pistol & play roulette."

- "If you want to take part in a post-COVID19 world you'll have to be vaccinated, or live permanently in isolation until you change your mind."

- "Ppl who are not getting vaccinated are traitors, who are killing other Americans."

- "Now the only thing lacking is to turn out these selfish religious lawbreakers to the camps. I say these self righteous ones who claim the Book denounces murdering of innocents might be branded as seditious. All tolled, it will serve society best if only those who Want to Save Lives are allowed to work or receive unemployment.

  "We can march them out into the street and pin crosses on them."

- "It's called quarantine. We need to isolate the plague spreading fools from the sane and treatable. You are a liar and promote mass death. Hell is too kind a place for those like you."

---

[5]     ABC 7 Chicago, *Biden announces Covid vaccine mandates*, Facebook (Sept. 9, 2021), https://www.facebook.com/abc7chicago/posts/10160161491466162; Colin Kalmbacher, *'We Fail Ourselves': Justice Gorsuch Dissent Skewers SCOTUS for Rejecting N.Y. Healthcare Workers Who Say Cell Lines for COVID-19 Vaccines Are 'Abortion-Derived'*, Law & Crime (Dec. 13, 2021, 6:41 PM), https://lawandcrime.com/supreme-court/we-fail-ourselves-justice-gorsuch-dissent-skewers-scotus-for-rejecting-n-y-healthcare-workers-who-say-cell-lines-for-covid-19-vaccines-are-abortion-derived/.

- "Phuq you. The anti vax have a voice. They are just rightly ignored for being dangerous idiots. You decline to be vaccinated you are telling the public you want them to unnecessarily suffer and die from a disease."

Other examples of hostility towards religious objectors such as Plaintiffs abound. A recent guest on an MSNBC program referred to those seeking religious exemptions as "bioterrorists" and called for "drone strikes" against those who object to mandatory vaccines.[6] A commentator on ABC News's *This Week* stated that the government should "just make it almost impossible for people to—to live their lives without being protected and protecting the rest of us."[7] Another national commentator stated that those with religious objections to the vaccine are "shrieking anti-vaccine maniacs who are doing their level best to put more children in intensive care" and "should be exiled from society until they get their shots."[8]

Moreover, the public comments **hosted by Media Intervenor's own online publications, on stories discussing Media Intervenor's own attempts to expose Plaintiffs' identities,[9] contain explicit hostility towards Plaintiffs**:

- "The community has every right to **ostracize them**."
- "For someone to care more about their rights than those who are sick and seeking help . . . the answer is simple: **ostracize them** from their medical community. And make

---

[6]    Hannah Bleau, *MSNBC Guest Calls for Drone Strikes on Americans Opposed to Vaccine Mandates*, Breitbart (Sept. 10, 2021), https://www.breitbart.com/politics/2021/09/10/msnbc-guest-calls-drone-strikes-americans-opposed-vaccine-mandates/.

[7]    *'This Week' Transcript 7-25-21: Speaker Nancy Pelosi & Sen. Rob Portman*, ABC News (July 25, 2021), https://abcnews.go.com/Politics/week-transcript-25-21-speaker-nancy-pelosi-sen/story?id=79045738.

[8]    Ryan Cooper, *The case against anti-vaxxer coddling*, The Week (Aug. 12, 2021) https://theweek.com/politics/1003600/anti-vaxxers-coddling.

[9]    Megan Gray, *Maine newspapers can challenge anonymity of plaintiffs in vaccine mandate lawsuit, judge says*, Portland Press Herald (Dec. 30, 2022), https://www.pressherald.com/2021/12/30/maine-newspapers-can-challenge-anonymity-of-plaintiffs-in-vaccine-mandate-lawsuit-judge-says/ (emphasis added).

them and their legal representatives accountable for all the legal fees for being just plain morons."

- "We may as well **know their names** because if they apply for jobs, **I doubt many will be interested in hiring them**."

Given that one of the main justifications for permitting a plaintiff to proceed in pseudonym is to protect against scorn, social stigma, and fear of reprisals from the community, *see Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 73–74 (D.R.I. 1992), explicit hostility from Plaintiffs' own community, directed specifically at Plaintiffs, in an article devoted to Media Intervenors' challenge to Plaintiffs' proceeding in pseudonym—hosted by **Media Intervenors' own publication—**certainly demonstrates that Plaintiffs have a reasonable fear of ostracism and harm from their community if their identities are made known to the public. Indeed, the comments directed at Plaintiffs specifically state that ostracism and stigma is what "should" happen to Plaintiffs. Given the record of opprobrium directed towards Plaintiffs *in this case*—not only the general hostility towards the unvaccinated incited by the President, governors, and national media, but also hostility specifically targeting Plaintiffs, even facilitated by Media Intervenors' own publications—Intervenors' arguments *from other cases* involving different records or other types of COVID restrictions are unavailing, and do not refute the record in this case.

The intensity of the invective and opprobrium directed against unvaccinated Americans such as Plaintiffs, even suggesting rounding them up for permanent isolation or public punishment—or death—demonstrates the legitimacy of Plaintiffs' fears of harm from disclosure of their identities. As in *Doe v. Stegall*, there is ample evidence that "the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to [the] community hostile to the viewpoint reflected in plaintiffs' complaint." 653 F.2d at 186. Indeed, the threats being leveled against all manner of individuals declining COVID-19 vaccination in

16

obedience to conscience suggests there is "a real danger of physical harm" to Plaintiffs. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

### III.   MEDIA INTERVENORS' GENERAL INTEREST IN OPEN PROCEEDINGS IS ATYPICALLY WEAK BECAUSE PLAINTIFFS' CHALLENGES ARE PRIMARILY LEGAL.

"Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Stegall*, 653 F.3d at 185. Moreover, "[w]hen a case raises questions that are purely legal there is an atypically weak public interest in the identity of the litigants." *Doe v. Princeton Univ.*, No. 19-7853 (BRM), 2019 WL 5587327, at *5 (D.N.J. Oct. 30, 2019); *see also L.A. v. Hoffman*, No. 14-6895(FLW)(DEA), 2015 WL 4461852, at *2 (D.N.J. July 21, 2015) (holding plaintiffs could proceed pseudonymously because "Plaintiffs bring a constitutional challenge to a statute as it applies to a general class of people and therefore the individual facts and circumstances surrounding each Plaintiff are not of central importance to Plaintiffs' claims"); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 513 (M.D. Pa. 2007) ("The subject matter of this litigation is primarily constitutional law, and the identities of the particular plaintiffs are not as important to the outcome of the litigation as the legal arguments they raise.").

Indeed, the public's interest is more aligned with not disclosing Plaintiffs' identities. "[T]here is a substantial public interest in ensuring that litigants not face such retribution in their attempt to seek redress for what they view as a Constitutional violation." *Freedom From Religion Found., Inc. v. Connellsville Area Sch. Dist.*, No. 2:12-cv-1406, 2013 WL 2296075, at *2 (W.D. Pa. May 24, 2013); *id.* at *3 ("[T]he issue in this case does not turn on the identity of the Plaintiff, and the Court presently does not see how denying Plaintiffs' request will interfere with the public's right to follow the proceedings, which will be kept open to the public while maintaining the

confidentiality of the Does' identities."); *see also Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, at *1 (D. Me. Jan. 25, 2021) (noting public interest aligns with not deterring other similarly situated litigants from pursuing merited claims). Where, as here, the issues presented are "purely legal and do not depend on identifying the specific plaintiffs," *Doe v. Alaska*, 122 F.3d 1070, 1997 WL 547941, at *1 (9th Cir. Sept. 2, 1997), "[n]one of the values protected by public access will be hindered by the use of pseudonyms. The public, as well as the plaintiffs, will benefit when the case proceeds to a resolution on the merits." *Id.*

As in *Navy Seal 1 v. Austin*, "[t]he public's interest in this action is satisfied by the facts patent in the record—the [officials and facilities] involved; the [position, duties, history,] and the like of the litigants; the nature of the claims and defenses; and the orders of the court." 2022 WL 520829, at *1. Plaintiffs seek to have only one detail kept from public view—their names. And "[t]he names add nothing substantial, but enable those who—through social media, as well as more immediate mechanisms—intimidate, harass, and defame." *Id.*

## IV.   THE RECORD DEMONSTRATES THE PROCEEDINGS IN THIS CASE HAVE BEEN AND WILL REMAIN OPEN TO THE PUBLIC AND MEDIA INTERVENORS.

In determining whether a plaintiff should be permitted to proceed in pseudonym, courts have counted the fact that the proceedings themselves will remain open in support of the finding that leave to proceed anonymously will not harm the public. As one district court explained, "although the issues in the Amended Complaint may be of some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Indeed, this Court intends to keep the proceeding open to the public while still maintaining the confidentiality of plaintiff's identity." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997). Here, Plaintiffs do not seek sealing or any other mechanism to prevent public access to the proceedings. Every filing to date has been publicly available, and Plaintiffs encourage

the same going forward. Media have been present to observe every hearing. Media Intervenors were even permitted to participate and give arguments in the open proceedings before their intervention was granted. Plaintiffs' use of pseudonyms simply does not restrict the public's right to observe the arguments and contentions advanced in this litigation, and Plaintiffs welcome such public access. Plaintiffs merely seek to have their names protected from disclosure while the Court determines the predominantly legal questions at issue. Precedent and the record in this case dictate that Plaintiffs be afforded this right.

## V.   PLAINTIFFS HAVE KEPT THEIR IDENTITES CONFIDENTIAL.

All Plaintiffs have taken steps to keep their identities confidential and out of the public eye. (V. Compl, ¶¶ 10–26.) And the fact that Plaintiffs necessarily had to make their identities known to their respective employers in order to seek a religious accommodation and exemption does not undermine this analysis in any way. Indeed, "the question is not whether anyone knows the Plaintiff[s'] identit[ies], but rather whether [their] identit[ies] [are] widely known beyond [their] social circle[s] or among the general public." *Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *3; *see also Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, at *5 n.2 (D.N.H. May 2, 2018) (noting appropriate consideration is whether identity has been "widely disseminated in the [relevant] community or amongst the general public"). In fact, because the processes for requesting religious exemption from Defendant employers were confidential, and "[n]othing in the record suggests that [any] plaintiff's identity is publicly known," *id.* at *5, "[t]his factor supports plaintiff's position." *Id.*

## CONCLUSION

Because this case involves the quintessentially private religious beliefs of Plaintiffs, inextricably intertwined with their private medical decisions, and because of the social stigma and ostracization, and threats of retaliation and harm—directed specifically at Plaintiffs—the use of

pseudonyms to protect Plaintiffs identities while allowing the proceedings to remain otherwise open to the public strikes the appropriate balance of interests. The Court should deny Media Intervenor's Motion.

Respectfully submitted,

/s/ Stephen C. Whiting
Stephen C. Whiting
ME Bar No. 559
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME 04101
(207) 780-0681
steve@whitinglawfirm.com

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
(407) 875-1776
court@LC.org | hmihet@LC.org
rgannam@LC.org | dschmid@LC.org

*Attorneys for Plaintiffs*