## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **JANE DOES 1-6, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | 1:21-cv-00242-JDL |
| | ) | |
| **JANET T. MILLS, in her official** | ) | |
| **capacity as Governor of the** | ) | |
| **State of Maine, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER ON MOTION TO UNSEAL PLAINTIFFS' IDENTITIES

The Plaintiffs are eight Maine healthcare workers and one individual healthcare provider who challenge an August 2021 change to Maine law that requires employees of designated Maine healthcare facilities to be vaccinated against the COVID-19 coronavirus.  The complaint (ECF No. 1) also names Plaintiffs Jack Does 1 through 1000 and Joan Does 1 through 1000 as putative plaintiffs who have not yet been joined in the action.  Two media companies—MTM Acquisition, Inc., d/b/a *Portland Press Herald/Maine Sunday Telegram, Kennebec Journal*, and *Morning Sentinel*, and SJ Acquisition, Inc., d/b/a *Sun Journal* (collectively, the "Media Intervenors")—were granted leave to intervene for the limited purpose of challenging the Plaintiffs' use of pseudonyms in this matter (ECF No. 95).  The Media Intervenors now seek an order unsealing the Plaintiffs' identities (ECF No. 105), arguing that the Plaintiffs should not continue to be permitted to proceed pseudonymously because the Plaintiffs' alleged fear of harm no longer outweighs the public's interest in open legal proceedings. The Plaintiffs oppose the motion (ECF No. 110).  The Defendants—

1

three Maine officials and five private healthcare corporations—take no position (ECF Nos. 86, 88).  For the following reasons, I grant the Media Intervenors' motion.

## I.  BACKGROUND

The factual background of this action is set forth in greater detail in my prior order denying the Plaintiffs' motion for preliminary injunction.  *See Does 1-6 v. Mills*, No. 1:21-cv-00242, 2021 WL 4783626, at *2-4 (D. Me. Oct. 13, 2021).

At the outset of this litigation, the Plaintiffs moved to proceed pseudonymously (ECF No. 21), contending that their reasonable fear of harm if their identities were revealed outweighed the public's interest in open litigation.  I granted the Plaintiffs' motion in part after taking judicial notice of the substantial public controversy that surrounded COVID-19 vaccination mandates at the time, but I reserved the authority to revisit the issue if the case proceeded beyond the preliminary-injunction stage.[1] *Does 1-6 v. Mills*, No. 1:21-cv-00242, 2021 WL 4005985, at *2-3 (D. Me. Sept. 2, 2021). I subsequently denied the Plaintiffs' request for preliminary injunction on October 13, 2021, *Does 1-6 v. Mills*, 2021 WL 4783626, at *18, which was affirmed by the U.S. Court of Appeals for the First Circuit, *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021), *application for injunctive relief denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 17 (2021). The Plaintiffs then sought a writ of certiorari from the United States Supreme Court, which was denied.  *Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022).  Thus, the preliminary-injunction phase of the litigation has concluded and the question of whether, moving

---

[1] The motion was granted in part to permit the Plaintiffs to proceed pseudonymously as to the public but denied as to Plaintiffs' request to conceal their identities from the State Defendants' counsel of record, the individual State Defendants, and State employees with knowledge of the facts alleged in the complaint and who were determined by State Defendants' counsel to be reasonably necessary to respond to the Plaintiffs' motion for preliminary injunction.  *Does 1-6 v. Mills*, No. 1:21-cv-00242, 2021 WL 4005985, at *3 (D. Me. Sept. 2, 2021).

forward, the Plaintiffs should be permitted to proceed pseudonymously is properly revisited.

## II.  ANALYSIS

I begin by examining the general principles governing the circumstances under which parties may be permitted to proceed pseudonymously.  I will then turn to address the parties' arguments for and against pseudonymity.

### A.  General Principles

The Federal Rules of Civil Procedure require that all parties be named in the caption of a complaint and do not provide a mechanism for pseudonymous litigation. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."); *Doe v. Trs. of Dartmouth Coll.*, Civil No. 18-cv-040, 2018 WL 2048385, at *2 (D.N.H. May 2, 2018).  "This rule serves more than administrative convenience." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)).  "It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties."  *Id.* (quoting *Frank*, 951 F.2d at 322).  Additionally, "[t]here is a strong common law presumption favoring public access to judicial proceedings and records," and in general, a case must proceed in the actual names of the parties.  *Doe v. Reg'l Sch. Unit No. 21*, No. 2:19-00341, 2020 WL 2833248, at *1 (D. Me. May 29, 2020) (quoting *Flanders v. Maine*, No. 2:12-cv-00277, 2019 WL 2929500, at *2 (D. Me. July 8, 2019)).  In the context of public access to judicial records and documents, the First Circuit has repeatedly explained that such access "allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'"  *Nat'l Org. for*

*Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).  In addition to the common law presumption of public access, courts have generally acknowledged the existence of a qualified First Amendment right of access to certain proceedings and documents in criminal cases, and likely in civil cases as well.  *See Courthouse News Serv. v. Quinlan,* 32 F.4th 15, 20 & nn.7-8 (1st Cir. 2022) (explaining that although neither the Supreme Court nor the First Circuit has recognized a First Amendment right to access documents filed in civil cases, other circuits that have considered the question have concluded that a qualified right exists).

However, Federal courts permit plaintiffs in civil suits to proceed pseudonymously in "exceptional cases." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).  An exceptional case may exist where the party seeking pseudonymity "'has a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings.'" *Doe v. Massachusetts*, Civil Action No. 21-12034, 2022 WL 847151, at *1 (D. Mass. Mar. 22, 2022) (quoting *Doe v. W. New Eng. Univ.*, CIVIL ACTION NO. 3:19-30124, 2019 WL 10890195, at *1 (D. Mass. Dec. 16, 2019)).

Courts in the First Circuit addressing motions to proceed pseudonymously have also applied the Third Circuit's multi-factor test set forth in *Megless*, which identifies nine factors to be considered. *See Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *2; *Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *4-5.[2]  The *Megless* decision

---

[2] Neither the Supreme Court nor the First Circuit has delineated a test to determine whether pseudonymity of parties should be permitted; however, other circuits have set out multi-factor tests for district courts to apply in determining whether the plaintiffs have set out an "exceptional case"

4

identified six factors that weigh in favor of allowing a litigant to proceed pseudonymously:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

654 F.3d at 409 (quoting *Doe v. Provident Life & Accident Ins.*, 176 F.R.D. 464, 467-68 (E.D. Pa. 1997)).  In contrast, three other factors weigh against pseudonymity:

> [(7)] the universal level of public interest in access to the identities of litigants; [(8)] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 468).  As the *Megless* court explained, the ultimate purpose of this and similar factor-based balancing tests is to enable the court to decide "whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation."  654 F.3d at 409.

---

requiring pseudonymity.  *See Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981) (identifying four factors, including whether the plaintiff would be required to disclose information "of the utmost intimacy," to be considered when a plaintiff seeks to proceed pseudonymously); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69 (9th Cir. 2000) (adopting a five-factor test incorporating several of the *Stegall* factors, as well as the severity of the threatened harm and reasonableness of the moving party's fear of that harm); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188-90 (2d Cir. 2008) (reviewing balancing tests developed in other circuits and adding several factors to the Ninth Circuit's test).  At the oral argument held on May 4, 2022, the parties agreed that *Megless* provides a workable framework for this Court's analysis; thus, I apply the *Megless* factors in this case.

Both parties also cite to the growing body of recent decisions from other trial courts addressing requests for, and challenges to, pseudonymity in COVID-19-related cases, which have reached varying results.[3]  I have considered these decisions and find them instructive; however, none are determinative given the unique issues and facts presented by the case at hand.

## B.   The Privacy Interests Presented in this Case

The Plaintiffs assert that they have substantial privacy interests in their religious beliefs opposing the COVID-19 vaccine and their resulting medical decisions to refuse the vaccine.  These interests, they assert, are inextricably intertwined with one another and support shielding their identities from public disclosure.  I consider this argument primarily under the second *Megless* factor, which requires an assessment of the reasons the Plaintiffs fear the public disclosure of their identities and the substantiality of those reasons.

As alleged in the complaint, the Plaintiffs' reason for refusing the COVID-19 vaccination is rooted in their religious-based objection to abortion and their assertion

---

[3] *Compare Navy Seal 1 v. Austin*, CASE NO. 8:21-cv-2429, 2022 WL 520829, at *1-2 (M.D. Fla. Feb. 18, 2022) (granting the plaintiffs' request to proceed using pseudonyms in a challenge to a government COVID-19 vaccine mandate), *Does 1 through 11 v. Bd. of Regents of the Univ. of Colo.*, Civil Action No. 21-cv-02637, 2022 WL 43897, at *5 (D. Colo. Jan. 5, 2022) (granting the plaintiffs' request to proceed pseudonymously prior to ruling on the motion for preliminary injunction and "until further order of the court"), *and Does 1-2 v. Hochul*, 21-CV-5067, 2022 WL 836990, at *10 (E.D.N.Y. Mar. 18, 2022) (allowing the plaintiffs to proceed pseudonymously in their challenge to New York's COVID-19 vaccine mandate for healthcare workers, but noting that, "although the balance of factors tips in favor of Plaintiffs at this phase of the case, this balance could change as the case progresses"), *with Oklahoma v. Biden*, Case No. CIV-21-1136-F, 2022 WL 356736, at *2-4 (W.D. Okla. Feb. 2, 2022) (denying the plaintiffs' request to proceed pseudonymously in a challenge to a government COVID-19 vaccine mandate because the vaccination decision is not "highly sensitive" even when that choice is faith based, and concluding that criticism and ostracism are not equivalent to a real danger of physical harm), *and Doe v. City Univ. of N.Y.*, No. 21 Civ. 9544, 2021 WL 5644642, at *6 (S.D.N.Y. Dec. 1, 2021) (denying the plaintiff's request to proceed pseudonymously in challenging his college's COVID-19 vaccination policy because he did not "me[e]t his burden of demonstrating that his 'interest in anonymity' outweighs the prejudice to defendants and 'the customary and constitutionally-embedded presumption of openness in judicial proceedings'" (quoting *Sealed Plaintiff*, 537 F.3d at 189)).

that fetal stem cells were used in the development of COVID-19 vaccines.  I take judicial notice of the fact that the Plaintiffs' religious-based opposition to abortion is a belief held by many Americans and is associated with a longstanding public debate concerning the use of fetal cells for medical and scientific purposes.  *See generally* Inst. of Med. (US) Conf. Comm. on Fetal Rsch. and Applications, *Setting the Stage: Fetal Research, Fetal Tissue Research, and Historical Timeline of Regulation and Legislation* (2004),  https://www.ncbi.nlm.nih.gov/books/NBK231997.   Accordingly, and contrary to the Plaintiffs' position,  I treat the religious beliefs underlying the Plaintiffs'  opposition  to  mandatory  COVID-19  vaccinations  as  not  so  highly controversial or unique as to subject the Plaintiffs to a reasonable fear of severe harm if their identities are revealed.

The same is true with respect to the Plaintiffs' unvaccinated status.  A person's decision to receive or refuse a vaccine is not on par with the intimate medical or psychiatric  matters  that  have  traditionally  been  protected  by  pseudonymous proceedings.  As one court recently characterized it "vaccination status simply is not at that level."  *Air Force Officer v. Austin*, CIVIL ACTION NO. 5:22-cv-00009, 2022 WL 468030, at *2 (M.D. Ga. Feb. 15, 2022) (quoting *Coker v. Austin*, No. 3:21-cv-01211, slip op. at 4 (N.D. Fla. Dec. 1, 2021), ECF No. 49).  Vaccinations and the need to provide proof of vaccination status have become commonplace in modern times. *See Vernonia Sch. Dist. 47 J v. Acton*, 515 U.S. 646, 656 (1995) ("[p]ublic school children are routinely required to . . . be vaccinated against various diseases."); *see also* Drew DeSilver, *States Have Mandated Vaccinations Since Long Before COVID-19*, Pew  Research  Center  (Oct.  8,  2021),  https://www.pewresearch.org/fact-

tank/2021/10/08/states-have-mandated-vaccinations-since-long-before-covid-19/.

Thus, a person's unvaccinated status—whether in relation to COVID-19 or some other infectious disease for which a vaccine is publicly mandated—is not in and of itself an inherently private, highly sensitive medical condition that calls for pseudonymity. *See, e.g.*, *Doe v. City Univ. of N.Y.*, No. 21 Civ. 9544, 2021 WL 5644642, at *2 (S.D.N.Y. Dec. 1, 2021) (concluding that "there is no independent medical issue separate and apart from plaintiff's refusal to receive a COVID-19 vaccine on religious grounds" and that "[u]nder these circumstances, relying on a medical issue as a basis for anonymity does not withstand analysis"); *Bd. of Regents of Univ. of Colo.*, 2022 WL 43897, at *3 (finding that, "standing alone, a medical condition that is described as unvaccinated against COVID-19 is not so highly sensitive and personal in nature as to overcome the presumption of openness in judicial proceedings").[4]

The Plaintiffs' religious beliefs and their resulting medical decisions not to be vaccinated against COVID-19, whether considered separately or together, do not present privacy interests so substantial as to support pseudonymous proceedings.

## C.   Risk of Severe Harm to Plaintiffs if Their Identities are Unsealed

The Plaintiffs also contend that the heightened public passions concerning mandatory COVID-19 vaccinations place them at a heightened risk of severe social stigma and worse if their identities are publicly revealed.  I consider this argument under the both the second and third *Megless* factors.  The third factor examines the

---

[4] To the extent that there are sensitive medical records or information that may be relevant to this litigation, those privacy interests can be addressed through a protective order.

magnitude of the public's interest in maintaining the confidentiality of the litigants'
identities, as there is undeniably a strong public interest in protecting litigants'
identities if they would face harm if their identities were publicized.

The primary evidentiary support the Plaintiffs' have offered in support of
maintaining their anonymity is the declaration of their attorney, Daniel J. Schmid,
which was originally submitted (ECF No. 21-1) with the Plaintiffs' Motion to Proceed
Using a Pseudonym (ECF No. 21) in August 2021.[5]  Paragraph seven of the Schmid
Declaration provides the most specific factual support for the Plaintiffs' argument
concerning their fear of social stigmatization.  It includes the following quotes from
anonymous on-line comments made in response to a Bangor Daily News article
published on August 25, 2021, regarding this lawsuit:

> Anyway, Church Lady, what's this Constitution thingy people are
> referring to all the time.
>
> Anyway Church Lady, what's this lawsuit about again?
>
> Well one would have to wonder if the above is really true since both these
> deplorable 'Christian' sociopathic groups see no harm in placing
> innocents at risk of serious long term health problems or death.
>
> These people turn my stomach!  Somebody's fake religion has nothing to
> do with our health.  Such a lawsuit shouldn't even be considered by the
> court.  In fact, maybe as citizen, Americans ought to be suing the fools
> who put this lawsuit together.
>
> The Liberty Counsel is the Christian American Taliban.
>
> This dangerous and deadly public health matter presents an
> opportunity to further control those who look to [religion] for spiritual
> nourishment.

---

[5] I do not consider additional factual allegations made by Attorney Roger K. Gannam in the Plaintiffs'
memorandum of law (ECF No. 110) dated February 28, 2022.  The memorandum of law is not verified
and largely fails to identify the speaker, date, or source of each of the statements quoted or
paraphrased.

> When your choice endangers everyone around you, you are a public
> threat, and should be incarcerated, just as you would be if you were
> firing a gun at random in a crowd.

ECF No. 21-1 ¶ 7 (alteration in original) (emphases omitted).

Some of these comments express hostility toward the Plaintiffs' opposition to being vaccinated against COVID-19, but they do not contain any direct or indirect threats of harm against the Plaintiffs or others. Hostile and arguably intemperate comments of this sort are often part of the public discourse litigants encounter when they turn to a public forum, such as a court, seeking redress of their federal constitutional and statutory rights. The comments cited in Attorney Schmid's declaration do not demonstrate that the social ostracization Plaintiffs could face if their identities are made known to the public is so substantial as to constitute a reasonable fear of severe harm.

Further, the information contained in the Schmid Declaration does not allow for a meaningful evaluation of specific adverse consequences or threats that can reasonably be expected from the public disclosure of the Plaintiffs' identities. The individual Plaintiffs themselves have not submitted declarations which allow for an assessment of the harm or harms they fear if their identities are revealed. In addition, although the Schmid Declaration asserts that, as of August 2021, an unspecified number of the Plaintiffs would remove themselves from this action if their identities were disclosed to their employers and to the public, the record reflects that none of the Plaintiffs withdrew from this case following the court-authorized disclosure of their identities to their employers in December 2021 (ECF No. 94).

The Plaintiffs have not demonstrated that the public controversy associated with mandatory COVID-19 vaccinations will result in the Plaintiffs being socially stigmatized to a substantial degree if the Plaintiffs' identities are publicly revealed.

## D.  Consideration of the Additional Relevant *Megless* Factors

I now turn to several additional *Megless* factors relevant to the circumstances of this case.[6]

The Plaintiffs have not provided any evidence regarding the extent to which they have kept their identities and connection to this case shielded from family, friends, and their respective communities, as is required for an evaluation of the first *Megless* factor.

As to the fourth factor—whether there is an atypically weak public interest in knowing the litigants' identities because of the purely legal nature of the issues presented—the Plaintiffs contend that because the issues presented by their complaint are purely legal and not factual in nature, the public's interest in their identities is nominal.  This argument ignores that the complaint includes as-applied challenges to Maine's COVID-19 vaccine mandate.  For example, the complaint asserts that "[t]he Governor's COVID-19 Vaccine Mandate, on its face *and as applied*, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs."  ECF No. 1 ¶ 128 (emphasis added).  By challenging the actions of the private hospital employers, the Plaintiffs have, as

---

[6]  Several of the *Megless* factors are inapplicable here.  Neither party has argued that the sixth or ninth factors, which assess whether the party bringing suit has illegitimate ulterior motives for seeking pseudonymity or whether the party opposing pseudonymity does so for illegitimate motives, are at issue here and so I do not consider these factors.  The Plaintiffs also do not argue that they seek pseudonymity because they wish to protect their identities if the outcome of the case is adverse to their position, and so I do not consider the fifth factor.

another court has recently recognized in a case involving similar claims, "put factual questions about [their own] actions at issue in this lawsuit." *City Univ. of N.Y.*, 2021 WL 5644642, at * 5. The complaint asserts employment discrimination claims against the Plaintiffs' private hospital employers under Title VII. The Title VII claims made against the private healthcare provider Defendants will necessarily require consideration of facts associated with each Plaintiff's employment circumstances, specific accommodation request, and credibility.

The seventh and eighth *Megless* factors together assess the level and strength of the public's interest in knowing the Plaintiffs' identities. The level of public interest in the subject matter of this case is high because the Plaintiffs seek to invalidate a mandatory vaccination requirement for healthcare workers adopted in response to a nationwide pandemic. The statewide effectiveness of the public health response to the pandemic is an important matter and, consequently, is of great public interest. In addition, the Plaintiffs' employment discrimination, as-applied claims against the private healthcare provider Defendants—operators of several of Maine's largest healthcare systems—suggests that there is a strong public interest in the identities, occupations and accommodation requests of potentially hundreds or even thousands of Maine healthcare workers who would be exempt from the mandatory vaccination requirement if the Plaintiffs prevail in this action.

## III. CONCLUSION

For the foregoing reasons, the Plaintiffs have not shown that their fear of severe harm if their identities are revealed is objectively reasonable. To be clear, there is no reason to doubt the sincerity of the Plaintiffs' generally expressed

subjective fears or to infer that their effort to shield their identities results from ulterior motives.  In the final analysis, however, there is a near total absence of proof that their expressed fears are objectively reasonable.  On this record, the Plaintiffs' privacy interests have not been shown to outweigh the public interest associated with the presumption of openness that applies to civil proceedings.

Having carefully weighed the relevant factors, I conclude that the Plaintiffs have not met their high burden of showing a need to overcome the strong presumption favoring public access to civil proceedings, as required for them to continue to proceed pseudonymously.  The Media Intervenor's Motion to Unseal Plaintiffs' Identities (ECF No. 105) is **GRANTED**.  It is **ORDERED** that the Plaintiffs shall file a first amended complaint, by June 7, 2022 identifying by name those individual Plaintiffs who elect to proceed as named and identified Plaintiffs in this action.

**SO ORDERED.**

**Dated this 31st day of May, 2022.**


_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**