## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ALICIA LOWE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **1:21-cv-00242-JDL** |
| | ) | |
| **JANET T. MILLS, in her official** | ) | |
| **capacity as Governor of the** | ) | |
| **State of Maine, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON MOTIONS TO DISMISS

The Plaintiffs are seven Maine healthcare workers who challenge the lawfulness of the Maine administrative rule that requires employees of designated Maine healthcare facilities to be vaccinated against the SARS-CoV-2 coronavirus—the cause of COVID-19 infections. *See* Immunization Requirements for Healthcare Workers, 10-144-264 Me. Code R. §§ 1-7 (amended Nov. 10, 2021) (LexisNexis 2022) (the "Rule").[1]  The Plaintiffs contend that the Rule's COVID-19 vaccine mandate violates their First Amendment right to the free exercise of religion and other federal constitutional and statutory rights because it does not exempt individuals whose sincerely held religious beliefs cause them to object to being vaccinated against COVID-19.  The Plaintiffs also contend that their employers violated federal employment law by refusing to grant them a religious exemption from the vaccination requirement.

---

[1]  The Rule can also be found at https://perma.cc/6D8Y-XCLP.

The Plaintiffs' amended complaint (ECF No. 152) names as defendants, in their official capacities, Governor Janet T. Mills; Dr. Nirav D. Shah, the Director of Maine Center for Disease Control & Prevention ("Maine CDC"); and Jeanne M. Lambrew, the Commissioner of the Maine Department of Health and Human Services ("DHHS") (collectively, the "State Defendants"). The amended complaint also names as defendants five incorporated entities that operate healthcare facilities in Maine: Genesis Healthcare of Maine, LLC; Genesis Healthcare, LLC; Northern Light Eastern Maine Medical Center;[2] MaineHealth; and MaineGeneral Health (collectively, the "Hospital Defendants"). The Plaintiffs' amended complaint presents five claims arising under: Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to e-17 (West 2022); the Free Exercise Clause of the First Amendment; the Equal Protection Clause of the Fourteenth Amendment; the Supremacy Clause; and 42 U.S.C.A. § 1985 (West 2022) (Conspiracy to Interfere with Civil Rights).

The State and Hospital Defendants move to dismiss (ECF Nos. 107, 108, 109) each of the preceding claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The State Defendants also move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss all claims against Governor Mills for lack of jurisdiction, and all monetary damages claims against the State Defendants on the basis of sovereign immunity.

---

[2] The complaint originally named Northern Light Health Foundation as a defendant; Northern Light Eastern Maine Medical Center was substituted as a party for Northern Light Health Foundation (ECF No. 101) on January 20, 2022.

A hearing on the Motions to Dismiss was held on June 24, 2022.[3] After careful consideration and for the reasons that follow, I grant the Defendants' motions.

## I.  BACKGROUND

The factual background is drawn from the Plaintiffs' amended complaint, documents incorporated by reference, and from official public records that are subject to judicial notice under Federal Rule of Evidence 201, including the Rule challenged by the Plaintiffs and the related statute and its legislative history. *See Newton Covenant Church v. Great Am. Ins.*, 956 F.3d 32, 35 (1st Cir. 2020); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). A court has discretion "to[] take judicial notice of the legislative history of federal and state law and of municipal ordinances." *Mitchell v. United States*, No. 1:15-cr-00040, No. 1:19-cv-00184, 2020 WL 5942316, at *7 (D. Me. Oct. 7, 2020) (quoting 1 Jack B. Weinstein, et al., *Weinstein's Federal Evidence* § 201.52[3][a] (2d ed. 2020)). I also take judicial notice of information from the official U.S. Centers for Disease Control and Prevention ("CDC") and the Maine CDC government websites "that is 'not subject to reasonable dispute.'" *Fortuna v. Town of Winslow*, No. 1:21-cv-00248, 2022 WL 2117717, at * 3 (D. Me. June 13, 2022) (quoting *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 85 n.5 (1st Cir. 2010)).

### A.    COVID-19

COVID-19 is a contagious respiratory illness that spreads between people who are in close contact with one another, through respiratory droplets or small particles. As of mid-August 2022, there have been 201,840 confirmed cases of COVID-19 in

---

[3] On October 13, 2021, I denied the Plaintiffs' motion for preliminary injunction. *Does 1-6 v. Mills*, 566 F. Supp. 3d 34 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom.*, *Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022).

Maine, along with 78,091 probable cases, 5,469 hospitalizations, and 2,497 deaths. Maine CDC, *COVID-19: Maine Data*, https://www.maine.gov/dhhs/mecdc/infectious-disease/epi/airborne/coronavirus/data.shtml (last visited August 18, 2022). In 2021, COVID-19 was the third-leading cause of death in the state. Maine CDC, et al. (July 12, 2022), *State of Maine: Maine Shared Community Health Needs Assessment Report* 2, https://www.maine.gov/dhhs/mecdc/phdata/MaineCHNA/documents/ State%20 Report%207.12.2022revision.pdf.

Effective August 12, 2021, DHHS and the Maine CDC adopted on an emergency basis the requirement that all employees of designated Maine healthcare facilities be fully vaccinated against COVID-19. *See* 10-144-264 Me. Code R. § 5(A)(7) (amended Aug. 12, 2021). On November 10, 2021, the Rule was amended on a non-emergency basis to permanently adopt the COVID-19 vaccination requirement.[4] *See* 10-144-264 Me. Code R. §§ 1(F)(7), (2)(A)(7) (amended Nov. 10, 2021). Under the Rule, an employee may not be permitted by an employer to attend work at a designated healthcare facility if he or she does not comply with the vaccine requirement, unless the employee is exempt in accordance with the requirements of 22 M.R.S.A. § 802(4-B) (West 2022), which permits medical, but not religious or philosophical, exemptions from required vaccinations. 10-144-264 Me. Code R. § 3.

---

[4] Under the Rule, "designated healthcare facility" "means a licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID), multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine, Department of Health and Human Services Division of Licensing and Certification." 10-144-264 Me. Code R. § 1(E) (amended Nov. 10, 2021). Although the emergency rule also applied to dental health practices and emergency medical services organizations, 10-144-264 Me. Code R. § 2(B) (amended Aug. 12, 2021), these practices are not included in the current version of the Rule, 10-144-264 Me. Code R. §§ 1(E), 2(A) (amended Nov. 10, 2021). All references to "designated healthcare facilities" in this Order include all entities subject to the Rule's requirements.

A designated healthcare facility that violates the Rule is subject to sanctions, including the imposition of fines and license suspension.  10-144-264 Me. Code R. § 7(G) (amended Nov. 10, 2021) ("If a Designated Healthcare Facility fails . . . to comply with the requirements of this rule, the Department may take enforcement action pursuant to 22 MRS §804 [providing for the imposition of a fine and/or license suspension as a sanction for any person who violates a DHHS rule] or as otherwise provided by law."); 22 M.R.S.A. § 804 (West 2022).

## B.    The Plaintiffs' Objection to the COVID-19 Vaccines

The Plaintiffs are seven individuals who were formerly employed by the Hospital Defendants.[5]

Plaintiff Alicia Lowe was formerly employed by Defendant MaineHealth at one of its healthcare facilities in Maine.  She submitted a written request for a religious exemption from the vaccine, which was denied.  Because of her refusal to obtain a COVID-19 vaccination, Lowe was terminated from her employment.  She subsequently sought and obtained a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").

Plaintiffs Debra Chalmers and Garth Berenyi were formerly employed by healthcare facilities operated by Defendant Genesis Healthcare in Maine.  Both

---

[5] The Plaintiffs were originally granted leave to proceed pseudonymously in this litigation.  *Does 1-6 v. Mills*, No. 1:21-cv-00242, 2021 WL 4005985, at *2-3 (D. Me. Sept. 2, 2021).  Following a Motion to Unseal Plaintiffs' Identities (ECF No. 105) filed by intervening media companies, the Plaintiffs were ordered to file an amended complaint identifying themselves by name.  *Does 1-6 v. Mills*, 1:21-cv-00242, 2022 WL 1747848, at * 7 (D. Me. May 31, 2022).  The Plaintiffs sought a stay of this order from the U.S. Court of Appeals for the First Circuit, which was denied on July 7, 2022.  *Does 1-3 v. Mills*, No. 22-1435, 2022 WL 2526989, at * 5 (1st Cir. July 7, 2022).  The Plaintiffs' amended complaint, identifying the seven remaining plaintiffs by name, was filed on July 11, 2022.

submitted written requests for religious exemptions from the vaccine mandate, and Genesis Healthcare denied the requests.  Chalmers and Berenyi were terminated from their employment following their refusals to obtain COVID-19 vaccinations. Both subsequently sought and obtained Notices of Right to Sue from the EEOC.

Plaintiffs Jennifer Barbalias, Natalie Salavarria, and Adam Jones were formerly employed by healthcare facilities operated by Defendant Northern Light Eastern Maine Medical Center in Maine.  Each submitted written requests for religious exemptions from the vaccine mandate, and each request was denied. Barbalias, Salavarria, and Jones were terminated from their employment following their refusals to obtain COVID-19 vaccinations.  Each subsequently sought and obtained Notices of Right to Sue from the EEOC.

Plaintiff Nicole Giroux was formerly employed by a healthcare facility operated by Defendant MaineGeneral Health in Maine.  She submitted a written request for a religious exemption from the vaccine mandate, which was denied.  Because of her refusal to obtain a COVID-19 vaccination, Giroux was terminated from her employment.  She subsequently sought and obtained a Notice of Right to Sue from the EEOC.

As more fully explained in their amended complaint, the Plaintiffs object to receiving the COVID-19 vaccines based on their religious belief that "life is sacred from the moment of conception," ECF No. 152 at ¶ 46, and their assertion that the development of the three COVID-19 vaccines employed or benefitted from the cell lines of aborted fetuses.  Specifically, the Plaintiffs object to the Moderna and Pfizer vaccines because both are mRNA vaccines, which, the amended complaint claims,

"have their origins in research on aborted fetal cells lines."  ECF No. 152 at ¶ 55.  The Plaintiffs also object to the Johnson & Johnson vaccine, asserting that aborted fetal cell lines were used in both its development and production.  The amended complaint states that the use of fetal cell lines to develop the vaccines runs counter to the Plaintiffs' sincerely held religious beliefs that cause them to oppose abortion.

## C.     The COVID-19 Vaccine Mandate

Mandatory vaccination requirements for healthcare workers in Maine were established long before the emergence of COVID-19 in late 2019.  Maine has required by statute, 22 M.R.S.A. § 802 (1989), that hospitals and other healthcare facilities ensure that their employees are vaccinated against certain communicable diseases since 1989.  1989 Me. Legis. Serv. 641 (West).  When the governing statute, 22 M.R.S.A. § 802 (1989), was first enacted, it mandated vaccinations for measles and rubella.  Its stated purpose was to report, prevent, and control infectious diseases that pose a potential public health threat to the people of Maine.  *Id*. § 802(1)(D) (1989).

The statute was amended in 2001 to grant rulemaking authority to DHHS to specify mandatory vaccines for school children as well as for healthcare workers at designated healthcare facilities.  *See* 2001 Me. Legis. Serv. 147 (West).  Accordingly, in 2002, DHHS promulgated and first adopted "Immunization Requirements for Healthcare Workers," which is the original version of the Rule at issue here.  10-144-264 Me. Code R. §§ 1-7 (Apr. 16, 2002).   As then adopted, the Rule required vaccinations for measles, rubella, hepatitis B, mumps, and chickenpox.  *Id*. § 5(A).

From 2001 until 2019, the statute recognized three exemptions from the vaccination requirements for both healthcare workers and school children:  A "medical exemption," available for those who provided "a physician's written statement that immunization against one or more diseases may be medically inadvisable"; and both "religious [and] philosophical exemption[s]" for those "who state[d] in writing a sincere religious or philosophical belief that is contrary to the immunization requirement."  22 M.R.S.A. § 802(4-B)(A), (B) (2019).  In 2019, the statute was revised to eliminate the exemptions for religious and philosophical beliefs, 2019 Me. Legis. Serv. 386 (West), thus leaving the medical exemption as the sole exemption permitted under law.  In response to this legislative change, a statewide veto referendum regarding the new law eliminating the religious and philosophical exemptions was held in March 2020 pursuant to the People's Veto provision of the Maine Constitution, Me. Const. art. IV, pt. III, § 17.  The vote resulted in the law being upheld, with over 72% of those casting ballots voting in favor of retaining the medical exemption as the sole exemption.[6]  In April 2021, DHHS amended the Rule to conform it to the statute by removing the listed exemptions from the Rule and having the Rule refer to the statute as governing the authorized exemption.  *See* 10-144-264 Me. Code R. § 3 (effective Apr. 14, 2021); 22 M.R.S.A.

---

[6]  Full results are available on the Maine Secretary of State website.  Dep't of Sec'y of State, State of Maine,          Tabulations          for          Elections          Held          in          2020, https://www.maine.gov/sos/cec/elec/results/results20.html#ref20 (last visited August 18, 2022) (to calculate the percentage, select "March 3, 2020 Special Referendum Election" to access the spreadsheet of results.  Then divide the number of "no" votes (281,750) by the total number of votes cast (388,393)).

§ 802(4-B)(B) (West 2022).[7]   In August 2021, DHHS again amended the Rule by adding the COVID-19 vaccination to the list of required vaccinations.  10-144-264 Me. Code R. § 1(F)(7) (amended Aug. 12, 2021).   The current version of the Rule, promulgated in November 2021, continues to mandate COVID-19 vaccinations for healthcare workers.  10-144-264 Me. Code R. § 1(F)(7) (amended Nov. 10, 2021).  The Plaintiffs do not challenge the lawfulness of the rulemaking process by which the current version of the Rule was adopted.

The preceding history demonstrates that although the Plaintiffs' legal challenge is aimed at the August 2021 amendment of the Rule resulting in all healthcare workers in Maine being required to be fully vaccinated against COVID-19 by October 1, 2021, it was the Legislature's 2019 revision of the statute, 22 M.R.S.A. § 802(4-B), that eliminated the religious exemption from all mandatory vaccines. Thus, DHHS' removal of the religious and philosophical exemptions in April 2021 served to conform the Rule to the requirements of the statute.  References in this Order to the COVID-19 vaccine mandate refer to both the current version of the Rule and the statute, 22 M.R.S.A. § 802(4-B), which operate in tandem.

Having provided the necessary background, I turn to the arguments set out in the Defendants' motions to dismiss.

---

[7]  There is an additional exemption provided specifically for the Hepatis B vaccine, as mandated under federal law, 22 M.R.S.A. § 802(4-B)(C) (West 2022), which is unique and not relevant to the inquiry at hand.

## II.  DISCUSSION

### A.    Legal Standard

"The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001).  The plaintiff carries the burden of demonstrating the existence of subject-matter jurisdiction.  *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996).  Nonetheless, "[i]n ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  *Id.* at 1209-10.

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  Additionally, a court may consider information "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Id.* at 53 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).  Although conclusory legal statements "can provide the framework of a complaint, they must be supported by factual allegations."[8]  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To survive a motion

---

[8] The first six pages of the amended complaint set forth several legal and policy arguments in support of the Plaintiffs' position that are not in keeping with Rule 8(a)(2) of the Federal Rules of Civil Procedure's requirement that a pleading seeking relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).

The court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## B.    Legal Analysis

As noted at the outset, the Plaintiffs' amended complaint presents five claims arising under: Title VII, 42 U.S.C.A. § 2000e to e-17; the Free Exercise Clause of the First Amendment; the Equal Protection Clause of the Fourteenth Amendment; the Supremacy Clause; and 42 U.S.C.A. § 1985 (West 2022) (Conspiracy to Interfere with Civil Rights).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995).  Thus, I begin my analysis with a discussion of the State Defendants' motion, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss all claims against Governor Mills for lack of jurisdiction, and all monetary damages claims against the State Defendants on the basis of sovereign immunity.

### 1. Claims Against Governor Mills and Damages Claims Against All State Defendants

The State Defendants move to dismiss all the Plaintiffs' claims against Governor Mills under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, asserting standing arguments.  The State Defendants also contend that the Eleventh Amendment bars the Plaintiffs from pursuing official-capacity damages claims against any of the State Defendants.  The Plaintiffs failed to oppose the State Defendants' Rule 12(b)(1) motion to dismiss.  "It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Collins v. Marina-Martinez*, 894 F.2d 474, 481 n.9 (1st Cir. 1990).  *See also Putney, Inc. v. Pfizer, Inc.*, No. 07-108-P-H, 2007 WL 3047159, at *8 (D. Me. Oct. 17, 2007) (explaining that, because the non-moving party failed to respond to arguments raised in the motion to dismiss, "the motion to dismiss may be granted for that reason alone"); *see also Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("The district court correctly noted [that the plaintiff] abandoned [multiple] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint.").  Because the Plaintiffs failed to oppose the Rule 12(b)(1) motion to dismiss, I treat the affected claims as abandoned.  Thus, the claims against Governor Mills and damages claims against all State Defendants are properly dismissed.

### 2. Title VII

The Hospital Defendants move to dismiss the Title VII claims asserted against them in the amended complaint.  I address their arguments by considering (a) the

legal framework associated with those claims in this case, and (b) the parties' arguments.

### a. Legal Framework

Title VII prohibits employers from "discriminat[ing] against[] any individual because of his . . . religion." 42 U.S.C.A. § 2000e-2(c)(1) (West 2022).  Discrimination is effectuated through an adverse employment action, which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  "The First Circuit applies a two-part framework to religious discrimination claims under Title VII.  First, the plaintiff must make her *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004).  "In order to establish a prima facie case of religious discrimination based on a failure to accommodate, the plaintiff must show that '(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the [employer's] attention, and (3) the religious practice was the basis for the adverse employment decision.'" *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 55 (1st Cir. 2002) (quoting *EEOC v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996)).

Second, "if the plaintiff establishes her *prima facie* case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship."

*Cloutier*, 390 F.3d at 133.  Title VII establishes that employers must accommodate "all aspects of [their employees'] religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.A. § 2000e(j) (West 2022).  "[A]n employer need not give an employee her preferred accommodation" to comply with Title VII.  *Oquendo v. Costco Wholesale Corp.*, 857 Fed App'x 9, 11 (1st Cir. Apr. 29, 2021) (unpublished).  Under Title VII, an accommodation is an undue hardship "if it would impose more than a *de minimis* cost on the employer." *Cloutier*, 390 F.3d at 134.  The undue hardship "calculus applies both to economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and to non-economic costs, such as compromising the integrity of a seniority system." *Id*.

The amended complaint asserts that the Plaintiffs hold sincerely held religious beliefs against receiving COVID-19 vaccinations and that the Hospital Defendants refused to consider or grant religious accommodations by failing to grant a religious exemption from the vaccine mandate, in violation of Title VII.  The amended complaint declares at the outset, in bold letters:  "**All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for over two years**."  ECF No. 152 ¶ 8.  This declaration is in keeping with the various allegations in the amended complaint indicating that a religious exemption from the

vaccine mandate was the exclusive accommodation the seven Plaintiffs sought from their respective employers.  Throughout the amended complaint and memoranda of law, the Plaintiffs employ the terms "religious accommodation" and "religious exemption" interchangeably, but, as I will discuss, although a "religious exemption" is a type of "religious accommodation," it is by no means the only type.

The focus of the Hospital Defendants' motions to dismiss is the undue hardship affirmative defense afforded to the Hospital Defendants by Title VII.  The Hospital Defendants do not challenge the Plaintiffs' ability to make out a prima facie claim. Specifically, the Hospital Defendants do not challenge the sincerity of the Plaintiffs' asserted religious beliefs or that those beliefs are the reason for the Plaintiffs' refusal to be vaccinated.  Nor do they challenge the Plaintiffs' contentions that their employment was terminated because they refused to receive COVID-19 vaccinations in keeping with Plaintiffs' religious objections to the vaccine.  Thus, for purposes of the motions to dismiss, the Plaintiffs have set forth a prima facie case of religious discrimination in violation of Title VII, and the motions turn on the undue hardship affirmative defense.

### b.  Legal Analysis of the Title VII Claims

The Hospital Defendants contend that the Plaintiffs' Title VII claim must be dismissed because, based on the allegations of the amended complaint, the sole accommodation sought by the Plaintiffs—a religious exemption from the vaccine requirement—would necessarily, as a matter of law, impose an undue hardship on them as employers and therefore the accommodation is not required by Title VII. Undue hardship is an affirmative defense for purposes of Title VII that must be pled

and proven by the employer.  *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) ("The statutory definition of "religion" in Title VII . . . [includes] an explicit affirmative defense for failure-to-accommodate claims if the accommodation would impose an undue hardship on the employer."); *Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d at 55 (explaining that the employer bears the burden to show that any accommodation would result in undue hardship).

In its decision affirming my order denying the Plaintiffs' Motion for a Preliminary Injunction, the First Circuit determined that the "hospitals need not provide the exemption the appellants request because doing so would cause them to suffer undue hardship." *Does 1-6 v. Mills*, 16 F.4th at 36.  Although informative, this determination is not conclusive at this stage because it was preliminary, having been voiced in connection with appellate review of the denial of the Plaintiffs' motion for a preliminary injunction.

The Hospital Defendants contend that the amended complaint, which asserts that "the Governor has threatened to revoke the licenses of all health care employers who fail to mandate that all employees receive the COVID-19 vaccine," ECF No. 152 ¶ 34, demonstrates on its face that the threat of sanctions for violating the mandate is real and is more than a de minimis hardship for purposes of Title VII.  In addition, the Hospital Defendants note that the Plaintiffs do not allege that they sought or are entitled to any other reasonable accommodation.

"Affirmative defenses may be raised in a motion to dismiss, provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'"

*Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (alterations omitted) (quoting *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 113-14 (1st Cir. 2009)).  "[W]hen the facts establishing the defense appear within the four corners of the complaint, and upon review there is 'no doubt' that the plaintiff's claim is barred by the raised defense, dismissal is appropriate."  *Id.* at 616.  Thus, my analysis must address whether the facts establishing the affirmative defense are clear on the face of the pleadings, and then whether there is any room to doubt that the Plaintiffs' action is barred by the affirmative defense of undue hardship as asserted by the Hospital Defendants.

As a threshold matter, and before addressing the Plaintiffs' arguments in response to the motion, the record reflects that there is no dispute between the parties as to what Maine's vaccine mandate requires of designated healthcare facilities and the consequences for such employers, including the Hospital Defendants, if they were to choose to violate it.  The Rule provides:  "If a Designated Healthcare Facility fails . . . to comply with the requirements of this rule, the Department may take enforcement action pursuant to 22 MRS §804 or as otherwise provided by law."  10-144-264 Me. Code R. § 7(G) (amended Nov. 10, 2021).  The statute, 22 M.R.S.A. § 804, provides:

> Any person who neglects, violates or refuses to obey the rules . . . may be ordered by the department, in writing, to cease and desist. . . .  In the case of any person who refuses to obey a cease and desist order . . . the department may impose a fine, which may not be less than $250 or greater than $1,000 for each violation. Each day that the violation remains uncorrected may be counted as a separate offense. . . .
>
> A licensing agency under the department may immediately suspend a license pursuant . . . for a violation under this section.

Further, the amended complaint itself acknowledges in paragraphs 33 and 34 that the vaccine mandate required the Hospital Defendants not to employ healthcare workers who were unvaccinated against COVID-19 as of October 1, 2021:

> The Governor's COVID-19 Vaccine Mandate also says that "[t]he organizations to which this requirement applies must ensure that each employee is vaccinated, with this requirement being enforced as a condition of the facilities' licensure."
>
> **Thus, the Governor has threatened to revoke the licenses of all health care employers who fail to mandate that all employees receive the COVID-19 vaccine**.

ECF No. 152 ¶¶ 33-34 (emphasis in original).  Thus, among other penalties, the Hospital Defendants would risk the immediate suspension of their state-issued licenses if they were to violate the vaccine mandate.

The Plaintiffs make several arguments in response to the Hospital Defendants' position that it is clear from the face of the amended complaint that the Plaintiffs' Title VII claims are barred by the undue hardship defense.

First, the Plaintiffs contend in a conclusory fashion that "[c]ompliance with Title VII is not and cannot be an undue hardship."  ECF No. 117 at 25.  They offer no support, however, for the proposition underlying this argument—that employers' Title VII obligations excuse them from having to comply with a state statute and rule which mandate various vaccinations for healthcare workers—other than to argue that under the Supremacy Clause of the Constitution, "the federal law takes precedence and the state law is preempted," ECF No. 117 at 26 (emphasis omitted) (quoting *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018)).

Preemption occurs when "Congress enacts a law that imposes restrictions or confers rights on private actors [and] a state law confers rights or imposes restrictions that conflict with the federal law." *Murphy*, 138 S. Ct. at 1480. Title VII's provisions do not authorize or permit employers, however, to exempt their employees from federal and state laws with impunity. The statute expressly provides that its provisions should not be construed "to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice" under Title VII. 42 U.S.C.A. § 2000e-7 (West 2022). "[A]n employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) (affirming dismissal of the plaintiff's complaint because the requested accommodation would require the employer to violate federal law, which was an undue hardship as a matter of law). Similarly, "[e]very circuit to consider the issue has . . . h[e]ld that Title VII does not require an employer to reasonably accommodate an employee's religious beliefs if such accommodation would violate a federal statute." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015); *see also Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) ("Requiring defendants to violate the Internal Revenue Code and subject themselves to potential penalties by not providing Seaworth's SSN on information returns results in undue hardship."). Thus, the Plaintiffs' suggestion that the Hospital Defendants' obligation to comply with Title VII necessarily excuses them from having to comply with the

vaccine mandate is unavailing because the consequences that the Hospital Defendants would face for their noncompliance are more than de minimis. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 67 (1986) (noting that an accommodation causes an undue hardship whenever it results in a more-than-de minimis cost to the employer).

Second, the Plaintiffs contend that the question of whether the Hospital Defendants' refusal to accommodate the Plaintiffs' religious objections constitutes an undue hardship is a question of fact that cannot properly be decided on a motion to dismiss. The Plaintiffs cite to numerous decisions indicating that whether an otherwise reasonable accommodation sought by an employee would present an undue hardship for the employer is generally a question of fact and not for decision at the motion-to-dismiss stage. *See, e.g.*, *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) ("As for the balance between 'reasonable accommodation' and 'undue hardship,' these matters are questions of fact and thus generally inappropriate for resolution on the pleadings."); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 877 (9th Cir. 1989) ("[W]e note that whether a particular accommodation would have imposed an undue hardship on the employer is a question of fact."); *Doe 1 v. NorthShore Univ. HealthSystem*, No. 21-cv-05683, 2021 WL 5578790, at *4 (N.D. Ill. Nov. 30, 2021) ("Assessing the undue-hardship question on the merits typically requires factual development, because whether an employer can 'reasonably accommodate a person's religious beliefs without undue hardship "is basically a question of fact."'" (quoting *Minkus v. Metro. Sanitary Dist. of Greater Chi.*, 600 F.2d 80, 81 (7th Cir. 1979))). Here, however, and as explained previously, the facts establishing the requirements

of the vaccine mandate and the consequences for employers who fail to abide by it are not in dispute.  The Plaintiffs have not pointed to any disputed fact in relation to the requirements of the vaccine mandate that requires further development beyond the motion to dismiss stage.

Finally, the Plaintiffs contend that the State Defendants and the Hospital Defendants have adopted inconsistent positions on whether any religious accommodation is available under the vaccine mandate.  The Plaintiffs argue that the "Defendants cannot have their cake and eat it too, relying on the Vaccine Mandate to say it would be an undue hardship to violate state law while at the same time espousing that the Vaccine Mandate does not prohibit employers from providing an accommodation under Title VII."  ECF No. 117 at 28.  The Plaintiffs then assert that "[i]f State Defendants do not prohibit such an accommodation under Title VII, then [Hospital] Defendants cannot claim an undue hardship for violating a state law that does not prohibit providing Plaintiffs with accommodations."  ECF No. 117 at 29.[9]

The stated positions of the State and Hospital Defendants are not, however, inconsistent.  The amended complaint does not allege that any of the Defendants have asserted that all religious accommodations, apart from the exemption the Plaintiffs desire, are unavailable.  As the Plaintiffs acknowledge in paragraph 90 of their amended complaint, when MaineHealth denied Plaintiff Lowe's request for a religious exemption, it also informed her:  "If you seek an accommodation other than

---

[9]  The Plaintiffs quote from written DHHS guidance that explains that, although the Rule does not prohibit employers from providing reasonable accommodations under Title VII, "if such accommodations are provided by a [designated healthcare facility, those accommodations] must comply with the [R]ule."  ECF No. 117 at 28 (quoting State of Me., *Health Care Workers Vaccination FAQs*, (Nov. 10, 2021), https://www.maine.gov/covid19/vaccines/public-faq/health-care-worker-vaccination).

a religious exemption from the state mandated vaccine, please let us know."  ECF No. 152 ¶ 90.  Contrary to the Plaintiffs' argument, the State and Hospital Defendants' positions–that a religious exemption from the vaccine mandate is not available but that other religious accommodations consistent with both Title VII and Maine's COVID-19 vaccine mandate may be available–are consistent.

### c. Conclusion

To reprise, the facts establishing the affirmative defense of undue hardship are clear from the face of the Plaintiffs' pleadings, and there is no doubt that the affirmative defense bars the Plaintiffs' Title VII claim.  The Plaintiffs sought one specific religious accommodation to the COVID-19 vaccine mandate—an exemption—that, if granted, would place the Hospital Defendants in violation of state law.  Title VII does not mandate that employers provide the specific accommodation requested by an employee, nor does it require employers to provide accommodations that would require the employer to violate state law.  Accepting the properly pled facts set forth in the amended complaint as true, if the Hospital Defendants had granted the sole accommodation sought by the Plaintiffs, it would result in an undue hardship by subjecting the Hospital Defendants to the imposition of a fine and the "immediat[e] suspension of a license."  22 M.R.S.A. § 804(2), (3).

The amended complaint and the other information that may be considered under Fed. R. Civ. P. 12(b)(6) leaves no doubt that the Plaintiffs' Title VII claims are barred by the affirmative defense of undue hardship.  *See Zenon*, 924 F.3d at 616. Accordingly, the amended complaint fails to state plausible claims for relief under Title VII and the claims are properly dismissed.

### 3.  Free Exercise Clause of the First Amendment

The Plaintiffs assert that the appropriate standard of constitutional review for their claim under the Free Exercise Clause of the First Amendment is strict scrutiny, which, they contend, is a standard that the COVID-19 mandate cannot survive.  The State Defendants contend that the less-demanding rational basis standard of constitutional review applies, and that the COVID-19 vaccine mandate satisfies this standard and thus does not violate the Free Exercise Clause.  The question of which standard of constitutional review applies in this case turns on whether the COVID-19 vaccine mandate is neutral and generally applicable, as explained further below.

The Free Exercise Clause, which applies to the states through the Fourteenth Amendment, provides that "Congress shall make no law prohibiting the free exercise" of religion.  U.S. Const. amend. I, *see Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940) (incorporating the Free Exercise Clause of the First Amendment against the states).  The Clause "embraces two concepts[:] freedom to believe and freedom to act." *Cantwell*, 310 U.S. at 303.  Although the freedom to believe is absolute, the freedom to act on one's religious beliefs "remains subject to regulation for the protection of society." *Id*. at 304.

The Free Exercise Clause does not prevent states from enacting a "neutral, generally applicable regulatory law," even when that law infringes on religious practices. *See Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879-882 (1990).  Laws that are deemed both neutral and generally applicable are traditionally subject to rational basis review.  Thus, in *Smith*, the U.S. Supreme Court explained: "We have never held that an individual's religious beliefs excuse him from compliance

with an otherwise valid law prohibiting conduct that the State is free to regulate.  On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition."  *Id*. at 878-79.  Further, "if prohibiting the exercise of religion . . . is not the object of the [state action] but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."  *Id*. at 878.

However, if a law burdens a religious practice and does not satisfy the requirements of neutrality and general applicability, the law is invalid under the Free Exercise Clause unless it survives strict scrutiny.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).  Under this heightened standard of review, a law will be deemed invalid under the Free Exercise Clause unless it is "justified by a compelling governmental interest and . . . narrowly tailored to advance that interest."  *Id.* at 531-32.

To determine whether rational basis or strict scrutiny review applies, I turn to consider whether the COVID-19 vaccine mandate is both (1) neutral and (2) generally applicable.

### a.  Neutrality

Neutrality examines whether the State's object, or purpose, was to "infringe upon or restrict practices because of their religious motivation."  *Lukumi*, 508 U.S. at 533.  A law is not neutral if its object "is to infringe upon or restrict practices because of their religious motivation."  *Id*.  The first step in determining the object of a law is to examine whether it is facially neutral.  *Id*. ("[T]he minimum requirement of neutrality is that a law not discriminate on its face.").

By this standard, the COVID-19 vaccine mandate challenged here is facially neutral.  Neither the statute nor the Rule mention religion, even by implication.  Operating in tandem, they require that all healthcare workers employed at designated healthcare facilities receive the COVID-19 vaccination.  They do not treat the COVID-19 vaccine differently than any other vaccines mandated under Maine law.

The vaccine mandate's facial neutrality is not dispositive, though, because a "[g]overnment [also] fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).  Thus, even a facially neutral law may not be neutral for Free Exercise purposes if its object is to discriminate against religious beliefs, practices, or motivations.  *Lukumi*, 508 U.S. at 534 ("The Free Exercise Clause protects against governmental hostility, which is masked, as well as overt.").  To discern whether the object of a law is discriminatory, courts look to "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision[-]making body." *Id.* at 540.

The amended complaint asserts that the COVID-19 vaccine mandate is not neutral because the removal of the religious exemption from the Rule in 2021 "specifically target[ed] Plaintiffs' religious beliefs for disparate and discriminatory treatment."  ECF No. 152 ¶ 119.  The amended complaint asserts that "[b]y removing statutorily required religious accommodations from consideration in Maine, the

Governor has created and singled out for disparate treatment a specific class of healthcare employees (*i.e.*, religious objectors to COVID-19 vaccinations) as compared to other similarly situated healthcare workers (*i.e.*, those with medical exemption requests)."   ECF No. 152 ¶ 147.   The Plaintiffs characterize this removal as a "religious gerrymander."  ECF No. 152 ¶ 121.

The Plaintiffs' "religious gerrymander" argument fails to account for the fact that it was the Maine Legislature, and not the Governor, that removed religious and philosophical exemptions from mandated vaccines, and that the removal occurred with the 2019 amendment of the statute, two years prior to the enactment of the Rule challenged by Plaintiffs.  Following the unsuccessful People's Veto held in 2020 that challenged the 2019 statutory change, DHHS removed the religious exemption from the Rule in April 2021 to conform the Rule to the change.  These revisions pre-dated the adoption of the COVID-19 vaccine requirement.

The 2019 revision of 22 M.R.S.A. § 802(4-B) is therefore distinguishable from the history of the revision of the regulation challenged in *New Hope Family Services v. Poole*, 966 F.3d 145 (2d. Cir. 2020), which Plaintiffs heavily rely upon.  In *New Hope Family Services*, a Christian adoption agency brought a Free Exercise challenge against a facially neutral regulation that prohibited adoption agencies from discriminating on the basis of sexual orientation and marital status.  *Id.* at 148-49. The regulation at issue was revised to include this non-discrimination provision in 2013, and for five years following that change the agency continued its practice of referring unmarried or same-sex couples seeking to adopt to other agencies because of the agency's religious belief against recommending or placing children with

unmarried or same-sex couples. *Id.* at 157-58. In 2018, though, the state notified the agency that it would need to change its policy to comply with the regulation, or it would be required to close. *Id.* at 158-59. The district court granted the state's motion to dismiss the agency's complaint, determining that the regulation was facially neutral and that there was no evidence that the aim of the regulation was to restrict or infringe upon religious practices. The Second Circuit reversed, *id.* at 160, determining that the complaint raised a plausible suspicion of hostility to religious beliefs despite the regulation's facial neutrality for multiple reasons. *Id.* at 165-70. These included the apparent inconsistencies between the regulation at issue and the statute it implemented, the abrupt and unexplained change in the way the Plaintiff's practices were treated, and public statements made by agency personnel that arguably demonstrated hostility to religious beliefs. *Id.*

Here, unlike in *New Hope Family Services*, the amended complaint does not allege facts that raise a plausible suspicion that hostility to religious beliefs motivated Maine's removal of non-medical exemptions to mandatory vaccinations. Accepting all well-pleaded facts in the amended complaint as true and drawing all reasonable inferences in favor of the Plaintiffs, the amended complaint does not allege facts suggesting that religious animosity inspired the statutory removal of the religious exemption to mandatory vaccinations in 2019 or the corresponding revision made to the Rule in April 2021. Nor does the amended complaint allege any public comments or other facts associated with the adoption of the COVID-19 vaccine mandate in August 2021 that would, if proven, establish that the same arose from a hostility to religious beliefs.

For the foregoing reasons, the COVID-19 vaccine mandate is neutral.

### b.  General Applicability

General applicability addresses whether the State has selectively "impos[ed] burdens only on conduct motivated by religious belief." *Lukumi*, 508 at 543.  The State Defendants contend that the COVID-19 vaccine mandate is generally applicable and does not target religious beliefs because the distinction between permitted medical exemptions and prohibited non-medical exemptions is based on an employee's medical condition, not the employee's beliefs.  The Plaintiffs argue that "the Vaccine Mandate treats religious exemptions less favorably than *some* nonreligious exemptions.  That is enough to remove the law from [the] neutrality and general applicability requirement of the First Amendment."  ECF No. 117 at 6.

The Plaintiffs' approach to the question of general applicability bypasses a necessary analytical step.  Courts must first determine whether the religious and secular interests at issue are comparable and then, if they are, examine, whether the less favorable treatment of religious interests results from a constitutionally impermissible value judgment.  As the Supreme Court recently explained, "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

The Plaintiffs contend that the secular activity at issue in this case that is comparable to the religious exemption the Plaintiffs seek is the COVID-19 vaccine mandate's medical exemption from all mandatory vaccines.  The Plaintiffs assert that

because individuals who are medically exempt from receiving the COVID-19 vaccine pose the same risk to the larger population as those who would be religiously exempt, the COVID-19 vaccine mandate is not generally applicable.

The Supreme Court has explained that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation." *Id.* The COVID-19 vaccine mandate's purpose is threefold: (1) "to protect the health and lives of Maine people," (2) to "safeguard Maine's health care capacity," and (3) to "limit the spread of the [COVID-19] virus." ECF No. 1-1 at 1 (Press Release from Governor Mills's office announcing the Rule). A medical exemption to state-mandated vaccines is fundamentally different and, therefore, not comparable to a religious exemption because a medical exemption aligns with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases, while non-medical exemptions, including religious exemptions, do not. This fundamental difference was recognized in the First Circuit's earlier decision in this case: "[E]xempting from vaccination only those whose health would be endangered by vaccination does not undermine Maine's asserted interests here: (1) ensuring that healthcare workers remain healthy and able to provide the needed care to an overburdened healthcare system; (2) protecting the health of the those in the state most vulnerable to the virus—including those who are vulnerable to it because they cannot be vaccinated for medical reasons; and (3) protecting the health and safety of all Mainers, patients and healthcare workers alike." *Does 1-6 v. Mills*, 16 F.4th at 30-31.

Thus, exempting healthcare workers whose own health would be endangered if forced to receive a vaccine is in harmony with the purpose of the vaccine requirement itself—to protect public health. Additionally, the COVID-19 vaccine mandate at issue here provides a single objective exemption—a medical exemption—and as the First Circuit observed, "[n]o case in this circuit and no case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable." *Does 1-6 v. Mills*, 16 F.4th at 30.

Individualized exemptions may, however, undermine a regulation's general applicability if they display an unconstitutional value judgment that gives preference to secular concerns over religious concerns. In *Fulton*, the Supreme Court explained that "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877; *see also Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014) ("A law is . . . not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it."). The Plaintiffs also contend that the medical exemption at issue here should be treated as an individualized exception that is "sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny." ECF No. 117 at 11 (quoting and relying on *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999)). In *Fraternal Order of Police*, the Third Circuit applied strict scrutiny to invalidate a regulation that prohibited beards for male police officers that was

adopted for the stated purpose of promoting uniformity of the officers' appearance, and that granted a medical exemption from the requirement while not exempting officers who maintained beards as a matter of religious faith.  170 F.3d at 365-67.

In this case, the amended complaint and the properly considered documents, information, and facts before me show that the purpose of requiring COVID-19 vaccinations for healthcare workers is solely to protect public health.  Exempting individuals whose health will be threatened if they receive a COVID-19 vaccine is an essential, constituent part of a reasoned public health response to the COVID-19 pandemic.  It does not express or suggest a discriminatory bias against religion.  *See W.D. v. Rockland County*, 521 F. Supp. 3d 358, 403 (S.D.N.Y. 2021) (concluding that New York's emergency declaration mandating vaccinations against measles, which provided a medical exemption but not a religious exemption, met the requirement of general applicability by "encouraging vaccination of all those for whom it was medically possible, while protecting those who could not be inoculated for medical reasons").  In the context of the COVID-19 vaccine mandate, the medical exemption is rightly viewed as an essential facet of the vaccine's core purpose of protecting the health of patients and healthcare workers, including those who, for bona fide medical reasons, cannot be safely vaccinated.  In addition, the vaccine mandate places an equal burden on all secular beliefs unrelated to protecting public health—for example, philosophical or politically-based objections to state-mandated vaccination requirements—to the same extent that it burdens religious beliefs.

Thus, the medical exemption available as to all mandatory vaccines required by Maine law does not reflect a value judgment unfairly favoring secular interests

over religious interests.  As an integral part of the vaccine requirement itself, the medical exemption for healthcare workers does not undermine the vaccine mandate's general applicability.  The amended complaint does not plead any facts that plausibly support the conclusion that the COVID-19 vaccine mandate is not generally applicable.  Because the COVID-19 vaccine mandate is both neutral and generally applicable, rational basis review applies.

### c.  Rational Basis Review

"A law survives rational basis review so long as the law is rationally related to a legitimate governmental interest."  *Cook v. Gates*, 528 F.3d 42, 55 (1st Cir. 2008).  Thus, the Plaintiffs must plead facts to plausibly support a claim that "the governmental infringement is not rationally related to a legitimate government purpose."  *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015).  For the following reasons, I conclude that the Plaintiffs have not pled facts that plausibly support their claim that the COVID-19 vaccine mandate is not rationally related to a legitimate government interest.

As described previously, the COVID-19 vaccine mandate's purpose is threefold: (1) "to protect the health and lives of Maine people," (2) to "safeguard Maine's health care capacity," and (3) to "limit the spread of the [COVID-19] virus."  ECF No. 1-1 at 1 (Press Release from Governor Mills's office announcing the Rule).  As the Supreme Court has observed, curbing the spread of COVID-19 is "unquestionably a compelling interest."  *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 62, 67 (2020) (per curiam).   An unquestionably compelling interest is inherently legitimate.

Safeguarding Maine's healthcare delivery capacity and protecting the health and lives of Maine people are also legitimate government interests.

The Plaintiffs make a single, unsupported assertion in the amended complaint challenging the government's interest:   "There is no legitimate, rational, or compelling interest in the Governor's COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs."  ECF No. 152 ¶ 124.  The Plaintiffs do not elaborate on this argument in their memorandum.  This conclusory statement does not present any facts which cast doubt on the legitimacy of the Government's asserted interests in the COVID-19 vaccine mandate.

Reducing the number of unvaccinated healthcare workers at designated healthcare facilities in Maine is rationally related to the Government's interests in limiting the spread of COVID-19, safeguarding Maine's healthcare capacity, and protecting the lives and health of Maine people.   Thus, the COVID-19 vaccine mandate is rationally related to the asserted legitimate governmental interests.  For this reason, the Free Exercise claim is properly dismissed.

### 4.  Equal Protection Clause

The amended complaint asserts that the COVID-19 vaccine mandate impermissibly creates a class of religious objectors and then subjects them to disparate treatment, in violation of the Equal Protection Clause.  "[W]here a law subject to an equal protection challenge 'does not violate [a plaintiff's] right of free exercise of religion,' courts do not 'apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test.'" *W.D.*, 521 F. Supp. 3d at 410 (second alteration in original) (quoting *A.M. ex rel. Messineo v. French*, 431 F.

Supp. 3d 432, 446 (D. Vt. 2019)); *accord Wirzburger v. Galvin*, 412 F.3d 271, 282-83 (1st Cir. 2005) ("Because we [hold] that the [challenged law] does not violate the Free Exercise Clause, we apply rational basis scrutiny to the fundamental rights based claim that [the law] violates equal protection.").

Because I have determined that the vaccine mandate is rationally based, no further analysis is required, and the amended complaint's Equal Protection claim is appropriately dismissed.

### 5. Supremacy Clause

The amended complaint also asserts that the COVID-19 vaccine mandate violates the Supremacy Clause of the U.S. Constitution, U.S. Const. Art. VI, cl. 2, because the mandate purportedly violates the anti-discrimination provisions of Title VII.

The Supremacy Clause "is not the 'source of any federal rights,' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989)). Rather, the Supremacy Clause "creates a rule of decision" that "instructs courts what to do when state and federal law clash." *Id*. As explained in the analysis of the Plaintiffs' Title VII claim, state and federal law do not clash here, and the mandate does not violate Title VII.

Accordingly, the amended complaint's claim under the Supremacy Clause that the Defendants "attempt[ed] to make Maine law supersede federal law," ECF No. 152 at 32, is appropriately dismissed as to all Defendants.

### 6. Unlawful Conspiracy to Violate Plaintiffs' Civil Rights in Violation of 42 U.S.C.A. § 1985

"A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another.'" *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (quoting *Est. of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)).  To plead a civil rights conspiracy in violation of 42 U.S.C.A. § 1985, a Plaintiff must "allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.,* 531 F.3d 104, 107 (1st Cir. 2008)).

The amended complaint asserts that the State and Hospital Defendants conspired to violate the Plaintiffs' civil rights in violation of 42 U.S.C.A. § 1985, but provides only conclusory, nonfactual allegations in support.  The primary assertion made in support of the conspiracy claim is that the Hospital Defendants made public statements that were supportive of the COVID-19 vaccine mandate after it was announced, and that the Hospital Defendants subsequently refused to grant religious exemptions from the COVID-19 vaccination requirement.  The amended complaint postulates that this public demonstration of support following the announcement of the Rule shows that the State and Hospital Defendants had agreed to deprive the

Plaintiffs of their constitutionally protected rights to free exercise of religion and to equal protection of the laws.

The Plaintiffs' contention that the Hospital Defendants' expression of support for the Rule following its adoption constitutes evidence of a civil conspiracy is implausible. "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss" regarding a claimed civil rights conspiracy. *Alston*, 988 F.3d at 578. As the First Circuit observed in its review of my earlier denial of the Plaintiffs' motion for preliminary injunction, the Plaintiffs here "do not allege that the hospitals had any role in the amendment of the statute or issuance of the regulation, only that they supported the regulation after the fact." *Does 1-6 v. Mills*, 16 F.4th at 37. Because the Plaintiffs have failed to plead facts that, if proven, could demonstrate the existence of a conspiracy, the § 1985 claim is dismissed.

## III. CONCLUSION

For the reasons stated above, the State and Hospital Defendants' Motions to Dismiss (ECF Nos. 107, 108, 109) are **GRANTED**.

**SO ORDERED.**

**Dated: August 18, 2022.**

                                    _____/s/ JON D. LEVY_____
                                    **CHIEF U.S. DISTRICT JUDGE**