**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| ALICIA LOWE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Case No. <u>1:21-cv-00242-JDL</u> |
| JANET T. MILLS, in her official capacity as | ) | |
| Governor of the State of Maine, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS'**
**<u>MOTION TO DISMISS REMAINING CLAIMS AS MOOT</u>**

Plaintiffs, pursuant to Local Rule 7(b), hereby submit this Response in Opposition to State Defendants' Motion to Dismiss Remaining Claims as Moot. (Dkt. 188, "MTD.") For the following reasons, this Court should deny State Defendants' Motion.

**INTRODUCTION**

State Defendants begin their efforts at evading this Court's review of the constitutional injuries they caused Plaintiffs in this action with the same level of callous indifference that they have displayed towards Plaintiffs' constitutional liberties since this matter began. State Defendants claim that "Plaintiffs cannot contend that they *now* face termination or loss of any rights based on their COVID-19 vaccination status." (MTD 2 (emphasis added).) Perhaps not, but the reason for this is because Plaintiffs were *already all terminated* as a result of State Defendants' unconstitutional Rule and Statute. Those whose jobs were stripped from them as a result of State Defendants' actions—by necessity—would not *now* face termination *again* from the jobs from which they were *already* terminated. State Defendants' contentions appear to be that they no longer stand as an obstacle to Plaintiffs' keeping their jobs in the healthcare industry because they repealed their vaccination Rule. But, the obstacle was already thrust upon Plaintiffs and the injury

already solidified by State Defendants' Rule and Statute prohibiting Plaintiffs from maintaining their occupations, in violation of the First Amendment.

State Defendants essentially base their entire motion on a self-serving affidavit, and ignore the well-pleaded allegations of Plaintiffs' Complaint, as well as the fact that only a portion of the injury-causing government action has been purportedly repealed. Self-serving affidavits are insufficient bases for dismissing a well-pleaded complaint, particularly when the purported mootness-causing repeal only encompasses a fraction of the claims pleaded, and even that repeal (of the Rule at issue here) does not render Plaintiffs' claims moot. State Defendants' mootness contentions are without merit. The motion should be denied.

## ARGUMENT

I.  **PLAINTIFFS' CHALLENGE TO THE STATUTORY PROHIBITION ON RELIGIOUS EXEMPTIONS FROM COMPULSORY VACCINATION IS NOT MOOT.**

### A.   State Defendants' Statutory Prohibition On Religious Accommodations To Compulsory Vaccination Presents Live And Justiciable Claims That Are Not Moot.

In their most candid (and fatal) admission to this Court, State Defendants concede—as they must—that Plaintiffs' challenge to the Vaccine Mandate includes both a challenge to the Rule requiring COVID-19 vaccination for healthcare workers *and* the concomitant Statute, 22 M.R.S.A. §802(4-B). (MTD 11.) And, as this Court previously (and correctly) stated, "the COVID-19 vaccine mandate refer[s] to *both* the current version of the Rule *and* the statute, 22 M.R.S.A. §802(4-B), which operate in tandem" to prohibit Plaintiffs from obtaining a religious exemption to compulsory vaccination. (Dkt. 156, Order on Motions to Dismiss, 9 (emphasis added).) (*See also* dkt. 65, Order on Plaintiffs' Motion for Preliminary Injunction, 10 ("when I refer in this

decision to the COVID-19 vaccine mandate, I am referring to the Rule as it operates in conjunction with the statute, 22 M.R.S.A. §802(4-B), which authorizes it.").)

A partial repeal of the Rule which caused Plaintiffs' constitutional injuries is not sufficient to warrant a finding of mootness. Indeed, for interim events to moot Plaintiffs' challenge, the interim events must "have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (holding that the case was not moot because "[i]ntervening events have not 'irrevocably eradicated the effects of the alleged violation'" (quoting *Davis*, 440 U.S. at 631).) At best, what State Defendants have done is effectuate a partial repeal of the constitutional violations that Plaintiffs have alleged here. And, as a matter of law, a partial repeal of the challenged conduct is insufficient to moot the case. *See, e.g.*, *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982) (holding that defendant's partial repeal of a challenged ordinance did not moot the case).

Here, State Defendants have revoked the Rule only, but have not repealed the Statute, 22 M.R.S.A. §802(4-B). And, because Plaintiffs' challenge in this action involves the complete prohibition on requesting or receiving religious accommodations for compulsory vaccination, it cannot be said that State Defendants have "completely eradicated" the effects of the Statute on Plaintiffs' First and Fourteenth Amendment liberties. *Davis*, 440 U.S. at 631. In fact, the revocation of the Rule cannot have completely eradicated the effects of the Rule and Statute because Plaintiffs have already suffered concrete injury as a result of the tandem operation of both, and continue to suffer from that constitutional injury today. Plaintiffs' challenge to the Vaccine Mandate, which includes a challenge to the Statute that authorizes a deprivation of their constitutional rights, is not moot.

**B.    State Defendants' Contention That Plaintiffs' Challenge To The Statute Was Insufficiently Plead To Save The Complaint From Mootness Is Incorrect, And, In Any Event, The Appropriate Remedy Would Be To Grant Leave To Amend, Not Dismissal.**

State Defendants contend that the Statute's continuing existence and effect does preclude Plaintiffs' constitutional challenge from being moot because Plaintiffs have not sufficiently pleaded claims for relief against the Statute. (MTD 11.) This is factually incorrect and legally irrelevant. First, the Vaccine Mandate—as pleaded in Plaintiffs Complaint—includes both the Rule and the Statute. (*See* dkt. 152, First Amend. V. Compl. ¶¶31-39.) And, the First and Fourteenth Amendment challenges are all specifically tied to the Vaccine Mandate and its prohibition on the availability of religious accommodations. (*See, e.g.*, *id.* ¶114 (alleging that the "Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines"); *id.* ¶120 (alleging that the Vaccine Mandate "creates a *system* of individualized exemptions for preferred religious accommodation requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs" (emphasis added)); *id.* ¶121 (same).) Thus, it is plain that Plaintiffs' challenge to the Vaccine Mandate sufficiently states a claim against both the Rule *and* the Statute for their "tandem" operation (dkt. 159 at 9) to deprive Plaintiffs of their constitutional liberties. Thus, the continued existence and operation of the Statute preclude a finding of mootness.

Second, even if State Defendants' contention was correct—which it is not—the appropriate remedy would not be dismissal, but permitting Plaintiffs to file an amended complaint to more specifically state such related claims over which this Court would doubtlessly have jurisdiction. *See, e.g.*, *Frye v. Gardner*, No. 20-cv-751-SM, 2020 WL 7246532, * (D.N.H. Dec. 9, 2020) ("The lack (or loss) of subject matter jurisdiction over the original complaint does not necessarily compel

dismissal of that complaint. Nor does it preclude a plaintiff from timely amending that complaint."). Indeed, Rule 15's explicit policy of freely granting leave to amend, Fed. R. Civ. P. 15(a)(2), or permitting a party to supplement the complaint if subsequent events render that necessary, Fed. R. Civ. P. 15(d), requires permitting Plaintiffs to amend and supplement their pleadings should the Court deem it necessary. Plaintiffs maintain that the operative Complaint more than sufficiently pleads a constitutional challenge to Defendants' unconstitutional scheme, including the remaining Statute. But if the Court disagrees, Plaintiffs expressly request leave to amend their Complaint to address any pleading concerns.

## II.   STATE DEFENDANTS' RESCISSION OF THE VACCINE MANDATE RULE DOES NOT MOOT PLAINTIFFS' CLAIMS FOR RELIEF.

### A.   State Defendants' Admitted Timing For Even Considering A Repeal Suggests Litigation Tactics, Not Genuine Change Of Heart, And Precludes Mootness.

Since the Statute alone moots State Defendants' mootness challenge, the Court need not proceed any further and may deny State Defendants' motion on that ground alone. However, even if the Statute were not sufficient to maintain a live case or controversy, and it certainly is, the Court would still have to deny State Defendants' motion because their purported repeal of the Rule does not moot this case.

State Defendants explicitly admit that it was not until "around the end of May 2023 and the beginning of June 2023," that they purportedly "reviewed the available science and research on the then current risks of COVID-19 in healthcare settings." (MTD 5.) And, on July 11, 2023, "the Department announced that it was proposing to end the requirement that DHCFs require their employees to be vaccinated against COVID-19." (*Id.* at 7.) This timing is unequivocally relevant to the determination of whether State Defendants' contentions of mootness have any merit. One need not ponder too long to see the importance of this admission. The First Circuit released its

decision on Plaintiffs' appeal of the dismissal of their Complaint *on May 25, 2023*, *see Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023), and held that Plaintiffs had stated a claim upon which relief can be granted and that "it is plausible, in the absence of any factual development, that the Mandate" violates the Free Exercise Clause. *Id.* at 714.

Thus, precisely "around the end of May 2023" (MTD 5) when the First Circuit held that Plaintiffs were entitled to probe their First and Fourteenth Amendment claims in discovery, State Defendants had a sudden revelation that they should reconsider the evidence concerning the Vaccine Mandate. That timing is critical here. After Plaintiffs fought for two years to have their day in Court, and despite State Defendants admitting that they were aware of changed circumstances concerning the risk of COVID-19 beginning "in *January 2022*" (MTD 6 (emphasis added)), State Defendants did nothing to alter the challenged Vaccine Mandate until the eve of discovery commencing in this Court. That is a litigation tactic, not a genuine change of heart, and it precludes a finding of mootness. *See, e.g.*, *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("Such [post-litigation] maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye."); *McCreary County, Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 871 (2005) (rejecting counties' mere "litigating position" as evidence of actual intent of county policies). Indeed, "[t]he defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (footnote omitted). State Defendants' litigation-induced timing is too suspect to support a finding of mootness, and evinces a desire to avoid a determination of the lawfulness of their mandate. Plaintiffs' claims are not moot.

**B.      Plaintiffs' Claims Are Not Moot Because State Defendants Retain Authority To Reinstate The Mandate At Any Time.**

State Defendants contend that their continued authority to reinstate a compulsory COVID-19 vaccination requirement for Plaintiffs does not prevent a finding of mootness. (MTD 14.) Binding Supreme Court precedent compels a contrary conclusion. As the Supreme Court unequivocally declared in *Tandon v. Newsom*, "even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case." 141 S. Ct. 1294, 1297 (2021). "And, so long as a case is not moot, litigants otherwise entitled to [relief] remain entitled to such relief where applicants 'remain under a constant threat' that government officials will use their power to reinstate the challenged restrictions." *Id.* (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (emphasis added)). The reason for this is simple: "Government actors have been moving the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the corner." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 716 (2020) (Gorsuch, J., statement). Indeed, "officials with a track record of moving the goalposts retain authority to reinstate those heightened restrictions at any time." *Tandon*, 141 S. Ct. at 1297. In such a case, "the rescission of the policy does not render this case moot." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1637 n.* (2018).

Here, not only have State Defendants not "irrevocably eradicated the effects of the alleged violation" inherent in their COVID-19 Vaccine Mandate, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983), but they unquestionably retain authority to deploy their constitutionally flawed but still alive Statute, 22 M.R.S.A. §804(4-A), to impose the same constitutional injury on Plaintiffs yet again. And, to make matters worse, State Defendants admit—as they must—that the Statute remains in effect (MTD 11), that they do not believe there is any constitutional flaw in the Statute

7

(*id.* at 11 n.5), and that a retention of authority does not otherwise negate mootness. (*Id.* at 14.) None of those contentions is true under *Tandon*. 141 S. Ct. at 1297. The absence of any concession by the State Defendants that they acted unconstitutionally is troubling on its own, but coupled with their retention of authority to do it again is fatal to any contentions of mootness. *See, e.g.*, *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (holding that the "power to reassess [the challenged conduct] at any time" precludes a finding of mootness); *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 192 (4th Cir. 2018) ("[W]e have held that a defendant does not meet its burden of demonstrating mootness when it retains the authority to reassess the challenged policy at any time.").

Put simply, given the ever-changing nature of COVID-19 infringements on religious exercise, "there is no reason why [plaintiffs] should bear the risk of suffering further irreparable harm in the event of another [mandate]." *Catholic Diocese*, 141 S. Ct. at 68-69. As State Defendants' "reasoning goes, [the Court] should send the plaintiffs home with an invitation to return later if need be." *Id.* at 71 (Gorsuch, J., concurring).

> [I]f we dismissed this case, nothing would prevent the Governor from reinstating the challenged restrictions tomorrow. And by the time a new challenge might work its way to us, [she] could just change them again. The Governor has fought this case at every step of the way. To turn away religious [claimants] bringing meritorious claims just because the Governor decided to hit the "off" switch in the shadow of our review would be, in my view, just another sacrifice of fundamental rights in the name of judicial modesty.

*Id.* at 71-72 (Gorsuch, J., concurring).

Thus, rather than disclaiming the constitutional error of their ways, State Defendants' mootness contentions seem to be "more like don't let the door hit you on your way out." *N'Diom v. Gonzales*, 442 F.3d 494, 500 (6th Cir. 2006) (Martin, J., concurring). Plaintiffs' claims are not moot.

**C.**   **Plaintiffs' Claims Are Not Moot Because State Defendants Have Failed To Satisfy Their Formidable Burden To Demonstrate That It Is Absolutely Clear They Will Not Reinstate The Challenged Mandate.**

**1.**   **State Defendants' burden under the voluntary cessation doctrine is formidable.**

The Court should also reject the argument that this case is moot even under traditional voluntary cessation principles. State Defendants' sudden, "voluntary" shift from the discriminatory and unconstitutional requirement that healthcare workers in Maine accept a vaccination directly contrary to their sincerely held religious beliefs—which State Defendants have vigorously defended in this Court and in multiple appeals at the First Circuit and the Supreme Court—is not enough to shield the discriminatory mandate from review. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

> [A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted).

**2.**   **State Defendants have not made it absolutely clear that the challenged Mandate would not and could not be reinstated.**

Applying this "formidable burden," the Supreme Court held in *Trinity Lutheran Church of Columbia, Inc. v. Comer* that a state governor's "voluntary cessation of a challenged practice does not moot a case unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 137 S. Ct. 2012, 2019 n.1 (2017) (cleaned up). Here, State Defendants "ha[ve] not carried the 'heavy burden' of making 'absolutely clear'

9

that [they] could not revert to [their] policy," *id.*, because the change in policy is neither permanent nor irrevocable. *See City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). State Defendants have not made it "absolutely clear" that they will not return to their former discriminatory and unconstitutional ways, but merely say it is "highly unlikely that the Department will seek to impose COVID-19 vaccination requirements." (MTD 14.) State Defendants' own contention fails the applicable standard under their own construct.

Importantly, State Defendants "neither asserted nor demonstrated that they will *never* resume the complained of conduct." *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998) (emphasis added). Rather, State Defendants' contentions in this Court are simply that it is "highly unlikely" that they would reinstitute such a mandate and that they do not *currently* "have any plans" to reinstate it. (MTD 14.) This hedging precludes any mootness argument. *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding, where intent to reinstate is present, "the rescission of the policy does not render this case moot"); *Pierce v. Ducey*, No. CV-16-01538-PHX-NVW, 2019 WL 4750138, at *1 (D. Ariz. Sept. 30, 2019) ("A voluntary cessation joined with a threat to do it again is the paradigm of unsuccessful blunting of power to adjudicate . . . ."), *id* at *5–6 ("The Court is not fooled."), *rev'd on other grounds*, 965 F.3d 1085 (9th Cir. 2020).

Though legislative action concerning a challenged law is typically entitled to greater weight in some circumstances, *Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016), "the Supreme Court has not hesitated to invoke the voluntary cessation exception when considering the conduct of private, municipal, and *administrative* defendants." *Id.* (emphasis added). Thus, the more lenient approach to legislative repeal is inapposite here, and the administrative action taken

to invoke and then revoke the Rule—while the legislature's Statute remains operative to this day—precludes a finding of mootness here.

### 3. State Defendants' continued defense of the Vaccine Mandate throughout this litigation eliminates any possibility of mootness.

A case is not moot where, as here, State Defendants "did not voluntarily cease the challenged activity because [they] felt [it] was improper," and have "at all times continued to argue vigorously that [the] actions were lawful." *Olagues v. Russoniello*, 770 F.2d 791, 795 (9th Cir. 1985). *Pierce v. Ducey*, No. CV-16-01538-PHX-NVW, 2019 WL 4750138, at *1 (D. Ariz. Sept. 30, 2019) *rev'd on other grounds*, 965 F.3d 1085 (9th Cir. 2020).

"[W]hen the government ceases a challenged policy without renouncing it, the voluntary cessation is less likely to moot the case." *Pierc*e, 2019 WL 4750138, at *5. In numerous instances, including even in their very submissions on mootness at issue here, State Defendants have maintained that the Vaccine Mandate comprised by the Rule and the Statute was lawful and constitutional. (*See* MTD 3 (suggesting that the State "determined that requiring COVID-19 vaccination for healthcare workers in DHCFs was necessary to protect public health" and consistent with its duties); (*id.* at 13 (contending that "circumstances wholly unrelated to this litigation led to the repeal").) Indeed, State Defendants explicitly refused to concede that there is any constitutional flaw in their Vaccine Mandate and its complete prohibition on any religious accommodations. (*See id.* at 14 n.5 ("State Defendants do not have to concede any unlawful conduct for a case to be moot.").

"[A] defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." *Sheely v. MRI Radiology Net., P.A.*, 505 F.3d 1173, 1187 (11th Cir. 2007). In such a case, State Defendants' constant refrain that their refusal to follow the commands of the

First and Fourteenth Amendments was never unlawful negates mootness. *See, e.g.*, *id.* (collecting cases showing that failure to admit unlawful conduct and provide assurances of not returning to prior practices does not suffice to moot a claim); *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, (11th Cir. 1989) (holding that a matter is not moot when defendant "never promised not to resume the prior practice" and constantly pressed "that the voluntarily ceased conduct should be declared constitutional"); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 127 (5th Cir. 1973) ("[I]n the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume he will not violate the Act in the future."); *Pierce*, 2019 WL 4750138, at *6 ("[t]here is nothing in the parties' submissions or the record to demonstrate the [Secretary] changed his mind about the merits of Plaintiff's claim.").

### D.   Plaintiffs' Claims Are Not Moot Because The Challenged Mandate Is Capable Of Repetition Yet Evading Review.

Plaintiffs' claims are also not moot because the case "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* Both circumstances are present here.

#### 1.   The unconstitutional Rule's lifespan was too short to be fully litigated.

##### a.   The litigation in this matter demonstrates that the challenged Rule was too short in duration to be fully litigated.

The duration of State Defendants' constitutional violations is too short to be fully litigated. State Defendants contend that the compulsory COVID-19 vaccination requirement "was in effect for nearly two years" and "that length of time is not so short as to foreclose complete judicial

review." (MTD 15.) But, binding precedent holds that two years is too short for full litigation. *See Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months is too short); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is too short); *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (two years is too short).

*Kingdomware Tech.* involved the claims of a veteran-owned business against the Department of Veterans Affairs (VA) for failing to follow procurement rules that would have given the business a competitive advantage in bidding for VA procurement contracts. *See* 136 S. Ct. at 1973. Because the case reached the Court four years after it was commenced, and the work the business desired to perform for the VA was already complete, the Court found that "no live controversy in the ordinary sense remains because no court is now capable of granting the relief petitioner seeks." *Id.* at 1975–76. The Court concluded, however, that the "capable of repetition, yet evading review" exception applied because the short-term procurement contracts at issue "were fully performed in less than two years after they were awarded," and "a period of two years is too short to complete judicial review of the lawfulness of the procurement." *Id.* at 1976 (internal quotation marks omitted) (citing, *inter alia*, *Southern Pac. Terminal Co.*, 219 U.S. at 514–516). Thus, "we have jurisdiction because the same legal issue in this case is likely to recur in future controversies between the same parties in circumstances where the period of contract performance is too short to allow full judicial review before performance is complete." *Id.*

In *First Nat. Bank*, two banks that wanted to spend money to influence the vote on state referendum proposals were restricted in their advocacy by state criminal statutes. *See* 435 U.S. at 767–68. In determining whether the banks' claims were moot, because the vote on the most recent referendum was already concluded, the Court found that "[u]nder no reasonably foreseeable

circumstances could appellants obtain plenary review by this Court of the issue here presented in advance of a referendum on a similar constitutional amendment" because in each of the four previous referendum attempts by the state legislature "the period of time between legislative authorization of the proposal and its submission to the voters was approximately 18 months," which "proved too short a period of time for appellants to obtain complete judicial review, and there is every reason to believe that any future suit would take at least as long." *Id.* at 774–75. Thus, the Court held the case was not moot. *Id.* at 775

Plaintiffs initiated the instant action on August 25, 2021 (dkt. 1). Since the filing of Plaintiffs' Verified Complaint and Motion for Temporary Restraining Order (dkt. 3) and continuing to this day, Plaintiffs have been incessantly pleading for relief from the unconstitutional injury forced upon them by State Defendants for nearly two years—with all deliberate speed. Their efforts have produced ten written opinions and orders on the merits of substantive motions from this Court (dkts. 11, 32, 65, 68, 95, 96, 131, 140, 145, 156); three appeals to the United States Court of Appeals for the First Circuit Court of Appeals, *see Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023); *Does 1-3 v. Mills*, 39 F.4th 20 (1st Cir. 2022); *Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021); and four appeals to the Supreme Court of the United States, *e.g. Does 1-3 v. Mills*, 142 S. Ct. 17 (2021); *Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022); *Lowe et al. v. Mills, et al.*, Case No. 23-152 (U.S. 2023).

Because of the State Defendants' erroneous legal positions in this case, including their initially successful but ultimately defunct argument that this case should be dismissed, it took Plaintiffs nearly two years to obtain a decision from the First Circuit that articulated what Plaintiffs have alleged since the beginning—"that the Mandate treats comparable secular and religious activity dissimilarly without adequate justification" in violation of the First Amendment. *Lowe*, 68

F.4th at 709. And, upon receiving the First Circuit's decision permitting them to probe their claims in discovery, Plaintiffs were met with the news that State Defendants would now seek to evade review of the constitutional injury they forced upon Plaintiffs by revoking one rule of those challenged by Plaintiffs. (Dkt. 173, Motion to Stay, 2.) Thus, after putting Plaintiffs to the choice of their livelihoods or their religious beliefs, instituting a discriminatory vaccination requirement that resulted in Plaintiffs' unconstitutional termination from their jobs (dkt. 156 at 5-6), and contending at every turn that their religious beliefs had no accommodation in Maine, State Defendants now seek to pour salt in Plaintiffs' constitutional wounds by claiming, in essence, "never mind." State Defendants' compulsory vaccination Rule was too short-lived to be fully litigated, and because the Statute remains in effect, the controversy unquestionably is capable of repetition.

> **b.**   **Defendants' short-lived unconstitutional Rule did not allow sufficient time for appellate and Supreme Court review *on the merits*.**

Under the Supreme Court's test, a matter is not "fully litigated" unless complete review of the merits can be had by a trial court, appellate review, and Supreme Court review. Indeed, "fully litigated" means that the merits of the matter make their way "throught the state courts (and arrive here) prior to its expiration." *Turner v. Rogers*, 564 U.S. 431, 440 (2011). As the Ninth Circuit has recognized, "[a]n action is 'fully litigated' if it is reviewed by this Court and the Supreme Court." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013).

That a matter is not fully litigated unless there is time for appellate and Supreme Court review is universally recognized. *See, e.g.*, *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 786-87 (9th Cir. 2012) ("We have recognized that 'evading review' means that the underlying action is almost certain to run its course before either this court or the Supreme Court can give the

case full consideration." (quoting *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999)); *Marshall v. Local Union 20, Int'l Broth. of Teamsters*, 611 F.2d 645, 648 (6th Cir. 1979) (matter is too short in duration to be fully litigated if it is "unlikely under these circumstances that this court could hear and decide an appeal"); *Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1165 (4th Cir. 1977) (fully litigated includes appeals of the underlying action); *Praxis Prop., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 61 (3d Cir. 1991) ("fully litigated" requires enough time for an "appellate court to complete its review"); *id.* at 62 ("90-day automatic stay provision was too short in duration to ever be fully litigated and appealed"); *Video Tutorial Servs., Inc. v. MCI Tele. Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (matter too short in duration if it cannot be "effectively appealed before it expired').

Where – as here – "there is a realistic possibility that no trial court ever will have enough time to decide the underlying issues," *Cruz v. Farquharson*, 252 F.3d 530, 535 (1st Cir. 2001), the claims are too short in duration to ever be fully adjudicated. And, despite State Defendants' contention that two years is not too short to be fully litigated, even the premise of that argument fails the relevant test. The relevant inquiry is whether Plaintiffs' claims can be "fully litigated," *Wisconsin Right to Life*, 551 U.S. at 463, not whether a preliminary injunction or other interlocutory decision can be reached. Indeed, "there is, of course, an important distinction between a decision at the preliminary injunction stage and a final decision on the merits," *Ryan v. U.S. Immigration & Customs Enforcement*, 974 F.3d 9, 18 (1st Cir. 2020), where the claims are at "an embryonic stage in the litigation," and decisions "are to be understood as statements of probable outcomes." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991). That such a preliminary decision can be made quickly has no bearing on the question of whether

Plaintiffs have had enough time to fully litigate their claims before this court, the First Circuit, and the Supreme Court. The history of this litigation demonstrates that they did not.

### c.   Inherently transitory and temporary actions are necessarily capable of repetition, yet evading review.

Moreover, the capable of repetition, yet evading review exception "normally arises where the underlying facts are inherently temporary such that they will predictably have been changed and foreclosed meaningful relief by the time the case has worked its way through the legal system." *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 54 (1st Cir. 2004). *See also Marek v. Rhode Island*, 702 F.3d 650, 655 (1st Cir. 2012) (noting that challenged action that is "inherently transitory" meets the requirements for capable of repetition, yet evading review); *Cruz v. Farquharson*, 252 F.3d 530, 535 (1st Cir. 2001) (same). State Defendants admit, as they must, that the public health emergency upon which the Vaccine Mandate was purportedly based, and their consideration of compulsory vaccination programs, were transitory and subject to change. (MTD 5.) Thus, State Defendants' own admission suggest that the mandate at issue here was transitory, and therefore capable of repetition yet evading review.

### 2.   Plaintiffs maintain a reasonable fear that the challenged Mandate could be reinstated at any moment.

This action is also not moot because there is no question that Plaintiffs reasonably maintain a fear that the challenged requirements will be reinstituted. Defendants' submissions demonstrate the well-founded nature of Plaintiffs' fears. (*See, e.g.*, MTD 14 ("the Department and Maine CDC still have authority to amend the Rule in the future").) Claims remain live where – as here – the rescission of the challenged law is accompanied by affirmative statements by State Defendants that they "do not have to concede any unlawful conduct." MTD 14.)

As the Eleventh Circuit has noted, a court is "more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly." *Sheely*, 505 F.3d at 1184. Defendants' actions were none of these things. The application of State Defendants' Rule and Statute was not an isolated incident but rather resulted in the universal denial of every religious accommodation request to the Vaccine Mandate. Every Plaintiff's requested a religious accommodation was denied based solely on the Rule and the Statute, and all Plaintiffs were terminated because of the Rule and the Statute. (Dkt. 152, First Amend. V. Compl. ¶¶10-16.) The record, including State Defendants' instant motion here, reveals that the application of State Defendants' policy was not unintentional, but deliberate. (MTD 3 (contending that "requiring COVID-19 vaccinations for healthcare workers in DCHFs was necessary to protect public health" and that State Defendants adopted an emergency rule to require COVID-19 vaccinations that lasted for 90 days and then adopted it as a permanent rule thereafter).) The imposition of the Rule, when coupled with the deliberate nature it takes to enact a Statute prohibiting religious accommodations from compulsory vaccination, demonstrates that this was not unintentional, but deliberate.  "[W]e are more likely to find a reasonably expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate." *Sheely*, 505 F.3d at 1184-85. Defendants have failed to make it absolutely clear that such deliberate conduct is unlikely to recur again. Plaintiffs' claims are not moot.

## III.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF AGAINST THE STATUTE AND THE RULE ARE NOT MOOT.

Plaintiffs' claims for declaratory relief and a permanent injunction preventing Defendants from reinstating the previous mandate (or some modification thereof) are not moot. Indeed, when

claims for permanent injunctive relief pend, as here, "a government ordinarily cannot establish mootness just by promising to sin no more." *Strawser v. Strange*, 190 F. Supp. 3d 1078, 1081 (S.D. Ala. 2016) (cleaned up). As the Seventh Circuit eloquently stated, "[t]he court may consider how easily former practices might be resumed at any time in determining the appropriateness of injunctive relief." *United Air Lines, Inc. v. Air Line Pilots Ass'n Int'l.*, 563 F.3d 257, 275 (7th Cir. 2009) (emphasis added); *see also Scotch Whisky Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir. 1973) (holding district court did not abuse its discretion when entering an injunction against unlawful conduct that "has ceased before the trial has taken place"). Indeed,

> While the preliminary injunction diminished the *immediate* threat of prosecution, it is important not to confuse the threat of enforcement that existed relative to Hatchett's immediate advocacy, with the broader threat of enforcement that must be considered by this Court with respect to Hatchett's requests for declaratory and permanent injunctive relief.

*Hatchett v. Barland*, 816 F. Supp. 2d 583, 593 (E.D. Wis. 2011).

And, though preliminary injunctive relief against the rescinded Rule may be moot, "[t]he case itself is not moot, because a request for a permanent injunction was pending," especially where plaintiff is subject to potential sanction for similar conduct in the future. *Certified Grocers of Ill., Inc. v. Produce, Fresh, & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscaping & Allied Emps., Drivers, Chauffeurs, Warehouseman & Helpers Union, Chicago & Vicinity, Ill., Local 703*, 816 F.2d 329, 331 (7th Cir. 1987). Claims for a permanent injunction are not moot where—as here—"prior patterns of contradictory behavior left the court with no assurances that the alleged constitutional violations would not recur." *Brown v. Colegio De Abagados de Puerto Rico*, 613 F.3d 44, 48 (1st Cir. 2010). That is precisely what the district court did in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-6414, Doc. 95 (C.D. Cal.

May 14, 2021)—issue a permanent injunction against restrictions that had been rescinded but could be reinstated at any time.

Simply put, "[w]hen a defendant corrects the alleged infirmity after suit has been filed, a court may nevertheless grant injunctive relief unless the defendant shows that absent an injunction, *the institution would not return to its former, constitutionally deficient state.*" *LaMarca v. Turner*, 995 F.2d 1526, 1541 (11th Cir. 1993) (emphasis added). *See also Walker v. Inch*, No. 3:17cv206-MCR-HTC, 2019 WL 3400720, at *7 (N.D. Fla. May 10, 2019) (same). Here, Defendants have plainly not demonstrated that a return to the prior infirmities will not happen. In fact, as demonstrated *supra*, Defendants have explicitly maintained the potential for that to recur at any time.

## CONCLUSION

Because Plaintiffs' challenge to State Defendants' unconstitutional actions and mandates in this matter included both the Rule, which has been repealed, and the Statute, which has not been repealed, Plaintiffs' claims are not moot. Moreover, even if repeal of the Rule alone were sufficient to trigger mootnes, Plaintiffs' claims fit comfortably within the established exceptions to mootness. State Defendants' motion should be denied.

/s/ Stephen C. Whiting
Stephen C. Whiting
ME Bar No. 559
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME 04101
(207) 780-0681
steve@whitinglawfirm.com

/s/ Daniel J. Schmid
Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
(407) 875-1776
court@LC.org | hmihet@LC.org
dschmid@LC.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2023, I caused a true and correct copy of the foregoing to be electronically filed this Court. Service will be effectuated via this Court's ECF/electronic service system.

/s/ Daniel J. Schmid_____
Daniel J. Schmid