## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ALICIA LOWE et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **1:21-cv-00242-JDL** |
| | ) | |
| **JANET T. MILLS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON DEFENDANTS' MOTION
## TO DISMISS SURVIVING CLAIMS AS MOOT

The remaining Defendants—Jeanne M. Lambrew, Commissioner of the Maine Department of Health and Human Services ("Department"), and Dr. Puthiery Va, Director of the Maine Center for Disease Control and Prevention ("Maine CDC")— move to dismiss the outstanding claims against them as moot (ECF No. 188). The motion is premised on the removal of COVID-19 from the list of diseases against which workers in designated healthcare facilities ("DHCFs") in Maine must be immunized under the DHCF worker immunization rule: 10-144 C.M.R. ch. 264. The Plaintiffs, several former healthcare employees who were subject to the immunization rule, filed a response (ECF No. 195) that opposes the Defendants' motion and requests permission to amend their Amended Complaint (ECF No. 152) "to address any pleading concerns." ECF No. 195 at 5. For the reasons that follow, I grant the Defendants' motion and deny the Plaintiffs' request.

1

# I.  BACKGROUND

The procedural history of this case is complex, and includes three appeals to the United States Court of Appeals for the First Circuit and two petitions for writ of certiorari to the United States Supreme Court.[1]  The background and essential facts are set out in my prior decision, *Lowe v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 3542187, at *2-5 (D. Me. Aug. 18, 2022), and I do not repeat them here.

## A.    Remaining Defendants and Surviving Claims

In the wake of the First Circuit's decision (ECF No. 163) on the Plaintiffs' appeal from my Order (ECF No. 156) granting the original Defendants' prior Motions to Dismiss (ECF Nos. 107, 108, 109), the only surviving claims against the remaining Defendants, Commissioner Lambrew and Dr. Va, are the Plaintiffs' constitutional claims alleging violations of the First Amendment's guarantee of the free exercise of religion and the Fourteenth Amendment's equal protection guarantee (the "surviving claims").  The Plaintiffs' other claims against Commissioner Lambrew and Dr. Va— alleging violations of Title VII of the Civil Rights Act of 1964; the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; and 42 U.S.C.A. § 1985

---

[1]  *See Does 1-6 v. Mills*, 566 F. Supp. 3d 34 (D. Me. 2021) (denying Plaintiffs' motion for a preliminary injunction), *aff'd*, 16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022) (mem.); *Does 1-6 v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 1747848 (D. Me. May 31, 2022) (granting intervenor's motion to unseal the Plaintiffs' identities), *modified*, No. 1:21-cv-00242-JDL, 2022 WL 2191701 (D. Me. June 17, 2022), and *appeal dismissed sub nom. Does 1-3 v. Mills*, No. 22-1435, 2022 WL 17367462 (1st Cir. July 14, 2022); *Lowe v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022) (granting Defendants' motions to dismiss); *aff'd in part, rev'd in part and remanded*, 68 F.4th 706 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 345 (2023) (mem.).

(West 2024)—have been dismissed, as have all of the claims against Governor Mills and the private healthcare provider Defendants.[2]

## B.    Facts Underlying Defendants' Latest Motion to Dismiss

The following facts, drawn from the Defendants' Motion to Dismiss as well as the attached affidavit of Deputy Director of the Maine CDC Nancy Beardsley (ECF No. 188-1) and Maine CDC data on COVID-19 hospitalizations and deaths from January 2022 through August 2023 (ECF Nos. 188-2,188-3), are largely uncontested by the Plaintiffs in their response to the pending motion.  *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (acknowledging that courts may consider materials outside the pleadings on a Rule 12(b)(1) motion).

On May 11, 2023, the federal COVID-19 public health emergency ended. Maine's state-level COVID-19 health emergency, which when declared was designated to be coterminous with the federal public health emergency, ended that same day.  Neither event came as a surprise; in late January 2023, the Biden Administration announced that it would end the federal public health emergency on May 11, 2023.  That announcement, by implication, forecast an imminent, definitive end to the parallel health emergency in Maine declared under state law.

---

[2] As a consequence of the earlier proceedings, all claims against Governor Mills as well as the private healthcare providers who had been named as Defendants in this action—MaineHealth; Genesis Healthcare of Maine, LLC; Genesis Healthcare, LLC; Northern Light Eastern Maine Medical Center; and MaineGeneral Health—have been dismissed.  *Lowe*, 2022 WL 3542187.  Final judgment as to those claims has been entered against the private healthcare provider Defendants (ECF Nos. 207, 208).  Dr. Puthiery Va became the Director of the Maine CDC on August 28, 2023, and replaced former Acting Director of the Maine CDC, Nancy Beardsley, as a party to this action on September 20, 2023 (ECF No. 189).

In the months leading up to May 11, 2023, the Department began planning for the end of the twin health emergencies, which included "identifying program[s] and services that would be ending or transitioning back to pre-COVID standards."  ECF No. 188-1 at 3, ¶ 8.  On June 5, 2023, the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health and Human Services, withdrew its COVID-19 vaccination requirement (the "CMS rule") for healthcare workers employed by many of the same facilities affected by the COVID-19 vaccination requirement in the Department's DHCF worker immunization rule.  *See* Medicare and Medicaid Programs; Policy and Regulatory Changes to the Omnibus COVID-19 Health Care Staff Vaccination Requirements, 88 Fed. Reg. 36485 (June 5, 2023) (codified at 42 C.F.R. pts. 416, 418, 441, 460, 482, 483, 484, 485, 486, 491, and 494).  The CMS rule change became effective on August 4, 2023.  *Id.*

In late May and early June 2023, after the federal and state COVID-19 health emergency declarations had formally terminated, the Department and Maine CDC reviewed then-current risks of COVID-19 in healthcare settings for the stated purpose of ensuring that the State's rules and policies were consistent with the latest available science and research.  That exercise included reviewing the evidentiary basis for the COVID-19 vaccination requirement in the DHCF worker immunization rule.[3]  The review revealed declining hospitalizations and deaths from COVID-19 in Maine since January 2022 as well as increasing rates of vaccination against

---

[3]  Although the Plaintiffs imply that they are skeptical that this review ever occurred, *see* ECF No. 195 at 5 (asserting that the Defendants "purportedly" reviewed the relevant science and research), they do not directly contest this fact or offer evidence to substantiate their skepticism.

COVID-19 in Maine over the same period.  The review also showed other changed circumstances: Omicron variants of COVID-19 that were more contagious but less virulent than their precursors were predominant, and new treatments like Paxlovid and Lagevrio had become widely available.  Based on these trends and changed circumstances, the Department concluded that requiring DHCF workers to be immunized against COVID-19 was no longer necessary to protect individual patients, individual workers, and Maine's healthcare infrastructure.  On July 11, 2023, the Department announced its plan to remove COVID-19 from the list of diseases against which DHCF workers must be immunized.  In the same announcement, the Department stated it would not enforce the then-existing COVID-19 vaccination requirement during the pendency of the rulemaking process to repeal it.

On August 31, 2023, the Department formally amended the DHCF worker immunization rule to remove COVID-19 and the attendant vaccination requirement; the amendment became effective on September 5, 2023.  *See* 10-144 C.M.R. ch. 264, § 2, amended by order 2023-149 (effective Sept. 5, 2023).  Three days later, the Defendants moved to dismiss, arguing that the surviving claims had become moot.

## II.  DISCUSSION

### A.    Threshold Question: What is the Scope of the Plaintiffs' Claims?

In the Amended Complaint, the Plaintiffs challenge what they characterize as the "COVID-19 Vaccine Mandate," ECF No. 152 at 2, ¶ 1, which they refer to alternatively as both the "Governor's COVID-19 Vaccine Mandate," *see, e.g.*, ECF No. 152 at 12, ¶ 31, and the "Governor's mandate," *see, e.g.*, ECF No. 152 at 2, ¶ 1.  The

Plaintiffs' various characterizations of the mandate do not make clear whether they challenge the constitutionality of (1) the pre-repeal regulation that listed COVID-19 among the diseases against which DHCF workers must be immunized without religious exemptions, 10-144 C.M.R. ch. 264, § 2, amended by emergency order 2021-166 (effective Aug. 12, 2021); (2) the authorizing statute whose exemptions are expressly incorporated into that regulation, 22 M.R.S.A. § 802 (West 2024); or (3) some combination of the two.[4]  For the following reasons, I conclude that the Plaintiffs mount an as-applied challenge to the tandem operation of the pre-repeal regulation and statute, but no more.

First, the specific document that the Plaintiffs identify as the mandate they challenge compels that conclusion.  Both the Original Complaint (ECF No. 1) and the Amended Complaint incorporate as Exhibit A "a true and correct copy of the Governor's COVID-19 Vaccine Mandate" in the form of an August 12, 2021, announcement available on the website of the Office of Governor (ECF No. 1-1).  ECF Nos. 1 at 15, ¶ 41; 152 at 12, ¶ 31.  The "mandate" provided, in pertinent part:

> The Maine Department of Health and Human Services (DHHS) and Center for Disease Control and Prevention (Maine CDC), utilizing their authority under existing law to require certain vaccinations of people who work in health care settings, issued an emergency rule that will require health care workers to be fully vaccinated [against COVID-19] by October 1, 2021.

---

[4]  The Amended Complaint states expressly that the Plaintiffs are mounting both facial and as-applied challenges to the mandate under the First Amendment's Free Exercise Clause, *see* ECF No. 152 at 30-32, ¶¶ 114-126, and the Fourteenth Amendment's Equal Protection Clause, *see* ECF No. 152 at 34-36, ¶¶ 142-155.  Those labels, however, are "not what matters"—whether a constitutional claim is facial depends on whether the "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs."  *Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).

ECF No. 1-1 at 1.  The mandate's express reference to an "emergency rule" announced on August 12, 2021, firmly supports concluding that the DHCF worker immunization rule is the primary focus of the Plaintiffs' claims.  *See* 10-144 C.M.R. ch. 264, § 2, amended by emergency order 2021-166 (effective Aug. 12, 2021) (adding COVID-19 to the diseases against which "all employees" of "Designated Healthcare Facilit[ies]" must be immunized).[5]

The language that the Plaintiffs use in the Amended Complaint to describe the challenged "mandate" and the broader context established by the accompanying allegations further support this conclusion.  The "COVID-19 Vaccine" qualifier plainly narrows the Plaintiffs' claims as challenging the vaccination requirement for one of the diseases listed in the version of the regulation in effect after August 12, 2021, or, at most, the statutory exemptions as applied by enforcing that subsection of the rule.[6]  The "Governor" qualifier similarly limits the Plaintiffs' constitutional challenges: promulgating the regulation is within the Governor's executive power, as exercised by the Department pursuant to 22 M.R.S.A. § 42 (West 2024), whereas enacting the statutory exemptions that the regulation incorporates—a legislative function—is not.  *See Baxter v. Waterville Sewerage Dist.*, 146 Me. 211, 215, 79 A.2d

---

[5] Lending credence to this conclusion, the "mandate" cribs from the DHCF worker immunization rule's definition of "Designated Healthcare Facility" to identify the persons to whom the then-newly announced COVID-19 vaccination requirement applied.  *Compare* ECF No. 1-1 at 1 (applying the rule to "any individual employed by a hospital, multi-level health care facility, home health agency, nursing facility, residential care facility, and intermediate care facility for individuals with intellectual disabilities that is licensed by the State of Maine") *with* 10-144 C.M.R. ch. 264, § 1(D), amended by order 2021-068 (effective Apr. 14, 2021) (defining a DHCF as "licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID), multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine").

[6] Section 802 does not mention COVID-19 or enumerate the diseases against which immunization is required.  *See generally* 22 M.R.S.A. § 802.

585, 588 (1951) (defining the scope of legislative power under the Maine Constitution); *cf.* Me. Const. art. III (distribution of powers); *Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 17, 250 A.3d 1101 ("[T]he separation of powers clause of the Maine Constitution . . . precludes a statutory delegation to a regulator . . . [that] amounts to a surrender of legislative authority to the executive branch."); *Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972) ("[N]o legislative body may delegate legislative powers to administrative officers . . . ."). Because the Governor enforces the statutory exemptions through the regulation, the Amended Complaint, read in the light most favorable to the Plaintiffs, plausibly alleges an as-applied challenge to the tandem operation of the regulation and the statute. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011) (stating the standard of review applicable to determine whether plaintiff states a claim for which relief can be granted). By the same token, however, the Amended Complaint does not plausibly bring a standalone, as-applied challenge to the statute because its exemptions only take effect in this context when the regulation is enforced.

Nor does the Amended Complaint bring facial challenges to either the regulation or the statute. To facially challenge the DHCF worker immunization rule and the statute whose exemptions the rule expressly incorporates, the Plaintiffs must allege facts to support a claim that the regulation and statute are unconstitutional in every instance—*i.e.*, whenever vaccination requirements for any and all diseases listed in the regulation may be enforced. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult

challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see also Facial Challenge*, Black's Law Dictionary (11th ed. 2019) ("A claim that a statute is unconstitutional on its face — that is, that it always operates unconstitutionally.").  The version of the DHCF worker immunization rule in effect immediately before the August 2021 emergency order adding COVID-19 included six diseases.  10-144 C.M.R. ch. 264, § 2(A)(1)-(6), amended by order 2021-068 (effective Apr. 14, 2021).[7]  The Amended Complaint does not allege any facts supporting a claim that enforcing vaccine requirements for each of those diseases without religious exemptions fails to accommodate the Plaintiffs' sincerely-held religious beliefs.

Instead, the Plaintiffs' challenge has been and remains focused on the now-repealed COVID-19 vaccination requirement in 10-144 C.M.R. ch. 264, § 2, amended by emergency order 2021-166 (effective Aug. 12, 2021).  The Plaintiffs allege injuries arising from their religious objection to receiving the COVID-19 vaccines that were available when they filed the Amended Complaint, which, they assert, were "derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines."  ECF No. 152 at 16, ¶ 50; *see also* ECF No. 152 at 15-18, ¶¶ 48, 51, 54-56, 58-59 (describing basis of Plaintiffs' religious objections to the COVID-19 vaccines manufactured by Johnson & Johnson, Moderna, and Pfizer/BioNTech).  Indeed, the Plaintiffs currently contend that "the COVID-19

_____

[7]  The current version of the DHCF worker immunization rule maintains vaccination requirements for those same six diseases.  10-144 C.M.R. ch. 264, § 2(A)(1)-(6), amended by order 2023-149 (effective Sept. 5, 2023).

vaccination requirement was what crystalized [sic] their injury under the statute." ECF No. 210 at 10:17-19.  The Amended Complaint similarly asserts: "The *Governor's COVID-19* Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against *the COVID-19 vaccine*."  ECF No. 152 at 30, ¶ 114 (emphasis added); *accord* ECF No. 152 at 28, ¶¶ 102-104 (alleging irreparable injuries that the Plaintiffs have suffered "[a]s a result of the *Governor's COVID-19* Vaccine Mandate" (emphasis added)); *see also* ECF No. 152 at 31, ¶ 120 ("The *Governor's COVID-19* Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs." (emphasis added)).

The Amended Complaint does not contain allegations that support a reasonable inference that *all* of the vaccines for *all* of the diseases listed in the version of the DHCF worker immunization rule that included COVID-19 have some connection to aborted fetal cells.  Thus, as pleaded, the Plaintiffs' religious objections to receiving a COVID-19 vaccine do not apply to the remaining vaccines and the circumstances in which the statutory exemptions may apply.  More fundamentally, the Plaintiffs do not allege any facts showing that they have standing to mount so broad a challenge.  In sum, the Amended Complaint alleges an as-applied challenge to the tandem operation of the regulation and section 802, but does not contain allegations supporting a facial challenge to either the rule or the statute.

Finally, the Plaintiffs have not shown cause for granting their request to amend the Amended Complaint "to address any pleading concerns." ECF No. 195 at 5. Though courts "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), justice does not require permitting the Plaintiffs to further amend the Amended Complaint to drastically broaden the scope of their claims to challenge all possible applications of the DHCF worker immunization rule and the Department's authorizing statute. Nor, contrary to the Plaintiffs' contentions, is leave to amend warranted under Federal Rule of Civil Procedure 15(d). Under Rule 15(d), courts allow parties to amend pleadings to add transactions, occurrences, or events that happen *after* the date of the pleading to be supplemented. Fed. R. Civ. P. 15(d). The Plaintiffs filed the Amended Complaint on July 11, 2022. The challenged statute was enacted in 1989, amended to add exemptions to immunization in 2001, and further amended to repeal a religious exemption in 2019. 22 M.R.S.A. § 802 (1989), *amended by* P.L. 2001, ch. 185, § 2 (effective Sept. 21, 2001) and P.L. 2019, ch. 154, § 9 (effective Sept. 19, 2019).[8] Because the Plaintiffs have not identified any post-filing transactions, occurrences, or events that would justify additional amendments, their request to amend the Amended Complaint under Rule 15(d) is properly denied.

## B.   **Whether the Plaintiffs' Claims are Moot**

The Defendants' Motion to Dismiss centers on the following question: Did the Department's removal of COVID-19 from the DHCF worker immunization rule moot

---

[8]   The Maine Legislature has also amended section 802 to revise provisions within the statute unrelated to exemptions; those amendments occurred before the Plaintiffs filed the Amended Complaint.

the Plaintiffs' claims so that this Court no longer has jurisdiction over this matter? Article III, section 2 of the United States Constitution confines the jurisdiction of federal courts "to those claims that involve actual 'cases' or 'controversies.'" *Redfern v. Napolitano*, 727 F.3d 77, 83 (1st Cir. 2013) (quoting U.S. Const. art. III, § 2, cl. 1). It follows that "federal courts 'lack constitutional authority to decide moot questions.'" *Id.* (quoting *Barr v. Galvin*, 626 F.3d 99, 104 (1st Cir. 2010)).  "When a case is moot— that is, when the issues presented are no longer live or when the parties lack a [legally] cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Id.* at 83-84 (quoting *Maher v. Hyde*, 272 F.3d 83, 86 (1st Cir. 2001)).  Put differently, "a case is moot when the court cannot give any effectual relief to the potentially prevailing party," *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021) (quoting *Town of Portsmouth v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016)), and the action must be dismissed, *Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 192 (1st Cir. 2022).  "Unless an exception to [mootness] applies, to do otherwise would be to render an advisory opinion, which Article III prohibits." *Harris*, 43 F.4th at 192 (quoting *Pietrangelo v. Sununu*, 15 F.4th 103, 105 (1st Cir. 2021)); *see also ACLU of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52-53 (1st Cir. 2013) (dismissal required where "events have transpired to render a court opinion merely advisory" (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)).

Mootness manifests differently as to claims for declaratory and injunctive relief.  "[R]equests for declaratory relief can only survive a mootness challenge where

'the facts alleged . . . show that there is a substantial controversy . . . *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*'" *Harris*, 43 F.4th at 192 (quoting *ACLU of Massachusetts*, 705 F.3d at 54) (emphasis in original). Claims for injunctive relief are moot when the "challenged [rule] no longer adversely affect[s] any plaintiff's primary conduct." *Id.* (alterations and quotation marks omitted).[9]

The "proper vehicle" for challenging a court's subject-matter jurisdiction on the basis of mootness is Federal Rule of Civil Procedure 12(b)(1). *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). Where a motion to dismiss for lack of jurisdiction is premised on mootness, the "key question 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).'" *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) (quoting *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)). "The 'heavy' burden of showing mootness is on the party raising the issue." *Id.* (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008)).

As a direct consequence of the Department removing the COVID-19 vaccination requirement from the DHCF worker immunization rule, which operated in tandem with section 802's exemptions to immunization, this Court cannot provide

---

[9] Although "a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy," *Thomas R.W. v. Massachusetts Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997) (quoting Laurence H. Tribe, *American Constitutional Law* § 3-11, at 84 (2d ed. 1988)), all of the Plaintiffs' claims for damages against the remaining Defendants have been previously dismissed. *See Lowe*, 2022 WL 3542187, at *6.

any relief to the Plaintiffs that would redress injuries that arise from an actual case or controversy.   To the extent the Plaintiffs seek injunctive relief, they have effectively received it through the repeal of the COVID-19 vaccination requirement. *Cf. Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022) (holding that a court "cannot enjoin what no longer exists").   Relatedly, the Plaintiffs' earlier refusal to comply with the since-repealed COVID-19 vaccination requirement does not presently create a barrier to their employment at DHCFs operating in Maine.   The Plaintiffs' former employers who might be enjoined to reinstate the Plaintiffs have previously been dismissed as parties to this dispute, *see supra* note 2, which also places the requested injunctive relief beyond the Court's authority.   Finally, declaring the repealed requirement unconstitutional or unlawful at this juncture would constitute an unnecessary advisory opinion that would not redress injuries resulting from an actual case or controversy.   *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (observing that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong").

In short, the Plaintiffs' surviving claims are moot, and I therefore consider whether any exception to the mootness doctrine applies.

## C.   Whether an Exception to the Mootness Doctrine Applies

Two recognized exceptions to mootness are relevant here: the "voluntary cessation" exception and the "capable of repetition yet evading review" exception.

### 1. Voluntary Cessation Exception

Government action that "withdraws or modifies a COVID restriction in the course of litigation . . . does not necessarily moot the case . . . where [plaintiffs] 'remain under a constant threat' that government officials will use their power to reinstate the challenged restrictions." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021) (quoting *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 20 (2020)). Animated by such threats, the voluntary cessation exception exists "to stop a scheming defendant from trying to 'immunize itself from suit indefinitely' by unilaterally changing 'its behavior long enough to secure a dismissal' and then backsliding when the judge is out of the picture—'repeating this cycle until it achieves all its unlawful ends.'" *Boston Bit Labs*, 11 F.4th at 10 (twice quoting *Lewis*, 813 F.3d at 59 (alteration omitted), then quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (alterations omitted)). The exception "'can apply when a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated' after the suit's 'dismissal.'" *Id.* at 9 (quoting *Lewis*, 813 F.3d at 59) (alteration omitted). By contrast, the exception "'does *not* apply' if the change in conduct is '*unrelated* to the litigation.'" *Id.* at 10 (quoting *Lewis*, 813 F.3d at 59). The party claiming mootness has the burden to show that the voluntary cessation exception does not apply. *Id.*

The Defendants contend that the Department repealed the COVID-19 vaccination requirement "based on changed circumstances of the COVID-19 pandemic, not on this litigation." ECF No. 188 at 12. As evidence of this fact, the

Defendants cite declining hospitalizations and death rates over the period between January 2022 and August 2023,[10] rising COVID-19 vaccination rates, the predominance of less virulent variants of the original virus, the availability of new treatments, and increased population immunity from vaccination and prior infection.

In response, the Plaintiffs strive to cast the repeal decision as a bad-faith litigation tactic. Their reframing of the repeal decision rests on the close temporal proximity between the First Circuit's opinion in *Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023), *aff'g in part and rev'g in part* 2022 WL 3542187 (D. Me. Aug. 18, 2022), entered on May 25, 2023, and the launch of the Defendants' review of the science underlying the COVID-19 vaccination rule in late May/early June 2023. The Plaintiffs contend that the review being launched on the heels of the First Circuit's decision is circumstantial evidence of a spurious scheme by the Defendants to rid themselves of a case they thought they had won, but that was revived on appeal.[11]

---

[10]   At oral argument on the pending motions (ECF No. 210), the Plaintiffs contended that the Defendants' proffered statistics (ECF Nos. 188-1, 188-2, 188-3) show increasing rates of COVID-19-related hospitalizations and death rates between July and August 2023 when rulemaking to repeal the COVID-19 vaccination requirement occurred. The Plaintiffs are correct: the average number of daily hospitalizations attributable to COVID-19 increased from 31 to 44 between July and August 2023, and the number of deaths per month attributable to COVID-19 rose from three to eight during the same period. Those short-term upticks notwithstanding, the Defendants' proffered statistics, viewed in their entirety, show broader, unambiguous trends of consistently declining rates of COVID-19-related hospitalizations and deaths between January 2022 and August 2023, which the Plaintiffs' selective statistical subset does not refute.

[11]   The Plaintiffs argue:

> State Defendants explicitly admit that it was not until "around the end of May 2023 and the beginning of June 2023," that they purportedly "reviewed the available science and research on the then current risks of COVID-19 in healthcare settings." (MTD 5.) And, on July 11, 2023, "the Department announced that it was proposing to end the requirement that DHCFs require their employees to be vaccinated against COVID-19." (*Id*. at 7.) This timing is unequivocally relevant to the determination of whether State Defendants' contentions of mootness have any merit. One need not ponder too long to see the importance of this admission. The First Circuit released its decision on Plaintiffs' appeal of the dismissal of their Complaint *on May 25, 2023, see*

The meaning that the Plaintiffs attribute to the sequence of key events ignores the undisputed fact that the Defendants' reassessment of the need for the vaccination requirement followed shortly after the federal and state COVID-19 public health emergencies ended on May 11, 2023.   The Plaintiffs also overlook the fact that the reassessment coincided with the June 5, 2023, announcement of the withdrawal of the CMS rule.   The Plaintiffs' suggestion that the Defendants engaged in a bad faith litigation tactic, while not accounting for obviously relevant Federal and State governmental actions, is based on a substantially incomplete and, therefore, misleading narrative of the relevant events.   Further, the Plaintiffs have not supported their position with declarations under oath or exhibits, nor have they requested permission to perform discovery on the issue.

Accordingly, the Plaintiffs do not credibly dispute the fact that the review that led the Department to reconsider the continued need for the COVID-19 vaccination requirement for DHCF workers was prompted by the termination of the federal and Maine COVID-19 public health emergency declarations on May 11, 2023.   It is

---

*Lowe v. Mills*, 68 F.4th 706 (1st Cir. 2023), and held that Plaintiffs had stated a claim upon which relief can be granted and that "it is plausible, in the absence of any factual development, that the Mandate" violates the Free Exercise Clause. *Id.* at 714.

Thus, precisely "around the end of May 2023" (MTD 5) when the First Circuit held that Plaintiffs were entitled to probe their First and Fourteenth Amendment claims in discovery, State Defendants had a sudden revelation that they should reconsider the evidence concerning the Vaccine Mandate. That timing is critical here. After Plaintiffs fought for two years to have their day in Court, and despite State Defendants admitting that they were aware of changed circumstances concerning the risk of COVID-19 beginning "in *January 2022*" (MTD 6 (emphasis added)), State Defendants did nothing to alter the challenged Vaccine Mandate until the eve of discovery commencing in this Court. That is a litigation tactic, not a genuine change of heart, and it precludes a finding of mootness.

ECF No. 195 at 5-6.

self-evident that responsible public officials who are charged with protecting public health would reevaluate Maine's vaccination policies in response to the simultaneous termination of federal and state public health emergency declarations. It is also beyond serious dispute that the events leading up to the Department's reconsideration of the need for the COVID-19 vaccine requirement were outside the Defendants' control. Moreover, the Plaintiffs have not challenged the scientific basis for the Department's conclusion in July 2023 that requiring DHCF workers to be immunized against COVID-19 was no longer necessary to help protect individual patients, individual workers, and Maine's healthcare infrastructure. The Defendants have met their burden of demonstrating that the Department initiated its review and ultimately decided to repeal the COVID-19 vaccination requirement for substantial reasons unrelated to this litigation, and not out of bad faith. The voluntary cessation exception to mootness does not apply.

## 2. Exception for Conduct Capable of Repetition but Evading Review

The Plaintiffs fare no better with the other relevant exception to mootness, which relates to conduct capable of repetition but evading judicial review. This exception "'applies only in exceptional situations' where . . . '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Spencer*, 523 U.S. at 17 (first quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), then quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (alterations omitted)). In contrast to the voluntary cessation

exception, the Plaintiffs have the burden to show that both prongs in this conjunctive test are satisfied. *ACLU of Massachusetts*, 705 F.3d at 57.

On this record, the Plaintiffs have not met their burden as to the second prong because they fail to present any positive, non-speculative evidence to support a reasonable expectation that they will be subject to the challenged COVID-19 vaccination requirement—or one substantially similar to it—again. *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993). Nor do the Plaintiffs demonstrate a "probability" of the same. *ACLU of Massachusetts*, 705 F.3d at 57 (quotation marks omitted)). Instead, Plaintiffs pin their reasonable expectation argument on the Defendants' (1) retained authority to amend the DHCF worker immunization rule in the future, leaving open the possibility that the Defendants could return COVID-19 to the rule's list of required vaccinations; and (2) refusal "to concede any unlawful conduct" in this litigation. ECF No. 195 at 17 (quoting ECF No. 188 at 14 n.5). Under similar circumstances, however, the First Circuit has squarely rejected the same argument.

In *Boston Bit Labs*, the First Circuit reiterated that the "sheer 'power to reinstitute a challenged law is not a sufficient basis on which a court can conclude that a challenge remains live.'" 11 F.4th at 11 (alteration omitted) (quoting *Am. Bankers Assoc. v. Nat'l Credit Union Admin.*, 934 F.3d 649, 661 (D.C. Cir. 2019)). That the *Boston Bit Labs* Court weighed the risk of recurrence in light of a governor's power to issue executive orders, 11 F.4th at 10, is a distinction without a difference. Here, the Plaintiffs' alleged expectation of recurrence derives from the Department's

power to promulgate rules under 22 M.R.S.A. § 802.  Rules adopted under section 802 are routine technical rules, as defined in 5 M.R.S.A. § 8071(2)(A) (West 2024), 22 M.R.S.A. § 802(3), that are subject to rulemaking procedures under 5 M.R.S.A. § 8052 (West 2024), 5 M.R.S.A. § 8071(3).  The rulemaking procedures under section 8052 include an opportunity for the public to provide comments to raise their concerns and an accompanying requirement that the promulgating agency specifically address the comments and provide a rationale for incorporating or dismissing them.  5 M.R.S.A. § 8052(1), (5).  These procedures function as a check on executive agencies' authority to adopt rules that is not present when Maine's Governor issues executive orders during emergencies, like the COVID-19 state health emergency.  *See* 37-B M.R.S.A. § 741(3)(A) (West 2024).  Even the more relaxed emergency rulemaking procedures that agencies follow when "necessary to avoid an immediate threat to public health, safety or general welfare," 5 M.R.S.A. § 8054(1) (West 2024)—and that the Department presumably followed when promulgating the now-repealed COVID-19 vaccination requirement for DHCF workers, *see* 10-144 C.M.R. ch. 264 (2023) (characterizing the August 12, 2021, rule change adding COVID-19 to section 2 as "EMERGENCY ROUTINE TECHNICAL")—include the possibility of public checks that do not apply when Maine's Governor issues emergency orders.

As a fallback, the Plaintiffs argue that the "Defendants have failed to make it absolutely clear that such deliberate conduct is unlikely to recur again."  ECF No. 195 at 18.  This argument, however, conflates the Defendants' burden as to the second prong of the voluntary cessation exception, *see Friends of the Earth, Inc. v. Laidlaw*

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (articulating the "absolutely clear" requirement), with the Plaintiffs' burden to show that the conduct-capable-of-repetition exception to mootness applies.

The Plaintiffs have not presented any affirmative support to substantiate that their expectation that the challenged conduct will recur is reasonable. Accordingly, the conduct-capable-of-repetition exception to mootness does not apply.

## III.  CONCLUSION

Because the Plaintiffs' surviving claims are moot following the repeal of the COVID-19 vaccination requirement from the DHCF worker immunization rule and no exception to mootness applies, it is **ORDERED** that the Defendants' Motion to Dismiss (ECF No. 188) is **GRANTED**; the Plaintiffs' request to amend the First Amended Complaint (ECF No. 195 at 5) is **DENIED**; and the First Amended Complaint (ECF No. 152) is **DISMISSED**.

**SO ORDERED.**

**Dated this 23rd day of February, 2024.**

_____/s/ Jon D. Levy_____
**CHIEF U.S. DISTRICT JUDGE**